Christopher A. Sproul (Cal. Bar No. 126398)
Molly Coyne (Cal. Bar No. 312914)
Heather Kryczka (Cal. Bar No. 314401)
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: mcoyne@enviroadvocates.com
Email: heather@enviroadvocates.com

Jason Weiner (Cal. Bar No. 259264)
Geneva EB Thompson (Cal. Bar No. 315725)
Wishtoyo Foundation and its Ventura Coastkeeper Program
9452 Telephone Road #432
Ventura, CA 93004
Telephone: (805) 823-3301
Facsimile: (805) 258-5107
Email: jweiner.venturacoastkeeper@wishtoyo.org
Email: gthompson@wishtoyo.org

Attorneys for Plaintiffs
WISHTOYO FOUNDATION and CENTER FOR BIOLOGICAL DIVERSITY
*Additional Counsel Listed on Next Page*

JS-6

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISHTOYO FOUNDATION, CENTER FOR BIOLOGICAL DIVERSITY, and VENTURA COASTKEEPER, a program of WISHTOYO FOUNDATION,<br><br>Plaintiffs,<br>v.<br><br>UNITED WATER CONSERVATION DISTRICT,<br><br>Defendant. | Case No: 2:16-cv-03869-DOC-PLA<br><br>**JUDGMENT AND PERMANENT INJUNCTION** |

*Additional Counsel for Plaintiffs*

John Buse (Cal. Bar No. 163156)
Center for Biological Diversity
351 California Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 436-9682
Facsimile: (415) 436-9683
jbuse@biologicaldiversity.org

Patricia Linn (Cal. Bar No. 253015)
Law Office of Patricia Linn
115 Oakdale Avenue
Mill Valley, CA 94941
Telephone: (415) 388-2303
Email: pweisselberg@wans.ne

## ORDER ENTERING FINAL JUDGMENT AND PERMANENT INJUNCTION

Plaintiffs Wishtoyo Foundation, Ventura Coastkeeper, and Center for Biological Diversity ("Plaintiffs") filed a complaint against Defendant United Water Conservation District ("United" or "Defendant") on June 2, 2016. The Court conducted a bench trial on December 11-15, 18-20, 2017, and January 3-5, 2018. The Court filed an order on September 23, 2018, including findings of fact and conclusions of law holding that Plaintiffs are entitled to declaratory and injunctive relief on their claim for take of Southern California Steelhead, but not on their claim for take of Southwestern Willow Flycatcher. Pursuant to that order, this is a final judgment resolving all claims pursuant to Fed. R. Civ. P. 58.

### I.

**IT IS ORDERED, ADJUDGED, AND DECREED** that:

Plaintiffs are entitled to a declaratory judgment that Defendant United's operation and maintenance of Vern Freeman Dam ("VFD"), including its operation and maintenance of the fish ladder at the VFD, and United's diversion of water from the VFD, has caused unauthorized "take" of the Distinct Population Segment of Southern California Steelhead ("Steelhead") in violation of section 9 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1538.

### II.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that:

Plaintiffs are not entitled to a declaratory judgment that United's actions constitute unauthorized "take" of Southwestern Willow Flycatcher in violation of ESA section 9. Accordingly and furthermore, Plaintiffs are not entitled to injunctive relief as to the Southwestern Willow Flycatcher.

### III.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that:

United Water Conservation District is hereby permanently enjoined to undertake the following actions:

## 1. Water Diversion

Commencing on **October 22, 2018**, United shall adhere to the water diversion operating rules set forth in Reasonable and Prudent Alternative ("RPA") 2 of National Marine Fisheries Service ("NMFS")'s 2008 Biological Opinion for VFD, pursuant to NMFS's interpretation of RPA 2A such that the ramping rates apply whether or not United initiates diversion procedures at, above, or below 750 cubic feet per second ("cfs"), until such time as United secures incidental take authorization from NMFS for the maintenance and operation of VFD with respect to Steelhead, or unless the parties move for relief from those operating rules and the Court approves the motion. For purposes of compliance with RPA 2, United shall treat the adult Steelhead migration season as extending from January 1 to May 31 and shall treat the juvenile Steelhead migration season as extending from March 1 to May 31.

## 2. Monitoring and Adaptive Management

For purposes of monitoring compliance and effectiveness of the flow criteria used in United's operations, commencing **January 1, 2019**, United shall adhere to the directives in terms and conditions 1(a) of the incidental take statement in the NMFS 2008 Biological Opinion for VFD that provides: "For the purpose of ensuring that flow criteria are met, United shall apply a noncontact method (e.g., continuous wave microwave radar, monostatic UHF Doppler radar, pulsed Doppler microwave radar, acoustic Doppler technologies, and or emerging drone based videography), or other method that is agreeable to NMFS, to continuously monitor instantaneous river discharge in the Santa Clara River where the Highway 118 bridge and the Highway 101 bridge cross the river." *See* Biological Opinion at 81.

