Christopher Sproul (Cal. Bar No. 126398)
Molly Coyne (Cal. Bar No. 312914)
Heather Kryczka (Cal. Bar No. 314401)
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: mcoyne@enviroadvocates.com
Email: heather@enviroadvocates.com

Jason Weiner (Cal. Bar No. 259264)
Geneva EB Thompson (Cal. Bar No. 315725)
Wishtoyo Foundation and its Ventura Coastkeeper Program
9452 Telephone Road #432
Ventura, CA 93004
Telephone: (805) 823-3301
Facsimile: (805) 258-5107
Email: jweiner.venturacoastkeeper@wishtoyo.org
Email: gthompson@wishtoyo.org

Attorneys for Plaintiffs
WISHTOYO FOUNDATION and CENTER FOR BIOLOGICAL DIVERSITY

*Additional Counsel Listed on Next Page*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISHTOYO FOUNDATION, CENTER FOR BIOLOGICAL DIVERSITY, and VENTURA COASTKEEPER, a program of WISHTOYO FOUNDATION,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED WATER CONSERVATION DISTRICT,<br><br>　　　　　　Defendant. | Case No: 2:16-cv-03869-DOC-PLA<br><br>PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS<br><br>Hearing date: March 4, 2019<br>Time: 8:30 AM<br>Location: Courtroom 9D, 9th Floor |

*Additional Counsel for Plaintiffs*

John Buse, (Cal. Bar No. 163156)
Center for Biological Diversity
1200 Broadway, Suite 800
Oakland, CA 94612
Telephone: (323) 533-4416
Facsimile: (510) 844-7150
Email: jbuse@biologicaldiversity.org

Patricia Linn (Cal. Bar No. 253015)
Law Office of Patricia Linn
115 Oakdale Avenue
Mill Valley, CA 94941
Telephone: (415) 388-2303
Email: patricialinn19@gmail.com

## **TABLE OF CONTENTS**

I.      Introduction................................................................................................ 1

II.     United Multiplied the Litigation Costs................................................... 3

III.    Plaintiffs Are Entitled to Recover Attorneys' Fees Under the ESA .................... 7

        A. Plaintiffs Meet the ESA Standard for Fee Entitlement .................................... 7

                1.  Plaintiffs Achieved Significant Success on the Merits. .............................. 7

                2.  No Special Circumstances Justify Denial of an Attorney Fee Award ......... 7

IV.     Plaintiffs Are Entitled to A Fully Compensatory Attorneys' Fee Award on ......... 8

        A. Plaintiffs Are Entitled to Full Recovery of Their Lodestar............................ 10

        B. The Kerr Factors Support A Fully Compensatory Fee Award. ..................... 18

        C. Plaintiffs' Hourly Rates Are Reasonable ..................................................... 21

                1.  Plaintiffs' Claimed Rates Accord with Prevailing Los Angeles/Orange
                    County Rates ....................................................................................... 21

                2.  Counsel Should Be Awarded Their 2018 Rates To Compensate for
                    Delay in Payment .............................................................................. 22

V.      Plaintiffs Are Entitled to Recover Reasonable Costs of Litigation...................... 22

VI.     CONCLUSION............................................................................................ 23

1

# <u>TABLE OF AUTHORITIES</u>

2

**FEDERAL CASES**

3

*A.D. v. State Highway Patrol*,

4

No. 07-5483, 2013 U.S. Dist. LEXIS 169275 (N.D. Cal. 2013)............................18

5

*Alliance for the Wild Rockies v. Kruger*,

6

No. 12-150, 2014 U.S. Dist. LEXIS 2825 (D. Mont. Jan. 3, 2014) ......................11

7

*Armstrong v. Brown*,

8

805 F. Supp. 2d 918 (N.D. Cal. 2011).........................................................2192211

9

*Bartlett v. Mut. Pharm. Co.*,

10

742 F. Supp. 2d 182 (D.N.H. 2010) .........................................................................10

11

*Bennett v. Spear*, No. 93-6076,

12

1998 U.S. Dist. LEXIS 16087 (D. Or. May 20, 1998)............................................7

13

*Bouman v. Block*,

14

940 F.2d 1222 (9th Cir. 1991) .................................................................................22

15

*Camacho v. Bridgeport Financial, Inc.*,

16

523 F.3d 973 (9th Cir. 2008) ............................................................................18, 21

17

*Charlebois v. Angels Baseball LP*,

18

993 F. Supp. 2d 1109 (C.D. Cal. 2012) ..................................................................12

19

*City of Burlington v. Dague*,

20

505 U.S. 557 (1992)........................................................................................18, 20

21

*City of Riverside v. Rivera*,

22

477 U.S. 561 (1986)..................................................................................................3

23

*Davis v. City and County of San Francisco*,

24

976 F.2d 1536 (9th Cir. 1992) ........................................................10, 13, 22, 23

25

*Dixon v. City of Oakland*,

26

No. 12-05207, 2014 U.S. Dist. LEXIS 169688 (N.D. Cal. Dec. 8, 2014).............13

27

*Environmental Protection Information Center, Inc., v. Pacific Lumber Company*,

28

229 F. Supp. 2d 993 (N.D. Cal. 2002).....................................................................18

*Fischer v. SJB-P.D. Inc.*,

    214 F.3d 1115 (9th Cir. 2000) ..................................................................11

*Flores v. City of Westminster*,

    No. 11-0278, 2014 U.S. Dist. LEXIS 200551 (C.D. Cal Oct. 23, 2014) ...............20

*Gates v. Deukmejian*,

    987 F.2d 1392 (9th Cir. 1992) ..................................................................21

*Golden Gate Audubon Soc., Inc. v. U.S. Army Corps of Engineers*,

    732 F. Supp. 1014 (N.D. Cal. 1989) .....................................................10, 18

*Grove v. Wells Fargo Fin. Cal., Inc.*,

    606 F.3d 577 (9th Cir. 2010) ..................................................................23

*Habitat Educ. Ctr., Inc. v. Bosworth*,

    No. 03-1023, 2006 U.S. Dist. LEXIS 21922 (E.D. Wis. Mar. 28, 2006) ..............12

*Heard v. District of Columbia*,

    No. 02-296, 2006 U.S. Dist. LEXIS 62912,

    2006 WL 2568013 (D.C.D.C. Sept. 5, 2006) ...........................................13

*Hensley v. Eckerhart*,

    461 U.S. 424 (1983)...........................................................................9, 11

*Hirsch v. Compton Unified Sch. Dist.*,

    No. 12-01269, 2013 U.S. Dist. LEXIS 64556, 2013 WL 1898553

    (C.D. Cal. May 3, 2013) .......................................................................10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,

    No. 07-5944, 2016 U.S. Dist. LEXIS 102408 (N.D. Cal. Aug. 3, 2016)...............22

*Intamin, Ltd. v. Magnetar Technologies Corp.*,

    No. 04-0511, 2009 U.S. Dist. LEXIS 123604 (C.D. Cal. Dec. 28, 2009) .............11

*Kerr v. Screen Guild Extras, Inc.*,

    526 F.2d 67 (9th Cir. 1975) ..................................................................18

*Lujan v. Defenders of Wildlife*,

    504 U.S. 555 (1992)........................................................................5, 6, 9

*Marbled Murrelet v. Babbitt*,

    182 F.3d 1091 (9th Cir. 1999) ..................................................................8, 20

*Marbled Murrelet v. Pac. Lumber Co.*,

    163 F.R.D. 308 (N.D. Cal. 1995) ...................................................................23

*Missouri v. Jenkins*,

    491 U.S. 274 (1989)................................................................................10, 22

*Morales v. City of San Rafael*,

    96 F.3d 359 (9th Cir. 1996) ...........................................................................18

*Moreno v. City of Sacramento*,

    534 F.3d 1106 (9th Cir. 2008) ................................................................12, 13

*National Wildlife Federation v. Hanson*,

    859 F.2d 313 (4th Cir. 1988) ...........................................................................2

*Oberfelder v. Bertoli*,

    67 F. App'x 408 (9th Cir. 2003) ....................................................................22

*Oberfelder v. City of Petaluma*,

    No. C-98-1470, 2002 U.S. Dist. LEXIS 8635,

    2002 WL 472308 (N.D. Cal. Jan. 29, 2002)................................................13, 22

*Our Children's Earth Found. v. U.S. Envtl. Prot. Agency*,

    No. 13-02857, 2016 U.S. Dist. LEXIS 40626 (N.D. Cal. Mar. 25, 2016)............18