## 3. Long Term Fish Passage Infrastructure

By the dates provided below, United shall complete forthwith the necessary studies to evaluate all reasonable alternatives to the existing fish ladder, select a preferred alternative, and submit complete regulatory authorization requests to NMFS, the U.S. Fish and Wildlife Service ("USFWS"), the U.S. Army Corps of Engineers, the California

Department of Fish and Wildlife ("CDFW"), and the California State Water Resources Control Board. United shall fully complete engineering design (including necessary modeling) on the: (1) hardened ramp; and (2) 400-foot notch. As part of its required National Environmental Policy Act ("NEPA")/California Environmental Quality Act ("CEQA") environmental review, United shall further analyze the other two options discussed in trial testimony: the vertical slot and a damless diversion in conjunction with an infiltration gallery. However, United shall not be required at this stage to do in-depth modeling/engineering analysis of the vertical slot option or a damless diversion option in conjunction with an infiltration gallery. Instead, United shall simply include reasonable study and analysis of the vertical slot alternative and a damless diversion in conjunction with an infiltration gallery alternative for purposes of NEPA/CEQA environmental review. Therefore:

   a. By **no later than January 31, 2020**, United shall complete evaluations and 100% designs of the following alternative Steelhead fish passage infrastructures for VFD, including physical modeling and complete engineering design, sufficient for United to choose a preferred alternative and to meet NMFS's directions for the detail required for an adequate habitat conservation plan submittal: (i) the hardened ramp and (ii) the 400-foot notch;

   b. By **no later than January 31, 2020**, United shall complete the alternatives analysis for the (i) vertical slot and a (ii) damless diversion in conjunction with an infiltration gallery, sufficient for purposes of NEPA/CEQA environmental review;

   c. By the earlier of **April 31, 2020**, or **three months after** completion of the evaluations and designs of the hardened ramp and 400-foot notch, United shall select a preferred Steelhead fish passage infrastructure project. The Steelhead passage alternative selected must meet the Steelhead passage design criteria set forth by NMFS during NMFS's review and approval of the alternative, including in regards to attraction flow, velocities and turbulence through the

passage, and in regards to the flow ranges in which the passage will provide for Steelhead passage (i.e., for the hardened ramp, NMFS indicates that the ramp shall be designed to provide for Steelhead passage between 45 to at least 6,000 cfs river flow). This alternative must include design of monitoring of Steelhead migration in the reach of the Santa Clara River below VFD and through VFD and its new fish passage infrastructure selected;

    d. By **no later than June 30, 2020**, United shall submit completed regulatory applications for the following:

        i. ESA section 10 incidental take permit and multi-species habitat conservation plan ("MSHCP") to NMFS and the USFWS for operation and maintenance of VFD and United's Diversion at the VFD and/or a biological assessment in conjunction with ESA section 7 consultation with NMFS and the USFWS. These applications shall be accompanied by a complete Draft Environmental Impact Statement and Draft Environmental Impact Report so that the section 10 permit is ready for the institution of environmental review under NEPA and CEQA. These applications shall include proposals for a new fish passage infrastructure project at VFD, bypass flows from VFD sufficient to avoid jeopardizing the survival and recovery of Steelhead and otherwise minimizing take of Steelhead consistent with ESA directives to include reasonable and prudent measures for reducing take of listed species in any authorization for species take, appropriate compliance monitoring reasonably consistent with term and condition 4 in the incidental take statement in NMFS's 2008 Biological Opinion for VFD, and adaptive management reasonably consistent with term and condition 3 in the incidental take statement in NMFS's 2008 Biological Opinion for VFD;

        ii. Army Corps Clean Water Act 404 permit for the New Fish Passage

Infrastructure Project;

  iii. State Board Clean Water Act section 401 Water Quality Certification for the New Fish Passage Infrastructure Project; and

  iv. CDFW Lake and Streambed Alteration Agreement for the New Fish Passage Infrastructure Project; and

e. By **no later than two years from** receiving final regulatory approvals for a new Steelhead fish passage infrastructure project, United shall complete construction of and commence operating such new infrastructure. This project shall include such infrastructure as needed for implementation of a long term monitoring and counting system for upstream migrating adult Steelhead and downstream migrating Steelhead kelts and juveniles that do not require Steelhead to navigate around or over an obstacle for the purposes of being counted.