*Pacificans For A Scenic Coast v. Cal. DOT*,

    No. 15-02090, 2017 U.S. Dist. LEXIS 199145 (N.D. Cal. Nov. 22, 2017)..........22

*P.C. v. City of L.A.*,

    No. 07-3413, 2012 U.S. Dist. LEXIS 187549 (C.D. Cal. September 14, 2012)....12

*Pennsylvania v. Delaware Valley Citizens' Council*,

    478 U.S. 546 (1986)...................................................................................8, 20

*Perfect 10, Inc. v. Giganews, Inc.*,

    No. 11-07098, 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015)  20, 21, 23

*Pierce v. County of Orange*,

905 F. Supp.2d 1017 (C.D. Cal. 2012) ....................................................................11

*PIRG of N.J. v. Windall*,

51 F.3d 1179 (3rd Cir. 1994) ..............................................................................10

*Prisa Legal News v. Schwarzenneger*,

608 F.3d 446 (9th Cir. 2010) ...............................................................................21

*Resurrection Bay Conservation Alliance v. City of Seward*,

640 F.3d 1087 (9th Cir. 2011) ..........................................................................7, 8

*Rosenfeld v. U.S. Department of Justice*,

904 F. Supp. 2d 988 (N.D. Cal. 2012) ...............................................................11

*Ruckelshaus v. Sierra Club*,

463 U.S. 680, 694 (1983) ......................................................................................7

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,

No. 06-2845, 2012 U.S. Dist. LEXIS 42287 (E.D. Cal. Mar. 26, 2012),

*aff'd* 2014 U.S. App. LEXIS 12450 (9th Cir. July 1, 2014) ........................7, 19, 20

*Sierra Club v. Chevron U.S.A., Inc.*,

834 F.2d 1517 (9th Cir. 1987) ...............................................................................2

*Sierra Club v. EPA*,

625 F. Supp. 2d 863 (N.D. Cal. 2007) ................................................................10

*Sorenson v. Mink*,

239 F.3d 1140 (9th Cir. 2001) ..........................................................................9, 11

*Southwest Ctr. for Biological Diversity v. Bartel*,

2007 U.S. Dist. LEXIS 64232 (S.D. Cal. Aug. 30, 2007) ....................................11

*Spence v. Wells Fargo Bank, N.A.*,

No. 10-2057, 2012 U.S. Dist. LEXIS 32838 (E.D. Cal. Mar. 12, 2012) ...............11

*St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*,

574 F.3d 1054 (9th Cir. 2009) ......................................................................2, 7, 8

*Stetson v. Grissom*,

821 F.3d 1157 (9th Cir. 2016) ..............................................................................18

*Stonebrae, L.P. v. Toll Bros.*,

    No. 08-0221, 2011 U.S. Dist. LEXIS 39832 (N.D. Cal. Apr. 7, 2011) ................21

*Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*,

    460 F.3d 1253 (9th Cir. 2006) ...................................................10

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,

    130 F. Supp. 3d 1331 (C.D. Cal. 2015) ...............................................20

*U.S. v. Kalymon*,

    541 F.3d 624(6th Cir. 2008) .....................................................10

*Wishtoyo Found. v. United Water Conservation Dist.*,

    No.16-3869, 2017 U.S. Dist. LEXIS 213759 (C.D. Cal. Dec. 1, 2017) ..........5, 6, 9

*Wishtoyo Found. v. United Water Conservation Dist.*,

    No. 16-3869, 2018 U.S. Dist. LEXIS 174505 (Sept. 23, 2018).....1, 2, 3, 5, 6, 9, 11

**CODES**

16 U.S.C. § 1538 .................................................................1

16 U.S.C. § 1540(g)(4).........................................................2, 7, 23

42 U.S.C. §§ 1981 ...............................................................20

42 U.S.C. §§ 1988 ...............................................................20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a)(2)(B) ........................................................10

1

### NOTICE OF MOTION

2   PLEASE TAKE NOTICE, that Plaintiffs Wishtoyo Foundation ("Wishtoyo") and Center

3   for Biological Diversity (the "Center") will move for an award of attorneys fees and costs

4   against United Water Conservation District ("United") pursuant to Endangered Species

5   Act ("ESA") section 11(g), 16 U.S.C. § 1540(g)(4). This motion is based on the

6   Memorandum of Points & Authorities, supporting declarations and exhibits, and the

7   proposed order filed herewith. Plaintiffs are noticing this Motion for hearing on March 4,

8   2019 at 8:30 a.m. in Courtroom 9D, 9th Floor, 411 West Fourth Street, Santa Ana,

9   California. However, to promote judicial economy and conserve the parties' resources,

10   Plaintiffs are willing to waive a hearing on this matter pursuant to Local Rule 7-15; *see*,

11   *e.g.*, *Flores v. City of Westminster*, No. 11-0278, 2014 U.S. Dist. LEXIS 200551 at **2-3

12   (C.D. Cal Oct. 23, 2014) (J. Carter finding fee motion appropriate for resolution without

13   oral argument pursuant to Local Rule 7-15). This motion is made following multiple

14   telephonic and written communications between counsel which equated to the conference

15   of counsel pursuant to L.R. 7-3.

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     Introduction

Through the application of considerable expertise and skill through trial, Plaintiffs obtained a declaratory judgment on their Claim 1[1] that United's operation and maintenance of Vern Freeman Dam ("VFD") and attendant water diversions have violated ESA section 9, 16 U.S.C. § 1538, by taking Steelhead, an ESA-listed endangered species. *Wishtoyo Found. v. United Water Conservation Dist*., No. 16-3869, 2018 U.S. Dist. LEXIS 174505, at \*\*179-200 (Sept. 23, 2018). Plaintiffs have further won extensive injunctive relief to protect the Santa Clara River's endangered Steelhead. Specifically, the Court has enjoined United to limit its water diversions to leave enough water in the river to facilitate Steelhead migration through most of the species' migration season, to proceed expeditiously to study and design to a 100% level two potential alternatives for improved fish passage infrastructure that will remedy VFD's existing fish ladder's impediments to Steelhead passage and study two other alternatives as well, employ adaptive management monitoring methods to ensure sufficient river flows for Steelhead passage, develop and submit a plan to NMFS for modifying or replacing the VFD diversion canal fish screen to comply with NMFS criteria by January 31, 2020 and to complete construction and operate such modified or new fish screen no later than two years from NMFS' regulatory approval, submit complete regulatory applications for operation of VFD and construction of new fish passage infrastructure by June 30, 2020, complete construction of new fish passage infrastructure within two years from receiving final regulatory approvals, install a Didson camera at VFD to monitor Steelhead migration, and refrain from trapping and handling any Steelhead without NMFS authorization. *Id*. at \*\*214-220, 223-36. The Court has further retained jurisdiction, ordered United to coordinate with applicable regulatory agencies and respond to their comments on United's regulatory authorization applications, ordered United to submit

---

[1] Plaintiffs acknowledge that they did not prevail on their claims for take of Flycatcher and other bird species and, as discussed below, they are not seeking recovery for their time on these claims (Claims 2-4).

compliance reports every 120 days, and appointed a special master to ensure compliance with the injunction. *Id.* at **238-40; *see also* Minutes (Dkt. 215). This excellent result equates to the requisite success for Plaintiffs to be awarded attorneys' fees and costs in full against United under the ESA's fee shifting provision, ESA section 11(g), 16 U.S.C. § 1540(g)(4) for their time pursuing their Claim 1. Plaintiffs are entitled to their attorneys' lodestar, their reasonable hours incurred times prevailing Los Angeles/Orange County market rates, and their expert and other case costs.