## 4. Interim Fish Passage Infrastructure

The Court grants in part Plaintiffs' request for injunctive relief with respect to interim improvements to United's fish passage infrastructure. Therefore:

a. By **no later than November 1, 2018**, and as early as possible, United shall install a DIDSON camera in the area between the trash rack and Denil fish ladder upstream exit gate upstream of the diversion canal gate that lets water into the fish screen bay to monitor adult steelhead passage from the VFD infrastructure upstream into the Santa Clara River. United shall also monitor downstream movement of adult, kelt, and juvenile Steelhead entering the VFD infrastructure through this camera.

b. By **no later than January 31, 2020**, and no later than the completion of the top-two fish passage alternative designs (the hardened ramp and the 400-foot notch), United shall develop and submit a plan to NMFS for modifying or replacing the VFD diversion canal fish screen in the VFD fish screen forebay to comply with NMFS Anadromous Salmonid Passage Facility

Design fish screen criteria, to meet NMFS criteria's for approach and sweeping velocity for fish screens; to eliminate velocity hot spots (i.e., localized areas where velocity levels are elevated on the fish screen face that will tend to trap, suck through, or injure juvenile Steelhead); to ensure reliable cleaning and prevention of clogging; to contain brushes that run the entire length of the screen face; and to contain appropriate screen opening sizes fry cannot pass through and that meet NMFS's Anadromous Salmonid Passage Facility Design fish screen criteria for Steelhead fry. United's plan shall address and respond to recommendations (1) in the reports from its consultants MWH Americas (the MWH Americas Report entitled "Final Appraisal Report Fish Screening Facility at the Freeman Diversion', dated December 2006 [Trial Exhibit 140] ) and Northwest Hydraulic Consultants ("NHC") (the NHC report entitled 'Sediment Transport and Deposition Assessment of the Freeman Diversion Conveyance System, Phase 1: Existing System Performance' dated January 7, 2015 [Trial Exhibit 141] and the NHC report entitled 'Sediment Transport and Deposition Assessment of Freeman Diversion Conveyance System', dated March 9, 2016 [Trial Exhibit 142] ) and (2) the Biological Assessment, and shall either include provisions for these recommendations or explanations for any recommendations that it determines not to follow. United's plan shall address any design considerations needed to function effectively in conjunction with the top-two new fish passage alternatives (the hardened ramp and the 400-foot notch);

   c. By **no later than June 30, 2020**, United shall submit a completed regulatory application for NMFS approval (and the approval of the Army Corps of Engineers, California State Water Resources Control Board, and the California Department of Fish and Wildlife, if such approval is required). Any required fish screen regulatory applications may be submitted in conjunction with or separately from the long term fish passage regulatory

applications; and

    d. By **no later than two years** (but significantly earlier, if feasible) from receiving final regulatory approvals for a modified or new fish screen, United shall complete construction of and commence operating such a fish screen.

### 5. Trapping

United shall not resume trapping, hauling or any handling of Steelhead without authorization from NMFS. Because United must request NMFS Long Beach's assistance and supervision when stranded fish need to be hauled or handled, NMFS shall respond promptly to a request for such assistance.

### 6. Compliance with Injunction

United shall file with the Court on the docket Compliance Reports setting forth in detail the manner and form in which United has complied with the Permanent Injunction. United shall file such Compliance Reports: (1) every 120 calendar days from the date of Judgment; and (2) within five calendar days of any deadline contained in the Permanent Injunction. If during any period between Compliance Reports, United receives any written comments from any of the Regulatory Agencies (NMFS, USFWS, U.S. Army Corps of Engineers, CDFW, and California State Water Resources Control Board) related to United's efforts to develop or achieve approval of Regulatory Authorization applications pertaining Steelhead and VFD (including related to fish passage infrastructure, the fish screen, water diversion operations, or adaptive management monitoring), United shall attach the agencies' comments to the next Compliance Report, subject to any applicable laws of privilege. If United provides the Regulatory Agencies with any written responses to such comments, United shall attach its responses to the following Compliance Report, subject to any applicable laws of privilege.

## IV.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Permanent Injunction shall remain in effect until each of the following conditions are

met: (1) United receives ESA incidental take authorization for VFD; and (2) United completes construction and commences operations of a new fish passage structure that has been approved by NMFS pursuant to ESA incidental take authorization. When such conditions are met, United shall move to dissolve the Permanent Injunction.

V.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Judge James L. Smith (Ret.) is appointed as a Special Master to monitor compliance with the Permanent Injunction and the progress of the parties.

VI.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction over this matter for the purposes of enforcing or modifying the terms of the Permanent Injunction.

VII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the deadline for any of the parties to move for an award of attorneys fees and costs pursuant to ESA section 11(g), 16 U.S.C. § 1540(g) is extended to 30 days from the entry of this Final Judgment. A party opposing such fees and costs shall have 14 days to file any objections to that motion. The parties shall promptly meet and confer in a good faith attempt to resolve the issue of attorneys fees and costs award without the need for motion(s) on this matter.

There being no just reason for delay, the Clerk of the Court is hereby directed, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to enter this Final Judgment forthwith.

IT IS SO ORDERED.

Dated: September 27, 2018

_David O. Carter_
Hon. David O. Carter
United States District Judge