Courts must generally award attorneys' fees to prevailing environmental citizen suit plaintiffs "to encourage the achievement of statutory goals" as fee shifting is typically required for public interest groups to secure representation. *St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1061 (9th Cir. 2009). As one court pointed out:

> [I]t is important to distinguish between traditional civil cases and environmental litigation . . . . The legislative history of the fee shifting provisions indicates that they were enacted to encourage litigation to ensure proper administrative implementation of the environmental statutes . . . . [I]t is appropriate for courts to award fees to partially prevailing parties where the action served to promote the purposes of the Act. Unlike plaintiffs in traditional civil actions, plaintiffs in environmental suits do not seek to vindicate personal rights and they obtain no financial benefit if they win.

*National Wildlife Federation v. Hanson,* 859 F.2d 313, 316-17 (4th Cir. 1988); *see also Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir. 1987) (acknowledging that citizens in environmental suits obtain no financial benefit from winning but instead vindicate public interests).

Plaintiffs are mindful that the award they seek, $xx in attorneys fees and $xx in costs, is a large sum from a local governmental agency. However, the fees and costs have accrued to this level due to United's tenacious, leave-no-stone unturned litigation approach and unwillingness to settle even discrete issues with Plaintiffs despite Plaintiffs'

intensive settlement efforts. "The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986). United had the means to hire two law firms to pursue a multi-faceted defense and cannot evade the law's plain requirement that it reimburse the prevailing Plaintiffs for their attorneys' lodestar and other costs.

## II.     United Multiplied the Litigation Costs.

United multiplied the litigation costs in numerous ways:

One, its answer cluttered the case with 15 affirmative defenses (Dkt. 15), threatening to compound discovery and trial time and forcing Plaintiffs to chase down rebuttal factual and legal arguments to defeat these affirmative defenses. Plaintiffs engaged in extended meet and confer discussion to attempt to persuade United to drop these affirmative defenses. Sproul Decl. ¶ 30. When initial attempts failed, Plaintiffs filed their Motion To Strike United's Affirmative Defenses (Dkt. 32). Only when faced with this motion did United agree to drop most of its affirmative defenses, but it still refused to drop its *res judicata* and laches defenses. Instead, United insisted on United deposing two of Plaintiffs' counsel in continued pursuit of these ultimately baseless defenses. Sproul Decl. ¶ 66. This further necessitated extensive factual and legal research by Plaintiffs' counsel and time spent drafting Plaintiffs' Third Motion In Limine To Exclude United Evidence for Its Res Judicata and Laches Defenses, and Testimonies of Jason Weiner and John Buse (Dkt. 94); Sproul Decl. ¶ 36. Only when faced with this motion did United finally drop its *res judicata* argument (in its opposition brief), but it still clung to its laches defense. Sproul Decl. ¶ 30. This adherence led to United calling Mr. Weiner to the trial stand and yet further time-consuming trial briefing of this issue. At the end, the Court sided with Plaintiffs to hold that United was wrong that laches barred Plaintiffs' citizen suit given the high bar for asserting a laches defense in such a setting, *Wishtoyo*, 2018 U.S. Dist. LEXIS 174505, at **196-200 (¶¶ 256-264).

Two, United submitted several expert reports wholly or partly devoted to opinions concerning its economic hardship in limiting its water diversions in support of its would-

be affirmative defense to Plaintiffs' injunctive relief request despite controlling Supreme Court and Ninth Circuit law establishing that such economic hardship is irrelevant. United rebuffed Plaintiffs multiple requests that United agree not to put on this proposed expert testimony, forcing Plaintiffs to bring a successful motion in limine to preclude this testimony. Dkt. 49 (motion in limine), Dkt. 58 (order granting motion in limine); Sproul Decl. ¶ 31.

Three, United compounded the time needed for discovery, summary judgment briefing, and trial by declining to admit most of the requests for admission propounded by Plaintiffs and rebuffing Plaintiffs' attempts to work out any more than minimal facts and law stipulations, forcing Plaintiffs to pursue extensive discovery, prepare very lengthy summary judgment exhibits and briefing, prepare and introduce very lengthy trial exhibits, develop extensive trial testimony, and trial argument. Sproul Decl. ¶¶ 24, 45.

Four, while Plaintiffs served extensive discovery on United, United compounded Plaintiffs' discovery time by withholding or otherwise failing to produce documents and coupling this with facially inadequate privilege logs. This forced Plaintiffs' counsel to engage in multiple time-consuming meet and confer discussions and to draft a motion to compel document production (the latter finally persuaded United to produce withheld documents). Sproul Decl. ¶ 26.

Five, United aggressively pursued its own discovery, serving 2 sets of requests for production of documents that included 70 separate document production request paragraphs, 2 sets of requests for admission that included 134 separate admission paragraphs, and 4 sets of interrogatories that included 50 separate interrogatories. United also served a subpoena on another environmental organization, CalTrout for documents related to communications between CalTrout and the Plaintiffs. As discussed in the concurrently filed Declaration of Jason Weiner in Support of Plaintiffs' Motion for Attorneys Fees and Costs ("Weiner Declaration") ¶ 27, responding to United's broad request for production of documents required counsel to review many boxes of documents and a great deal of electronic files for responsive documents and for privilege.

Plaintiffs' counsel further spent many hours drafting their privilege logs justifying withholding of documents they deemed privileged. Plaintiffs' counsel further spent time conferring with CalTrout concerning CalTrout's response to United's subpoena. Sproul Decl. ¶ 25.

Six, United attempted to block Plaintiffs from introducing the National Marine Fisheries Service ("NMFS") 2008 Biological Opinion ("2008 BiOp") into evidence both in support of Plaintiffs' Motion for Summary Judgment and at trial, a key document that the Court widely cited in its Trial Order. United's repeated objection to the 2008 BiOp forced Plaintiffs to brief (successfully) the 2008 BiOp's admissibility in Plaintiffs' Summary Judgment Reply Brief (Dkt. 97), its opposition to a separate United motion in limine (Dkt. 119), and its Proposed Trial Findings of Fact and Conclusions of Law (Dkt. 145). *Wishtoyo Found. v. United Water Conservation Dist.*, No.16-3869, 2017 U.S. Dist. LEXIS 213759, at **30-46 (C.D. Cal. Dec. 1, 2017) (summary judgment ruling addressing 2008 BiOp's admissibility); *Wishtoyo*, 2018 U.S. Dist. LEXIS 174505, at **15-16 (trial ruling addressing 2008 BiOp's admissibility); Sproul Decl. ¶¶ 32, 41.

Seven, United greatly compounded summary judgment briefing and trial briefing by a nearly 1,000-page objection to Plaintiffs' summary judgment evidence and 5 motions in limine. Nearly all of United's evidentiary objections failed, but they consumed vast hours responding point-by-point and devoting a great number of additional hours authenticating and otherwise establishing the admissibility of documents. *See Wishtoyo*, 2017 U.S. Dist. LEXIS 213759, at **30-47 (summary judgment ruling discussion of above issues); *Wishtoyo*, 2018 U.S. Dist. LEXIS 174505, at **14-16 (trial ruling discussion of above issues); Sproul Decl. ¶¶ 37-41, 67, 68.

Eight, United's summary judgment opposition challenge to Plaintiffs' standing on the basis that *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) limits ESA suit standing to Plaintiffs that have actually seen the species in issue in the wild and that Plaintiffs had failed to offer such proof forced Plaintiffs to have to submit additional standing declarations in support of its summary judgment reply as well as further legal

argument concerning the meaning of the *Lujan* standard—which persuaded the Court. *Wishtoyo*, 2017 U.S. Dist. LEXIS 213759, at \*\*52-58 (summary judgment ruling granting standing); Sproul Decl. ¶ 32.

Nine, United's claim that past harm could not constitute take for ESA section 9 liability in a citizen suit required Plaintiffs to research and successfully address case law in its summary judgment motion briefing establishing that a citizen plaintiff can establish "harm" to wildlife that constitutes "take" under ESA section 9 with evidence of past injury, present injury, or an "imminent threat" of future injury. *Wishtoyo*, 2017 U.S. Dist. LEXIS 213759, at \*\*65-66 (summary judgment ruling in Plaintiffs' favor on issue).

Ten, United's argument that acts of nature that interact with a structure, such as a river flowing into a dam, cannot constitute "take" further required Plaintiffs to research and successfully address case law in its summary judgment motion briefing establishing that United was wrong. *Wishtoyo*, 2017 U.S. Dist. LEXIS 213759, at \*\*66-67 (summary judgment ruling in Plaintiffs' favor on issue).

Eleven, United's motion to dismiss during trial on the grounds that NMFS is an indispensable party that must be joined in ESA citizen suits and that lack of such joinder required dismissal of Plaintiffs' suit further required a (successful) time-consuming opposition brief (Dkts. 164, 169). *Wishtoyo*, 2018 U.S. Dist. LEXIS 174505, at \*\*241-245 (trial ruling denying motion); Sproul Decl. ¶ 44.

Twelve, United's ultimate cause in facing Plaintiffs' extensive fees request is its repeated rebuffing of Plaintiffs' concerted effort to settle this case, which included three pre-filing conference calls, eight post-filing settlement conference calls, several written settlement proposals, an all-day settlement conference, and multiple court-directed breakout sessions during the summary judgment hearing and again at trial. Sproul Decl. ¶¶ 45-48.

The fees and costs facing United are now large, but by multiplying the time Plaintiffs had to spend to prevail as detailed above, it has itself to blame for the bill it now faces.

**III.  Plaintiffs Are Entitled to Recover Attorneys' Fees Under the ESA.**

   **A.  Plaintiffs Meet the ESA Standard for Fee Entitlement.**

Under the ESA, a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). Fee awards are "appropriate" where plaintiffs are prevailing or substantially prevailing parties, *i.e.*, have achieved "some degree of success on the merits" and there are no "special circumstances" rendering a fee award unjust. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.* ("*SYRCL*"), No. 06-2845, 2012 U.S. Dist. LEXIS 42287, at *9 (E.D. Cal. Mar. 26, 2012), *aff'd* 2014 U.S. App. LEXIS 12450 (9th Cir. July 1, 2014). Here, Plaintiffs were substantially prevailing parties and no "special circumstances" make a fee award unjust.

   **1.  Plaintiffs Achieved Significant Success on the Merits.**

"The threshold for sufficient relief to confer prevailing party status is not high. 'If the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind.'" *St. John's*, 574 F.3d at 1059; *see also Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1091 (9th Cir. 2011); *SYRCL*, 2012 U.S. Dist. LEXIS 42287, at *9. As noted, this Court granted Plaintiffs trial judgment that United violated ESA section 9 by unlawfully taking Steelhead and ordered extensive injunctive relief designed to protect Steelhead, prevent unlawful Steelhead take, prevent United from impeding Steelhead recovery, and preclude the fish's extirpation from the Santa Clara River. By prevailing on these significant ESA issues, Plaintiffs achieved the requisite degree of merits success. *See SYRCL*, 2012 U.S. Dist. LEXIS 42287, at **10-11; *Bennett v. Spear*, No. 93-6076, 1998 U.S. Dist. LEXIS 16087, at *4 (D. Or. May 20, 1998)

   **2.  No Special Circumstances Justify Denial of an Attorney Fee Award.**

In environmental cases, the "court's discretion to deny a fee award to a prevailing

plaintiff is narrow, and a denial of fees on the basis of 'special circumstances' is 'extremely rare.'" *Resurrection Bay*, 640 F.3d at 1092 (citations omitted). Fee awards to prevailing environmental citizen suit plaintiffs should be "the rule rather than the exception." *St. John's*, 574 F.3d at 1062. Here, Plaintiffs' diligent pursuit of this complex matter led to substantial relief--declaratory judgment and a comprehensive injunction. Awarding Plaintiffs their fees is thus mandatory under *St. John's* and *Resurrection Bay*.[2]

## IV. Plaintiffs Are Entitled to A Fully Compensatory Attorneys' Fee Award on Claim 1.

Plaintiffs' central aims in their Claim 1 were to ensure that United's VFD water diversions were regulated to allow Steelhead sufficient Santa Clara flow to migrate to and from spawning habitat, to require United to build a new fish passage infrastructure project and a new (or modified) fish screen that meets NMFS criteria for Steelhead to allow Steelhead to migrate successfully past VFD, to secure monitoring that would ensure United takes action to protect Steelhead, and to require United to move promptly

---

[2]  Previous rulings requiring a "substantial contribution" to the ESA's goals are no longer good law. The only requirement - beyond prevailing party status - for ESA fee eligibility is the absence of "special circumstances" making a fee award unjust. *Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1094-1096 (9th Cir. 1999) (previous Ninth Circuit rule, that "substantial contribution" to ESA goals needed for entitlement to ESA attorneys fees, overruled by *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546 (1986) that Clean Air Act ("CAA") fee shifting provision must be interpreted in same way as Civil Rights Acts, which imposes no showing of "substantial contribution" to statutory goals for fee entitlement, and finding that the ESA fee provision must be interpreted similarly to CAA fee provision); *St. John's*, 574 F.3d 1054, 1063 (9th Cir. 2009) (ESA and CAA are "broad public interest statutes that authorize citizen suits to enforce their substantive provisions" with attorney fee provisions that are "in all relevant ways identical," and to be interpreted in accord with *Delaware Valley* standard - such that denial of attorneys fees to prevailing plaintiffs is only permissible under "special circumstances"). Even if Plaintiffs had to show substantial contribution to ESA goals to obtain fees, the trial judgment holding that United violated ESA section 9 by taking Steelhead and imposing injunctive relief to protect Steelhead constitutes such a contribution.

---

1   to secure agency approvals needed for a new fish passage structure and a new or

2   modified fish screen, and subsequent Steelhead-safe and effective operation of VFD and

3   its new fish passage structure and fish screen in the future. The Court's Trial Order

4   vindicated these aims. Achieving Claim 1's central objective constitutes the "excellent

5   results" that warrants recovery of a fully compensatory fee for all hours reasonably

6   expended on Claim 1. *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) ("substantial

7   relief" equivalent to "excellent results"); *see also Sorenson v. Mink*, 239 F.3d 1140, 1147

8   (9th Cir. 2001) ("excellent result" occurred when the lawsuit represented "sustained legal

9   effort to bring about a common good.").[3]

---

[3] The ruling secured by Plaintiffs is also precedential and significant in clarifying important points of ESA law, including (1) that the Court should exclude United's proffered evidence concerning its economic hardship in limiting its water diversions as urged by Plaintiffs, (2) that the National Marine Fisheries Service ("NMFS") 2008 Biological Opinion ("2008 BiOp") was admissible into evidence and that the Bureau of Reclamation's rejection of the 2008 BiOp was irrelevant to its admissibility, (3) that NMFS biological opinions, including specifically the 2008 BiOp in this case, are relevant evidence to be considered in ESA section 9 take cases where such biological opinions analyze harm to the species in issue, (4) that United's challenge to Plaintiffs' standing on the basis that *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) limits ESA suit standing to Plaintiffs that have actually seen the species in issue in the wild and that Plaintiffs had failed to offer such proof was erroneous, (5) that trapping and trucking Steelhead on the Santa Clara River could constitute "harassment" of the species in addition to "harm" to the species, another form of "take" under ESA section 9, (6), a plaintiff can establish "harm" to wildlife that constitutes "take" under ESA section 9 with evidence of past injury, present injury, or an "imminent threat" of future injury and that United's claim that past harm could not constitute take for ESA section 9 liability in a citizen suit was wrong, (7) acts of nature that interact with a structure, such as a river flowing into a dam, can constitute "take" and United's argument to the contrary was wrong, (8) that United was wrong that laches barred Plaintiffs' citizen suit and clarifying the high bar for asserting a laches defense in such a setting, and (9) that NMFS is not an indispensable party that must be joined in ESA citizen suits and that lack of such joinder is not a basis for dismissing an ESA citizen suit. *Wishtoyo*, 2017 U.S. Dist. LEXIS 213759, at **30-67 (C.D. Cal. Dec. 1, 2017) (summary judgment ruling); *Wishtoyo*, 2018 U.S. Dist. LEXIS 174505, at **179-200, 241-245 (trial ruling).

---

### A.      Plaintiffs Are Entitled to Full Recovery of Their Lodestar.

Public interest counsel in fee shifting cases are entitled to compensation for the same tasks a private attorney performs in support of their client's position in litigation, including pre-filing case development work, researching and developing the factual and legal basis for the citizen's claims, drafting the required sixty-day citizen suit notice letter, developing and implementing litigation strategy; drafting pleadings, motions, discovery, stipulations and other court documents; helping experts prepare their expert reports including drafting or editing report language for expert review, modification and adoption; court appearances, travel necessary to the case, pursuing settlement negotiations, preparing their attorney fee argument, and even administrative advocacy work directly related to the litigation. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1543-45 (9th Cir. 1992); *PIRG of N.J. v. Windall,* 51 F.3d 1179, 1189 (3rd Cir. 1994) (time preparing sixty-day citizen suit notice compensable); *Sierra Club v. EPA*, 625 F. Supp. 2d 863, 871 (N.D. Cal. 2007) (pre-litigation background research and investigation, drafting notice letter, and other activities recoverable); *Golden Gate Audubon Soc., Inc. v. U.S. Army Corps of Engineers*, 732 F. Supp. 1014, 1018 (N.D. Cal. 1989) (pre-litigation telephone calls and meetings recoverable); *Bartlett v. Mut. Pharm. Co.*, 742 F. Supp. 2d 182 (D.N.H. 2010) (Fed. R. Civ. P. 26(a)(2)(B) and Advisory Committee note recognizing permissible role of counsel in assisting experts to prepare reports); *accord U.S. v. Kalymon*, 541 F.3d 624, 637-38 (6th Cir. 2008).

Additionally, Plaintiffs' time on paralegal tasks, either by their contract paralegal or by their attorneys is compensable at prevailing market rates for paralegals. *Hirsch v. Compton Unified Sch. Dist.*, No. 12-01269, 2013 U.S. Dist. LEXIS 64556, 2013 WL 1898553, at *3 (C.D. Cal. May 3, 2013), citing *Missouri v. Jenkins*, 491 U.S. 274, 286-88 (1989); *see also Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006); ("work performed by litigation support staff that directly support the substantive litigation (as opposed to routine clerical work) is compensable as part of an attorneys' fee award."), *aff'd*, 2017 U.S. App. LEXIS 1128

(9th Cir., Jan. 23, 2017); *Armstrong v. Brown*, 805 F. Supp. 2d 918, 922 (N.D. Cal. 2011) (awarding fees for "support staff"); *accord Spence v. Wells Fargo Bank, N.A.*, No. 10-2057, 2012 U.S. Dist. LEXIS 32838, at *5 (E.D. Cal. Mar. 12, 2012) (same); *Intamin, Ltd. v. Magnetar Technologies Corp.*, No. 04-0511, 2009 U.S. Dist. LEXIS 123604, at *3 (C.D. Cal. Dec. 28, 2009) (same); *Pierce v. County of Orange*, 905 F. Supp.2d 1017, 1031 (C.D. Cal. 2012) (rejecting arguments that lawyers should be denied compensation for performing relatively routine tasks when they were necessary and there was no other lesser paid staff to perform them); *Rosenfeld v. U.S. Department of Justice*, 904 F. Supp. 2d 988, 1006 (N.D. Cal. 2012) (same).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Sorenson*, 239 F.3d at 1145 (*citing Hensley*, 461 U.S. at 433). There is a "strong presumption" that this approach will result in a reasonable fee award, so the lodestar should only be adjusted in "rare and exceptional cases." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000). This is not such a case. Notably, the Court acknowledged "the extremely complex facts in this case," which are reflected in the 222 paragraphs of findings of fact issued by the Court in a 152-page opinion. Order (Dkt. 209) (published at *Wishtoyo*, 2018 U.S. Dist. LEXIS 174505, at *213). Litigating this factually complex case, which through the end of December 2018 generated a case docket of 251 entries, while countering steadfast opposition from United, and achieving substantial relief on the merits of Claim 1 fully justifies an award of all of Plaintiffs' attorneys' fees generated on Claim 1. *See Alliance for the Wild Rockies v. Kruger*, No. 12-150, 2014 U.S. Dist. LEXIS 2825, at *13 (D. Mont. Jan. 3, 2014) ("the amount of time spent by Plaintiffs' counsel was reasonable, particularly in light of the fees awarded in other environmental litigations. These cases are time-consuming and the process is arduous."); *Southwest Ctr. for Biological Diversity v. Bartel*, 2007 U.S. Dist. LEXIS 64232, at *26 (S.D. Cal. Aug. 30, 2007) (complex issues and decisional document, size of administrative record, Defendants' active opposition, and challenging legal issues

justified substantial expenditure of time); *Habitat Educ. Ctr., Inc. v. Bosworth*, No. 03-1023, 2006 U.S. Dist. LEXIS 21922, at *11 (E.D. Wis. Mar. 28, 2006) (noting case involved time-consuming analysis of complex decisional documents and extensive records).

When considering the number of hours reasonably expended in this case:

It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut." *Id.* at 1116.

As the Ninth Circuit has recognized, litigants such as Plaintiffs here have every incentive to keep down the costs of litigation. *Id.* at 1112. While Plaintiffs employed multiple attorneys, they had sound reasons for needing to do so (as did United, which had its own team of lawyers from two law firms). It is well-recognized that effective representation in complex civil litigation requires a team of attorneys. Time necessarily spent on communication among members of the team is not only expected, but critical-- and compensable. *E.g.*, *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1125 (C.D. Cal. 2012) ("the Court declines to reduce the hours simply because Class Counsel kept each other informed about the case and double-checked each other's work; indeed, many motions this Court denies would have benefitted from a second read and more strategizing by the attorneys involved."); *P.C. v. City of L.A.*, No. 07-3413, 2012 U.S. Dist. LEXIS 187549, at **17-18 (C.D. Cal. September 14, 2012) ("this Court does not

find the presence of multiple attorneys at depositions, hearings or trial to be unreasonable or atypical, especially as multiple clients were being represented. Indeed, it is far more effective to judge a deponent's demeanor based on an attorney's actual in-person perception; the ability to effectively discuss case strategy and division of labor may well depend on multiple view points presented by multiple attorneys"); *Dixon v. City of Oakland*, No. 12-05207, 2014 U.S. Dist. LEXIS 169688, at **39-41 (N.D. Cal. Dec. 8, 2014) ("the attendance of more than two attorneys is not per se duplicative….[*Oberfelder v. City of Petaluma*, No. C-98-1470, 2002 U.S. Dist. LEXIS 8635, 2002 WL 472308, at *7-8 (N.D. Cal. Jan. 29, 2002)] (rejecting arguments that attendance of more than one attorney at depositions, case management conferences, settlement conference, and site inspection was "improper or superfluous')….a team approach to solving the issues is useful during settlement conferences which test counsel's ingenuity and negotiating skills."); *Heard v. District of Columbia*, No. 02-296, 2006 U.S. Dist. LEXIS 62912, at **49-51, 2006 WL 2568013 (D.C.D.C. Sept. 5, 2006) ("having a senior associate and a partner work in collaboration on a brief during the week prior to its filing is not presumptively excessive… having two attorneys attend a deposition is standard practice"). While a litigation team should strive to avoid duplication, it is not necessary that they eliminate such altogether to be entitled to full recovery. *E.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (recognizing that some duplication is necessary when litigation extends over years). Plaintiffs' lead counsel Christopher Sproul closely directed the work of Plaintiffs' legal team to ensure timely and efficient production of winning argument, assigning unique tasks to co-counsel to avoid duplication to the extent feasible, and frequently and appropriately delegating tasks to junior attorneys billing at lower rates. Sproul Decl. ¶¶ 63-77, 86. Accordingly, Plaintiffs are entitled to recovery for *all* their attorneys' time. *See, e.g.*, *Davis*, 976 F.2d at 1544-45.

Achieving success on the merits required a substantial investment of Plaintiffs' time. Plaintiffs' counsel's declarations review the major litigation tasks performed in the case including: gathering and reviewing the factual record and developing the legal

theories to pursue prior to filing the case, drafting the complaint, attending to mandatory case management matters and efforts to streamline the case, drafting several sets of written discovery, responding to United's multiple sets of written discovery, taking and defending 21depositions, litigating 15 pre-trial and three post-trial motions, four pretrial court appearances for various case management conferences and motions hearings[4], attempting to minimize litigation and pursue settlement, trial preparation, 11 days of trial, and the October 1, 2018 post-trial hearing and subsequent appointment of a special master. Sproul Decl. ¶¶ 12-86; Weiner Decl. ¶¶ 24-31; Thompson Decl. ¶¶ 11-12; Kryzcka Decl. ¶¶ 8-10; Linn Decl. ¶¶ 10-11; Buse Decl. ¶¶ 11-12; Evenson Decl. ¶¶ 9-12; Barnes Decl. ¶¶ 6-9; Isaacs Decl. ¶¶ 6-9; Oxley Decl. ¶¶ 6-7; Melver Decl. ¶¶ 4-6; Rathje Decl. ¶¶ 7-9; Coyne Decl. ¶ 4; Edberg Decl. ¶ 2.

The initial case development work involved gathering and analyzing evidence supporting the potential claims and remedies in the case, investigating issues regarding standing, conducting legal research and developing the legal theories of the case, reaching consensus with clients and co-counsel on litigation goals and strategy, drafting and serving the requisite 60-day citizen suit notice letter, drafting Plaintiffs' complaint, and drafting a required notice of related case. Sproul Decl. ¶ 18; Weiner Decl. ¶ 26. As noted above, time necessarily spent researching the factual record, developing legal theories and claims pre-filing, and drafting notice letters and pleadings is recoverable.

Attending to mandatory case management matters required Plaintiffs' counsel to have multiple meet and confer communications with United's counsel to seek agreement on the dispositive motion schedule, alternative dispute resolution procedures, trial estimates, the likelihood of appearance of additional parties, the timing of expert witness disclosures, and discovery procedures, draft a joint "Report of Parties' Planning

---

[4] This included appearances for the following: (i) October 31, 2016 Scheduling Conference before Judge King, (ii), February 15, 2017 Status Conference before Judge Carter, (iii), October 16, 2017 Status Conference before Judge Carter, and (iv), November 29 and 30, 2017 hearing on Plaintiffs' Motion for Summary Judgment and Motion for Preliminary Injunction.

Meeting," and attend two scheduling conferences, one before Judge King in October 2016 and a second before Judge Carter in February 2017. Sproul Decl. ¶¶ 19-23.

Developing the evidence in this case required Plaintiffs to propound extensive written discovery: three sets of requests for production of documents that included 236 separate document production request paragraphs, 1 sets of requests for admission that included 180 separate admission paragraphs, and 2 sets of interrogatories that included 50 separate interrogatories. Plaintiffs further served 16 subpoenas on United consultants for documents. *Id*. ¶ 24. United provided multiple rounds of document productions in response to Plaintiffs' requests for production of documents and lengthy privilege logs indicating substantial document withholding. Plaintiffs repeatedly found United's document productions incomplete and its privilege logs to provide inadequate basis for withholding documents. Plaintiffs expressed its objections to United in multiple letters, email messages, and telephonic meet and confer discussions over many months. This concerted effort avoided motions to compel and secured thousands of pages of documents providing key evidence in support of Plaintiffs' claims. *Id*. ¶¶ 26, 28. Significant time was required of Plaintiffs to review and analyze the voluminous documents obtained from United in discovery and from NMFS via the Freedom of Information Act. Sproul Decl. ¶ 26; Weiner Decl. ¶ 27.

Plaintiffs had to respond to United's 2 sets of requests for production of documents that included 70 separate document production request paragraphs, 2 sets of requests for admission that included 134 separate admission paragraphs, and 4 sets of interrogatories that included 50 separate interrogatories. Plaintiffs also had to work with another environmental organization, CalTrout, on its response to United's document subpoena to CalTrout (to ensure protection of Plaintiffs' privilege claims). Responding to United's discovery and assisting CalTrout were time-consuming tasks that required sorting through a very large volume of records and preparation of lengthy privilege logs. Sproul Decl. ¶¶ 24-25, Weiner Decl. ¶ 27.

In addition to written discovery, Plaintiffs' counsel devoted many hours to the

extensive depositions in this case. Plaintiffs took 16 depositions and defended five depositions taken by United, most of which were complex expert witness depositions. Sproul Decl. ¶¶ 27, 56, 66.

The Plaintiffs and United filed and pursued a combined total of 15 pre-judgment motions, necessitating the expenditure of substantial amounts of Plaintiffs' attorneys' time. As detailed in the Sproul Declaration, Plaintiffs generally prevailed on most of these motions, which streamlined the issues for trial and/or contributed to Plaintiffs' ultimate trial success. Sproul Decl. ¶¶ 29-44. The time spent on the pre-trial motions was greatly increased by United's tenacious and detailed opposition.

Plaintiffs' counsel have devoted many hours attempting to minimize the hours spent on this litigation by the parties and their counsel and by the Court through the pursuit of request for admission responses, stipulations to resolve case management matters (including the admissibility of exhibits) and/or establish certain facts/resolve certain claims, and via settlement. Settlement efforts, as noted, included three pre-filing conference calls, eight post-filing settlement conference calls, exchange of several written settlement proposals informed by resource intensive work product produced by plaintiffs' expert witnesses and counsel, an all-day settlement conference, and multiple breakout sessions during the summary judgment hearing and again at trial. While settlement proved impossible and only some of these other efforts were successful, Plaintiffs' counsel were obligated by the Federal Rules of Civil Procedure and by the Local Rules to work with opposing counsel to attempt to narrow the issues, avoid litigation to the extent possible, and to achieve settlement. Sproul Decl. ¶¶ 45-54.

To prepare Plaintiffs' witnesses for trial examination and cross examination (and to prepare me as lead counsel to ask appropriate questions and introduce appropriate exhibits), Plaintiffs' counsel had to spend many hours in trial preparation sessions with their experts and other witness, plus NMFS representatives who also testified and their counsel. *Id*. at ¶ 55. Plaintiffs' counsel further had to review and prepare thousands of pages of trial exhibits and 21 deposition transcripts to prepare direct and cross

examination and select trial exhibits. *Id*. at ¶ 56. Trial preparation further mandated Plaintiffs to prepare nine lengthy and intricate court filings: (i) a Joint Trial Exhibit List (Dkt. 133), (ii) an Amended Joint Exhibit List (Dkt. 150), (iii) Plaintiffs' Memorandum of Contentions of Fact and Law (Dkt. 136), (iv) Plaintiffs' Witness List (Dkt. 134), (v) Objections to United's Trial Exhibits (Dkt. 142), (vi) Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Dkt. 145), (vii) Plaintiffs' Amended Proposed Findings of Fact and Conclusions of Law (Dkt. 147), (viii) a Pretrial Stipulation regarding Specified Exhibits To Be Admitted into Evidence for Truth of the Matters Asserted Therein (Dkts. 156, 157), and (ix) Plaintiffs' Supplemental Trial Proposed Findings of Facts and Conclusions of Law (Dkt. 171). Plaintiffs further had to review and consider United's Witness List (Dkt. 132), United's Memorandum of Contentions of Fact and Law (Dkt. 135), United's Proposed Findings of Fact and Conclusions of Law (Dkt. 144), United's Amended Memorandum of Contentions of Fact and Law (Dkt. 168), and United's Amended Exhibit List (Dkt. 172). Sproul Decl. at ¶ 57.

Conducting Plaintiffs' trial presentation was also time intensive, involving examination of 16 trial witnesses and the introduction of hundreds of trial exhibits involving a wide range of highly technical testimony involving complex matters of biology, hydrology and hydraulics and engineering over 11 trial days. *Id*. at ¶ 58.

The Court's September 25, 2018 Trial Order directed the Plaintiffs to promptly file a proposed judgment, which the Plaintiffs did on September 26, 2018 (Dkt. 211). Entry of judgment following the Court's September 25, 2018 Trial Order also became a time-consuming matter given United's objections to Plaintiffs' proposed judgment (Dkt. 218). This was resolved only after an October 1, 2018 hearing to address the parties' completing proposed judgments and extended discussion facilitated by Special Master Judge Smith and a second United motion to amend the judgment. *See* Dkts. 217, 218, 233; Sproul Decl. ¶¶ 59, 60.

After efforts to settle their fee recovery with United failed, Plaintiffs have spent considerable time drafting this fee motion. Sproul Decl. ¶ 62. A fee motion is necessarily

a complex and time-consuming endeavor as "plaintiffs have the burden of supporting the rates sought and time spent, and [are] required to review pertinent legal authority, obtain declarations, gather and present time records, research current hourly rates for Bay Area attorneys, and prepare the motion papers." *A.D. v. State Highway Patrol*, No. 07-5483, 2013 U.S. Dist. LEXIS 169275, at **23-24 (N.D. Cal. 2013). Plaintiffs are fully entitled to recover for their "fees on fees" sought here. *See, e.g.*, *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008); *Highway Patrol*, 2013 U.S. Dist. LEXIS 169275, at *23-*24 (awarding $120,970 in fees on fees); *Golden Gate*, 732 F. Supp. at 1022 (300 hours of fees on fees work reasonable given that briefs raised difficult issues concerning entitlement and appropriate fees amount); *see also* Sproul Decl. ¶ 62.

## B.   The Kerr Factors Support A Fully Compensatory Fee Award.

In determining a reasonable fee, the Court should also consider the factors articulated in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds, City of Burlington v. Dague*, 505 U.S. 557 (1992). These factors include: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) time limitations imposed by the client or the circumstances, (6) the results obtained, (7) the experience, reputation, and ability of the attorneys, (8) the 'undesirability' of the case, and (9) awards in similar cases. *Environmental Protection Information Center, Inc., v. Pacific Lumber Company*, 229 F. Supp. 2d 993, 1006 (N.D. Cal. 2002) (fees under ESA); *Our Children's Earth Found. v. U.S. Envtl. Prot. Agency*, No. 13-02857, 2016 U.S. Dist. LEXIS 40626, at **16-17 (N.D. Cal. Mar. 25, 2016) (fees under Clean Water Act and ESA); *see also Morales v. City of San Rafael*, 96 F.3d 359, 363-64 & n.9 (9th Cir. 1996); *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016).

Here, these factors support the reasonableness of Plaintiffs' lodestar and requested fees. Counsel are experienced environmental attorneys who demonstrated considerable skill in developing the evidence through dogged pursuit of discovery, presenting complex

issues of fact and law concerning the merits of specialized environmental claims in summary judgment and preliminary injunction motions and trial briefing, and briefing multiple evidentiary and other pre-trial motions; surviving Defendants' attempts to exclude key trial evidence and to have the case dismissed due to affirmative defenses or for failure to join NMFS in the case, examining 16 trial witnesses on complex technical issues in the fields of engineering, hydrology, hydraulics, and biology and presenting oral argument to the Court in the summary judgment and preliminary injunction hearing and at trial. Sproul Decl. ¶¶ 18-58; Weiner Decl. ¶¶ 24-31. While counsel's time invested was reasonable, it was substantial. *Id*. The substantial investment in attorney time spent litigating this case limited the availability of Plaintiffs' attorneys to work on other cases, and in some instances, required them to forgo other cases. Sproul Decl. ¶ 16.

In addition, at the outset, counsel took this case with some hesitation, recognizing that due to its factual and legal complexity and the likely resistance to settlement that the Plaintiffs could reasonably expect to encounter, that the case would require long hours over years without compensation from the clients--who could only afford legal representation from its lead counsel on a contingency basis. Sproul Decl. ¶¶ 16, 85; Weiner Decl. ¶ 33.

Finally, the amount of fees sought here is reasonable when compared to other fee awards. So far as Plaintiffs are aware, there are no Central District of California fee award decisions within the last ten years in citizen suits brought under the ESA—or any other federal environmental laws, making direct comparisons impossible. Sproul Decl. ¶ 161. The closest directly analogous case of which Plaintiffs are aware is the 2011 Eastern District of California decision *SYRCL* awarding $1,875,951.20 in a case finding federal agency violation of ESA section 7 (a case in which Mr. Sproul was also lead counsel). *SYRCL*, 2012 U.S. Dist. LEXIS 42287, at *20. However, there was no trial and much more limited discovery in *SYRCL* and thus substantially fewer hours incurred. Sproul Decl. ¶ 163. Even still, if the *SYRCL* award was adjusted to reflect a likely understated 3% rate of general inflation in the legal market, the *SYRCL* award would be the

equivalent of $2,307,183.20 in 2018. Moreover, if the *SYRCL* rate were adjusted using a rate of increase matching the approximate 53.64% increase in Mr. Sproul's 2011 billing rate awarded in *SYRCL* to that sought here in the Central District in 2018 (a more accurate increase rate that would take into account not only general inflation, but Mr. Sproul's greater experience in 2018 as compared to 2011—and reflect market data in the Central District as opposed to the out of forum market data necessarily used in *SYRCL,* an out of forum case), the *SYRCL* award would be $2,882,136.39. *Id.* Moreover, given the absence of directly comparable Central District fee award decisions under federal environmental laws, it would be appropriate to look to fee awards in other comparable complex civil litigation in the Central District. Many such awards essentially equal or exceed that sought by Plaintiffs here, underscoring the reasonableness of Plaintiffs' sought recovery. *E.g.*, *Flores v. City of Westminster*, No. 11-0278, 2014 U.S. Dist. LEXIS 200551 (C.D. Cal Oct. 23, 2014) (J. Carter). *Flores* is a reasonably analogous case as it involved a similar (slightly shorter) nine-day trial and a fee award against a local government entity under the civil rights statutes, 42 U.S.C. §§ 1981, *et seq*. Notably, "the purposes behind [the fee shifting provisions of federal environmental statutes] and [42 U.S.C.] § 1988 are nearly identical… They should be interpreted in a similar manner." *Delaware Valley Citizens' Council*, 478 U.S. at 559; see also *City of Burlington v. Dague*, 505 U.S. 557, 561-62, (1992) (noting Clean Water Act fee shifting provision "is similar to that of many other federal fee-shifting statutes;" "our case law construing what is a "reasonable" fee applies uniformly to all of them."); *Marbled Murrelet*, 182 F.3d at 1095. In *Flores*, this Court awarded $3,285,673.00 in attorneys fees in 2014. 2014 U.S. Dist. LEXIS 20055, at *38. If this sum were adjusted to match to reflect a 3% rate of general inflation in the legal market, it would be the equivalent of $3,698,053.91 in 2018 dollars. *See also Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331 (C.D. Cal. 2015) (awarding attorneys fees of $4,144,847.62); *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-07098, 2015 U.S. Dist. LEXIS 54063, at **86-87 (C.D. Cal. Mar. 24, 2015) (awarding attorneys fees of $5,213,117.06,

noting that Central District fee awards have been as high as $105 million).

### C.   Plaintiffs' Hourly Rates Are Reasonable.

#### 1.   Plaintiffs' Claimed Rates Accord with Prevailing Los Angeles/Orange County Rates.

Under the ESA, counsel are entitled to the hourly rates "prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979. The relevant community in this case is the Los Angeles/Orange County metropolitan area, given that this is where the Court sits. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Plaintiffs have supported in detail that their rates accord with prevailing Los Angeles/Orange County legal market rates for attorneys or paralegals with comparable skill and experience working on comparable legal tasks. Sproul Decl. ¶¶ 86-151; Weiner Decl. ¶¶ 36-37; Thompson Decl. ¶¶ 12-15; Kryzcka Decl. ¶ 11; Linn Decl. ¶¶ 12-23; Buse Decl. ¶ 13; Evenson Decl. ¶ 13; Barnes Decl. ¶ 10; Isaacs Decl. ¶ 10; Oxley Decl. ¶ 9; Melver Decl. ¶ 7; Rathje Decl. ¶¶ 10-12; Coyne Decl. ¶ 5; Edberg Decl. ¶ 3.

Following case law supporting this methodology, Plaintiffs have generally set their rates equivalent to the average rates awarded by this Court in a broad array of complex civil litigation.[5] *E.g.*, Sproul Decl. ¶¶ 87-158; Linn Decl. ¶¶ 12-23; *see, e.g., Prisa Legal News v. Schwarzenneger*, 608 F.3d 446, 455 (9th Cir. 2010) ("Although the state officials urge us to look only to the rates charged by other attorneys involved in prison litigation, the proper scope of comparison is not so limited, but rather extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter"); *Perfect 10*, 2015 U.S. Dist. LEXIS 54063, at *45; *Stonebrae, L.P. v. Toll Bros.*, No. 08-0221, 2011 U.S. Dist. LEXIS 39832, at **9-13 (N.D. Cal. Apr. 7, 2011).

Experienced Central District practitioners knowledgeable about prevailing market

---

[5] Developing such averages necessarily involves considering cases not arising under environmental law, as there have been no recent fee awards in environmental cases in this jurisdiction. Sproul Decl. ¶¶ 87, 154.

rates have opined that Plaintiffs' requested rates are within the range of prevailing market rates for attorneys with comparable expertise and skill. Cooper Decl. ¶¶ 9-16; Hunt Decl. ¶¶ 14-19; *see also* Schmidt Decl. ¶¶ 9-15. Plaintiffs' counsel further support their rates with a declaration prepared in another case by well-known attorney fee expert Richard Pearl, legal periodical information, the Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics in the Department of Labor, and previous court awards to them. Sproul Decl. ¶¶ 97, 101-103. Thus, Plaintiffs' time should be awarded fees at their claimed rates.

### 2. Counsel Should Be Awarded Their 2018 Rates To Compensate for Delay in Payment.

Attorney fee awards in public interest litigation should be appropriately adjusted to reflect the delay between when work is performed and when payment is received because "compensation received several years after the services were rendered…is not equivalent to the same dollar amount received reasonably promptly as legal services are performed, as would normally be the case with private billings." *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). "In granting fee awards, the Ninth Circuit uses current billing rates to compensate for the delay in receiving payment." *Oberfelder v. City of Petaluma*, No. 98-1470, 2002 U.S. Dist. LEXIS 8635, at *13 (N.D. Cal. Jan. 29, 2002) (citing *Davis*, 976 F.2d at 1548 and *Bouman v. Block*, 940 F.2d 1222, 1235 (9th Cir. 1991)), *aff'd sub nom. Oberfelder v. Bertoli*, 67 F. App'x 408 (9th Cir. 2003), *cert. denied*, 540 U.S. 1109 (2004); *see also Pacificans For A Scenic Coast v. Cal. DOT*, No. 15-02090, 2017 U.S. Dist. LEXIS 199145, at *4 (N.D. Cal. Nov. 22, 2017) (awarding 2017 rates for all work done in case, including that done in prior years); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2016 U.S. Dist. LEXIS 102408, at **73-75 (N.D. Cal. Aug. 3, 2016). Accordingly, Plaintiffs' fee recovery should be determined utilizing their attorneys' 2018 rates.

### V. Plaintiffs Are Entitled to Recover Reasonable Costs of Litigation.

Plaintiffs are entitled to recover reasonable costs under the ESA, including expert

witness costs. *See* 16 U.S.C. § 1540(g)(4); *Marbled Murrelet v. Pac. Lumber Co.*, 163 F.R.D. 308, 328 (N.D. Cal. 1995) (citing *Davis*, 976 F.2d at 1556). Plaintiffs incurred $290,616.26 in costs for court filing fees, court courtesy copies, postage and other document delivery charges, deposition transcripts, attorney travel, electronic legal research, and expert witness costs. Sproul Decl. ¶¶ 159, 160, Exs. 4, 5, 6; Weiner Decl. ¶¶ 42-46, Exs. 2, 3; Buse Decl. ¶¶ 14-19, Exs. 2-3. These costs are typical expenses normally charged to a paying client, were necessarily incurred, and are recoverable in full. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579-82 (9th Cir. 2010); *Perfect 10*, 2015 U.S. Dist. LEXIS 54063, at **89-91; *Marbled Murrelet*, 163 F.R.D. at 328-29.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award $3,131,597.40 in attorneys' fees and $290,616.26 in costs for a total of $3,422,213.66 against United.[6] Sproul Decl. Exs. 1-6. The fees and costs requested against United reflect work necessarily incurred in successfully pursuing Claim 1 for United's take of Steelhead, careful exercise of billing judgment to exclude time spent on Claims 2-4 that Plaintiffs did not prevail on, and work on the instant fee motion. While financial hardship is not a relevant factor in fee award decisions, Plaintiffs are amenable to United having time to pay fees and costs in full to reduce the impact of the fee award. Specifically, Plaintiffs suggest United be ordered to tender payment in three installments as follows: $1,334,482.06 within 30 days of the date of this Order (costs plus one-third of Plaintiffs' fees), $1,043,865.80 by January 31, 2020, and $1,043,865.80 by January 31, 2021.

Respectfully submitted,

Dated:  January 9, 2019

*Christopher A. Sproul*

Christopher Sproul, Attorney for Plaintiffs

---

[6] Plaintiffs will incur additional fees and costs in completing this fee motion, reviewing United' opposition, and replying to this opposition. Plaintiffs will seek these additional fees and costs in their reply briefing.