Christopher A. Sproul (Cal. Bar No. 126398)
Molly Coyne (Cal. Bar No. 312914)
Heather Kryczka (Cal. Bar No. 314401)
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: mcoyne@enviroadvocates.com
Email: heather@enviroadvocates.com

Jason Weiner (Cal. Bar No. 259264)
Geneva EB Thompson (Cal. Bar No. 315725)
Wishtoyo Foundation and its Ventura Coastkeeper Program
9452 Telephone Road #432
Ventura, CA 93004
Telephone: (805) 823-3301
Facsimile: (805) 258-5107
Email: jweiner.venturacoastkeeper@wishtoyo.org
Email: gthompson@wishtoyo.org

Attorneys for Plaintiffs
WISHTOYO FOUNDATION and CENTER FOR BIOLOGICAL DIVERSITY
*Additional Counsel Listed on Next Page*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISHTOYO FOUNDATION, CENTER FOR BIOLOGICAL DIVERSITY, and VENTURA COASTKEEPER, a program of WISHTOYO FOUNDATION,<br><br>               Plaintiffs,<br><br>    v.<br><br>UNITED WATER CONSERVATION DISTRICT,<br><br>              Defendant. | Case No: 2:16-cv-03869-DOC-PLA<br><br>**DECLARATION OF CHRISTOPHER SPROUL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

*Additional Counsel for Plaintiffs*

John Buse (Cal. Bar No. 163156)
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: (510) 844-7125
Fax: (510) 844-7150
jbuse@biologicaldiversity.org

Patricia Linn (Cal. Bar No. 253015)
Law Office of Patricia Linn
115 Oakdale Avenue
Mill Valley, CA 94941
Telephone: (415) 388-2303
Email: pweisselberg@wans.net

I, Christopher Sproul, hereby declare under penalty of law that the following facts are true and correct:

1.      I am an attorney licensed to practice law in the State of California. I am the senior lawyer in Environmental Advocates, a public interest law firm, and counsel for Plaintiffs Wishtoyo Foundation and Center for Biological Diversity. I make this declaration based upon my personal knowledge, unless otherwise stated, and I am competent to testify to the matters set forth herein. I make this Declaration in support of Plaintiffs' Motion for Attorneys' Fees and Costs.

## I.      Christopher Sproul Biographical Information

2.      I earned my Juris Doctorate from the University of California, Berkeley (Boalt Hall) in June 1986 and a Master of Arts degree in political science from the University of California, Santa Barbara in August 1982.

3.      I have been a member of the California Bar since December 1986. I have also been a member of the bar of the United States District Court for the Central District of California since 1986 and I am a member of several other federal bars, including the bars for the U.S. Court of Appeals for the Ninth Circuit, the U.S. District Court for the Eastern District of California, the U.S. District Court for the Northern District of California, and the U.S. District Court for the District of Hawaii.

4.      I have directed or co-directed Environmental Advocates for over 16 years. I have exclusively represented tribal governments, non-profit environmental organizations and individuals seeking to advance environmental protection through judicial litigation and administrative advocacy under the major environmental laws, including the Endangered Species Act ("ESA"), Clean Water Act ("CWA"), Clean Air Act ("CAA"), Resource Conservation and Recovery Act ("RCRA"), National Environmental Policy Act ("NEPA"), the Coastal Zone Management Act ("CZMA"), the California Environmental Quality Act ("CEQA") and other state and federal laws, including the Administrative Procedure Act ("APA"), California Code of Civil Procedure sections 1094.5 and 1085, the Freedom of Information Act ("FOIA"), and the California Public Records Act

("PRA").

5. During my time as a partner at Environmental Advocates, I have represented environmental organization clients in several ESA, CWA, RCRA, CAA, NEPA, CZMA, APA and/or APA citizen suits against various federal agencies, state agencies, businesses, and municipalities. I have also represented such clients in various suits brought under FOIA against federal agencies. I currently am lead counsel or co-lead counsel in several cases in active litigation and additional cases involving consent decree compliance monitoring. I have also provided advice to several environmental organization clients concerning the potential for several other citizen suit enforcement actions for violations of various environmental laws. I have also presented public hearing testimony and drafted written comments to government agencies concerning various environmental regulatory decisions.

6. The cases I have brought and continue to bring on behalf of my clients are typically "impact litigation," *i.e.*, cases designed to have significant effect on environmental law and policy and significantly advance environmental protection. Numerous of these actions have resulted in court orders or judicial consent decrees imposing far-reaching injunctive relief for environmental remediation and/or remedies addressing agency responsibilities under the environmental laws. Cases where I have served as lead counsel or as co-lead counsel have had a significant impact on environmental law, as they have resulted in over 60 decisions published in the Federal Reporter, Federal Supplement, LEXIS, and/or Westlaw. That many of these cases have established important precedent in environmental law or under FOIA is further reflected in the numerous subsequent citations by other decisions to the cases where I served as counsel. A bibliography of these cases is set forth as Exhibit 7 to this declaration. Many of these cases have involved issues or concerns of widespread public interest and that have accordingly attracted extensive media coverage in newspapers, radio, television, and/or environmental periodicals or blogs and social media commentary. I have also brought actions against federal agencies under the APA and writ of mandate actions

against state agencies challenging agency actions or inaction.

7.     Prior to joining Environmental Advocates, I served as an Assistant Regional Counsel for the United States Environmental Protection Agency ("EPA") from 1987 until 2002. During my 15-year tenure at EPA, my primary concentration was representing EPA in judicial and administrative enforcement actions brought under the environmental statutes administered by EPA. The majority of these actions were brought under the CWA, but I also worked on EPA enforcement actions brought under RCRA, the CAA, the Safe Drinking Water Act, and the Marine Protection Research and Sanctuaries Act (MPRSA). I also worked on several permitting matters, including litigation challenges to EPA CWA NPDES permit decisions; assisted in EPA reviews of state environmental programs; counseled EPA staff in responding to FOIA responses; participated in work groups tasked with drafting EPA regulations and proposed amendments to the CWA; and provided client counseling to numerous EPA regulatory officials concerning compliance with the CWA, the ESA, the CZMA, the MPRSA, and the APA.

8.     From 1997 to 1998, through an intergovernmental personnel agreement between EPA and the State of Hawaii, I worked for the Hawaii Attorney General as a staff attorney. In this role, I represented the Hawaii Department of Health in several water pollution enforcement actions under the Hawaii equivalent of the federal CWA, provided advice to the Department of Health concerning many regulatory matters, and provided advice to the Hawaii State Legislature concerning environmental legislation related to water pollution.

9.     From 2004 to 2010, I was an Adjunct Professor at Golden Gate University School of Law in San Francisco where I taught a course on environmental litigation.

10.     I also served as a law clerk to U.S. District Court Judge William J. Rea, in the U.S. District Court for the Central District of California in 1986 and 1987.

11.     Over the course of my years practicing law, I have filed several motions for attorneys' fees and costs as well as mediation briefs in fee negotiation matters.

## II.   Explanation of Tasks Performed, Hours and Lodestar Incurred in this Case

12.     United heavily contested Plaintiffs' claims, thus necessitating extensive litigation efforts by me and my co-counsel. In this section, I highlight the major litigation tasks performed by Plaintiffs' counsel, including drafting the pleadings, gathering and analyzing the substantial factual record, litigating the major pretrial motions, attempting to minimize litigation and pursue settlement, preparing for and conducting Plaintiffs' case at trial, working on post-trial pleadings including amendments to the judgment, and this motion for attorneys fees and costs. In this section, I also provide a summary of each attorney's specific contributions to the case.

### A.   Attorneys' Work on Case and Lodestar

13.     This case has been extraordinarily complex, involving numerous issues of fact and law and a multitude of motions and other filings. This is reflected, *inter alia*, in the 252 docket entries as of January, 2019, four pretrial court appearances for various case management conferences and motions hearings[1], 11 days of trial, and the October 1, 2018 post-trial hearing and subsequent appointment of a special master.

14.     To successfully litigate this case, Plaintiffs' counsel have through December 21, 2018 devoted 7,048 hours to litigating this matter. As discussed further below, Plaintiffs' counsel have reduced their billable hours to reflect billing judgment and are only seeking to recover from for 5,239.73 billable hours, for a total lodestar of $3,131,597.40. The attached Exhibit 1 summarizes the claimed attorney lodestars for work performed by Plaintiffs' counsel and paralegals in this case up through December 21, 2018 (additional attorney work required to complete briefing on this Motion for Attorneys Fees, including Plaintiffs' reply briefing, will be documented in subsequent declarations submitted on reply). My own time records are attached to this declaration as

---

[1] This included appearances for the following: (i), October 31, 2016 Scheduling Conference before Judge King, (ii), February 15, 2017 Status Conference before Judge Carter, (iii), October 16, 2017 Status Conference before Judge Carter, and (iv), November 29 and 30, 2017 hearing on Plaintiffs' Motion for Summary Judgment and Motion for Preliminary Injunction.

Exhibit 2. Each individual attorney's records are exhibits to their individual declarations. In addition, I have attached a compilation of all of the attorney and paralegal time records as Exhibit 3.

15.     As also noted in Exhibit 1, some attorneys spent time performing tasks that would be reasonably charged at a paralegal rate. In addition, Plaintiffs had paralegals Dawn Edberg and Amy Mar perform certain paralegal tasks. In my experience, it is customary in the California jurisdictions in which I have practiced to track paralegal task time separately from attorney time and bill this time at a lower rate. This is the approach I have applied in several fee petitions I have personally brought in the Northern District and Eastern District of California (with subsequent court awards approving this approach), the approach applied by my co-counsel in other cases with which I am familiar and an approach well supported by case law including numerous decisions in the Central District of California.[2] Therefore, I and my co-counsel have applied a different billing rate to this paralegal time. The result is two sets of hours: "attorney time," which includes only those hours for which the attorneys were performing legal services appropriate for an attorney, and "paralegal time," which includes those hours for which the attorneys were performing paralegal tasks. As depicted in Exhibit 1, I and my co-counsel have multiplied the total "attorney time" by the attorney's hourly rate and the total "paralegal rate" by the reduced rate for paralegals to arrive at the total lodestar for each attorney. These lodestars are based on the prevailing market rates for attorneys and paralegals in the Central District of California described in Sections V and VI below.

---

[2] *See, e.g.*, *Hirsch v. Compton Unified Sch. Dist.*, No. CV 12-01269, 2013 U.S. Dist. LEXIS 64556, 2013 WL 1898553, at *3 (C.D. Cal. May 3, 2013), citing *Missouri v. Jenkins*, 491 U.S. 274, 286-88 (1989); *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-07098, 2015 U.S. Dist. LEXIS 54063, at **62-63 (C.D. Cal. Mar. 24, 2015); *Intamin, Ltd. v. Magnetar Technologies Corp.*, No. 04-0511, 2009 U.S. Dist. LEXIS 123604, 2009 WL 5215393, at *3 (C.D. Cal. Dec. 28, 2009); *Pierce v. County of Orange*, 905 F. Supp.2d 1017, 1031 (C.D. Cal. 2012); *Elder v. National Conference of Bar* Examiners, 2011 U.S. Dist LEXIS 102205, at *11.

16.     Devoting the hours necessary to bring this case to a successful outcome has required Environmental Advocates to forgo other cases where compensation would have been more quickly recovered, considerably diminishing our short-term incomes. At the outset, Environmental Advocates took this case with some hesitation, recognizing that due to its factual and legal complexity and the likely resistance to settlement that the Plaintiffs could reasonably expect to encounter, that the case would require long hours over many years without compensation from the clients, who could only afford legal representation on a contingency basis. I was aware that this case would not likely settle based on my extensive experience in working on administrative advocacy and judicial matters or academically studying and teaching matters involving the allocation of water and the operation of dams and water diversions in California. I have never seen judicial or administrative controversies involving the operation of California dams or water diversions not require long years and long hours of legal work to resolve. So this case had significant downsides making it less than desirable from a business prospective.

17.     In this section, I summarize the substantial work performed throughout this case by Plaintiffs' attorneys. I have divided the major litigation tasks into eight main categories: (1) Pleadings; (2) Case Management/Non-Motion Filings; (3) Discovery and Case Fact Investigation/Development, (4) Pretrial Motions; (5) Attempts to Minimize Litigation and Pursue Settlement; (6) Trial Preparation and Trial; (7) Post-trial Pleadings and Motions, and (8) Plaintiffs' Motion for Attorneys Fees and Costs. In the following Section III, I summarize the billing judgment cuts I have made to reduce the number of hours for which Plaintiffs seek recovery.

### 1.     Pleadings

18.     From mid-summer 2015 to June 2016, Plaintiffs' counsel performed a variety of pre-litigation case development and case initiation tasks. This included time spent gathering and analyzing factual information on the potential claims and remedies in the case, investigating issues regarding standing, conducting legal research and developing the legal theories of the case, communicating with clients and co-counsel

regarding the potential to bring the case, drafting and serving the mandatory ESA citizen suit notice letter, preparing a notice of related case (Dkt. 3) (which resulted in the case initially being transferred from Judge Andre Birotte to Judge George King when the latter agreed with Plaintiffs that this case was related to a previous case that he heard), drafting the original complaint and summons and filing the complaint and proposed summons on June 2, 2016 (Dkts. 1, 6), and serving the summons and complaint.

### 2. Case Management/ Non-Motion Filings

19.     A few weeks after Plaintiffs filed the case, on June 27, 2016, Judge King issued an Order Re: Case Management (Dkt. 10). While this Order did not expressly mandate a deadline for the parties to meet and confer concerning case management, in accord with Federal Rule of Civil Procedure 26(f), Plaintiffs proactively wrote to United on June 28, 2016 requesting that the parties promptly schedule a meeting pursuant to Federal Rule of Civil Procedure 26(f) and Local Rule 26-1 to discuss, *inter alia*, whether the case should be treated as a "Complex Case" within the meaning of the Local Rules, the dispositive motion schedule, alternative dispute resolution procedures, the preliminary estimate of the time required for trial, the likelihood of appearance of additional parties, and the timing of expert witness disclosures.

20.     On August 30, 2016, Judge King issued an Order Setting Scheduling Conference (Dkt. 16) which mandated that the parties file a joint "Report of Parties' Planning Meeting" by October 17, 2016. Plaintiffs proceeded to confer with United counsel to prepare this report.

21.     During the summer of 2016, Plaintiffs' counsel wrote to United on several occasions with proposals for document preservation and conducting and completing discovery, and potential approaches to agree to certain findings of fact and conclusions of law to narrow the issues. On September 1, 2016, Plaintiffs' counsel held their Rule 26(f) meeting with United counsel. Following up on the discussion between counsel at the September 1, 2016 meeting and Judge King's August 30, 2016 Order, Plaintiffs' counsel drafted and provided United with a proposed Report of Parties' Planning Meeting which

addressed the basis for subject matter jurisdiction, the factual and legal bases for Plaintiffs' claims, document preservation; a case schedule for initial disclosures, fact discovery cutoff, deadlines for motions to compel fact discovery, expert reports deadlines, dispositive motion cut off, pretrial conference date, and trial; a discovery plan, and a proposal for ADR. Plaintiffs' and United's counsel exchanged several revisions to this draft report before reaching agreement on their final Joint Rule 26(f) Report, which the parties filed on October 10, 2016 (Dkt. 20).

22.     Plaintiffs subsequently prepared for and attended Judge King's Scheduling Conference on October 31, 2016. (Dkt. 21).

23.     On January 9, 2017, this case was transferred from Judge King to Judge Carter. (Dkt. 23). Plaintiffs' counsel prepared for and attended a subsequent Status Conference held before Judge Carter on February 15, 2017 (Dkt. 28) to address a revised case schedule order. Plaintiffs' counsel prepared for and attended a second Status Conference before Judge Carter on October 16, 2017 to address amending the case scheduling order (Dkt. 88).

### 3.     Discovery and Case Fact Investigation/Development

24.     To develop the evidence presented in their motions for summary judgment and preliminary injunction and at trial and to meet their obligations under the Federal Rules of Civil Procedure, Plaintiffs' counsel both conducted and responded to extensive discovery. This included both drafting and responding to extensive written discovery. Plaintiffs exchanged and then supplemented initial disclosures that identified expected witnesses and their expected testimonies and disclosed voluminous pertinent documents as potential evidence. Plaintiffs further propounded on United three sets of requests for production of documents that included 236 separate document production request paragraphs, 1 set of requests for admission that included 180 separate admission paragraphs, and 2 sets of interrogatories that included 50 separate interrogatories. Plaintiffs further served 16 subpoenas on United consultants for documents.

25.     In addition to propounding their own discovery, Plaintiffs had to respond to United's extensive written discovery: 2 sets of requests for production of documents that included 70 separate document production request paragraphs, 2 sets of requests for admission that included 134 separate admission paragraphs, and 4 sets of interrogatories that included 50 separate interrogatories. United also served a subpoena on another environmental organization, CalTrout for documents related to communications between CalTrout and the Plaintiffs. As discussed in the concurrently filed Declaration of Jason Weiner in Support of Plaintiffs' Motion for Attorneys Fees and Costs ("Weiner Declaration"), responding to United's request for production of documents required counsel to review many boxes of documents and a great deal of electronic files for responsive documents and for privilege. Plaintiffs' counsel further spent many hours drafting their privilege logs justifying withholding of documents they deemed privileged. Plaintiffs' counsel further spent time conferring with CalTrout concerning CalTrout's response to United's subpoena to ensure CalTrout did not release privileged documents and thus waive Plaintiffs' privilege claims.

26.     United provided multiple rounds of document productions in response to Plaintiffs' requests for production of documents and lengthy privilege logs indicating substantial document withholding. Plaintiffs repeatedly found United's document productions incomplete and its privilege logs to provide inadequate basis for withholding documents. Plaintiffs expressed its objections to United in multiple letters, email messages, and telephonic meet and confer discussions over many months. Resolving Plaintiffs' objections required Plaintiffs to draft a motion to compel United's document production to present to United as potentially the only path to resolving some of the document production disputes. After Plaintiffs shared their plans to imminently file this motion to compel, United and Plaintiffs were able to work out a stipulation for an extension of the deadline for Plaintiffs' motion to compel (Ex Parte Application to Extend Time to File a Motion to Compel (Dkt. 59 September 12, 2017)—and then resolve this discovery dispute during this extended period. Significant time was required

of Plaintiffs to review and analyze the voluminous documents obtained from United in discovery and from National Marine Fishery Service ("NMFS") via the Freedom of Information Act.

27.     In addition to written discovery, Plaintiffs' counsel devoted many hours to the extensive depositions in this case. Plaintiffs took 16 depositions of 12 witnesses, including the following percipient/lay witnesses: Michael Booth, Catherine McCalvin (three depositions as she was deposed three times, twice in her individual capacity and once as a Federal Rule of Civil Procedure 30(b)(6) witness), Anthony Emmert, Craig Morton, Jonathan Mann, and Kozmo Bates, and 6 United expert witnesses: Dudley Reiser, Steven Howard, Dana Postlewait, Edward Wallace, Murray McEachron (three depositions as he was deposed three times), and John Hindley. Plaintiffs defended five depositions taken by United, the depositions of the following percipient/lay witnesses: Jason Weiner and John Buse; and three expert witnesses: Sharon Kramer, Chris Hammersmark, and Mary Whitfield. Several disputes arose concerning the timing and conduct of these depositions, which required multiple rounds of additional meet and confer discussion between Plaintiffs' and United's counsel. Through this time intensive discussion, Plaintiffs' counsel were able to resolve these disputes without additional motions.

28.     Examples of discovery disputes and Plaintiffs' resolution of these conflicts through hours of meet and confer consultation with United include the following:

(i) In an effort to minimize litigation costs, in July 2017, Plaintiffs' counsel served an additional set of interrogatories (propounded by Center for Biological Diversity) on discrete factual questions that had not been resolved by United's written discovery responses and deposition testimony to date along with a proposal to United that it answer these interrogatories in lieu of additional deposition testimony from United personnel Mike Booth and Murray McEachron. United initially objected that this set of interrogatories from Center for Biological Diversity exceeded the number of allowed to the Plaintiffs. However, through a

series of meet and confer communications (which took Plaintiffs' counsel considerable time), United ultimately agreed to answer the interrogatories and Plaintiffs in turn agreed not to take additional depositions of Mike Booth and Murray McEachron. This turned out to be much more efficient way of resolving these factual questions and one that avoided discovery dispute motions.

(ii)    In August 2017, Plaintiffs' counsel objected to United's disclosure that it intended to have Murray McEachron provide expert testimony, but had not disclosed: (a) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (b) a summary of the facts and opinions to which the witness is expected to testify as required by Federal Rule of Civil Procedure 26(a)(2). Through further meet and confer discussion, Plaintiffs' counsel secured United's agreement to provide this missing disclosure, obviating the need for a discovery dispute motion on this topic.

(iii) Also in August 2017, Plaintiffs' counsel expressed objections to United's approach to asserting objections during depositions in letters and email messages, requested meet and confer over Plaintiffs' objections, and were able to reach an agreement on a revised approach in a face-to-face meeting that obviated the need for a discovery motion to limit United's objection approach.

### 4.    Pre-Judgment Motions

29.    The Plaintiffs and United filed and pursued a combined total of 15 pre-judgment motions, necessitating the expenditure of substantial amounts of Plaintiffs' attorneys' time. As described below, Plaintiffs generally prevailed on most of these motions, which streamlined the issues for trial and/or contributed to Plaintiffs' ultimate trial success.

30.    <u>Plaintiffs' Motion to Strike United Affirmative Defenses</u>: In February through March 2017, Plaintiffs developed and pursued their Motion To Strike United's Affirmative Defenses (Dkt. 32, March 6, 2017). Plaintiffs only brought this motion after initial attempts to persuade United to drop its affirmative defenses failed. Plaintiffs

brought this motion with the intention of minimizing the issues that could be litigated in this case, thus reducing discovery, streamlining summary judgment briefing, and reducing the number of issues for trial, thus shortening the trial. Pursuing this motion required analysis of United's Answer, legal research to develop authority to counter United's asserted affirmative defenses, drafting a detailed motion with separate legal analyses on several distinct affirmative defense theories, and time spent conferring with United over the motion. Conferring with United's counsel after United was faced with this filed motion led Plaintiffs to successfully persuade United to stipulate to withdrawal of several of its affirmative defenses and to file an amended answer with a more definite statement concerning other of its affirmative defenses. Stipulation to Withdraw Motion to Strike United Affirmative Defenses (Dkt. 41, March 24, 2017); Order Granting Stipulation to withdraw Motion to Strike United Affirmative Defenses (Dkt. 42, March 27, 2017).

31.  <u>Plaintiffs' Motion In Limine To Exclude Expert Testimony of Barbara Wyse, Murray McEachron, Steven Bachman, Stuart Beck, Steve Howard, and Dudley Reiser</u>: In July through early September 2017, Plaintiffs developed and pursued Plaintiffs' Motion In Limine To Exclude Expert Testimony of Barbara Wyse, Murray McEachron, Steven Bachman, Stuart Beck, Steve Howard, and Dudley Reiser (Dkt. 49, Aug. 17, 2017). After trying and failing to persuade United to drop this proposed testimony, Plaintiffs again brought this motion with the intention of minimizing the issues that could be litigated in this case (specifically, to preclude United from generating litigation concerning the irrelevant issue of economic hardship in conjunction with Plaintiffs' requested injunctive relief in this ESA case), thus reducing discovery (by obviating the need to depose multiple United witnesses about United's alleged economic hardship), streamlining summary judgment briefing, and reducing the number of witnesses and issues for trial, thus shortening the trial. Pursuing this motion required analysis of five United expert reports and additional materials indicating expected testimony from Murray McEachron, legal research to develop authority to support the

exclusion of this testimony, drafting a detailed opening brief with separate analyses addressing the expected/disclosed testimony of each of these United witnesses and why it should be excluded, development of a supporting declaration and accompanying exhibit, review and response to United's detailed opposition in a reply brief, and time spent conferring with United in advance of filing the motion as required by Local Rule 7-3. Plaintiffs succeeded in their motion objective as the Court granted this motion (Dkt. 58 Sept. 8, 2017).

32.   <u>Plaintiffs' Motion For Summary Judgment</u>: During the summer of 2017 and extending into September 2017, Plaintiffs developed and pursued their Motion for Summary Judgment (Dkt. 63 Sept. 25, 2017). Plaintiffs brought this motion with the intention of hopefully establishing United's ESA liability or alternatively to establish certain issues to be resolved as a matter of law, thus reducing the number of witnesses and issues for trial, thus shortening the trial. Plaintiffs succeeded at the latter goals, establishing their standing as a matter of law and thus obviating the need to call several standing witnesses at trial. (Dkt. 128 Dec.1, 2017). Plaintiffs prevailed in securing a ruling concerning the legal standard for establishing species take over United's contrary arguments concerning this standard. Plaintiffs further succeeded at the important objective of establishing the admissibility and evidence of NMFS's 2008 Biological Opinion as well as receiving favorable court guidance on several other issues that aided Plaintiffs in their trial preparation. Pursuing this motion required analysis of numerous deposition transcripts and scores of documents to determine the exhibits to present, the drafting of opening and rebuttal expert declarations from three Plaintiffs expert witnesses, declarations from several Plaintiffs standing witnesses, preparation of numerous exhibits and a declaration from Jason Weiner authenticating these exhibits, review of voluminous opposition evidence including multiple rebuttal expert declarations from United, legal research to develop authority to support Plaintiffs' arguments and rebut United's opposition arguments concerning United's ESA liability and concerning the admissibility of United's opposition evidence, drafting a lengthy statement of uncontroverted fact,

statement of genuine dispute of United's asserted facts, evidentiary objections to United's summary judgment evidence, conferring with United in advance of filing the motion as required by Local Rule 7-3, and attending the hearing on November 29 and 30, 2017 (*see* Dkt. 66-79, 91, 97, 98, 100-106, 122). Notably, Plaintiffs' objections to United's summary judgment opposition evidence was partially successful, as it prompted the Court in its summary judgment order to indicate that portions of United's declarations from Michael Booth, William Carter, and Catherine McCalvin would be excluded from evidence as improperly disclosed expert testimony. Order Granting in Part Plaintiff's Motion for Summary Judgment at 28-29 (Dkt. 128 December 1, 2017) ("Summary Judgment Order"). In response to the Plaintiffs' additional objections to inadequate disclosure of testimony from United witnesses Murray McEachron and Catherine McCalvin, the Court granted Plaintiffs the remedy of additional depositions of these two witnesses. *Id.* at 29. These late depositions were helpful to Plaintiffs in preparing for examination of these two witnesses at trial.

33. <u>Plaintiffs' Motion for Preliminary Injunction re Remedying Defendant's ESA Violation:</u> During the summer of 2017 and extending into September 2017, Plaintiffs developed and pursued their Motion for Preliminary Injunction re Remedying Defendant's ESA Violation (Dkt. 61 Sept. 25, 2017). Plaintiffs brought this motion with the intention of securing interim relief to benefit endangered species pending a final determination of remedy post-trial. Pursuing this motion again required analysis of numerous deposition transcripts and scores of documents to determine the exhibits to present, the drafting of content in the summary judgment opening and rebuttal expert declarations from three Plaintiffs expert witnesses that were pertinent to remedy issues, review of voluminous opposition evidence including multiple rebuttal expert declarations from United, legal research to develop authority to support Plaintiffs' arguments and rebut United's opposition arguments concerning the appropriate standard for an injunction under the ESA, conferring with United in advance of filing the motion as required by Local Rule 7-3, and attending the hearing on November 29 and 30, 2017 (*see*

Dkt. 64, 66-79, 92, 98, 101-106, 122). The Court denied the motion without prejudice (Dkt.129 Dec. 1, 2017). However, Plaintiffs utilized many of the arguments and evidence developed for this motion in their subsequent trial presentation--which did lead to successfully securing a significant portion of their injunctive relief sought.

34.     <u>United's Ex Parte Application for Extension of Time To File Opposition to Plaintiff's Motion for Summary Judgment and Continuing Hearing on Plaintiff's Motion for Injunction</u>: In October 2017, Plaintiffs' counsel worked to respond to and oppose United's Ex Parte Application for Extension of Time To File Opposition to Plaintiff's Motion for Summary Judgment and Continuing Hearing on Plaintiff's Motion for Injunction (Dkt. 80 Oct. 3, 2017). This required Plaintiffs to draft an opposition brief as well as a declaration from Plaintiffs' counsel and eight accompanying exhibits (Dkt. 81 Oct. 4, 2017). Plaintiffs' opposition was successful as the Court denied United's Ex Parte Application. Minute Order denying Ex Parte Application for Extension of Time To File Opposition to Plaintiff's Motion for Summary Judgment and Continuing Hearing on Plaintiff's Motion for Injunction (Dkt. 82 Oct. 4, 2017).

35.     <u>Plaintiffs' Second Motion In Limine To Exclude Testimony of Defendant's Experts Dudley Reiser, John Hindley, Bruce Orr, and Steven Bachman</u>: During October and November 2017, Plaintiffs developed and pursued their Second Motion In Limine To Exclude Testimony of Defendant's Experts Dudley Reiser, John Hindley, Bruce Orr, and Steven Bachman (Dkt. 93 Nov. 2, 2017). Plaintiffs again brought this motion with the intention of minimizing the issues that could be litigated in this case (specifically, to preclude United from introducing redundant expert testimony), thus reducing the length of trial testimony and shortening the trial. Pursuing this motion required analysis of four United expert reports, analysis of four deposition transcripts, legal research to develop authority to support the limitation of this testimony, drafting a detailed opening brief with separate analyses addressing the expected/disclosed testimony of each of these United witnesses and why it should be excluded, development of a supporting declaration and accompanying exhibits, review and response to United's detailed opposition in a reply

brief, and time spent conferring with United in advance of filing the motion as required by Local Rule 7-3. (Dkt. 96, 110). While the Court did not grant this motion (Dkt. 209), Plaintiffs believe that, as reflected in United's statements of its intention in its opposition to the motion, the motion caused United to pair back some of its experts' trial testimony to ensure that it was not redundant. The motion thus apparently had some beneficial effect on the trial in accord with Plaintiffs' intention.

36.     Plaintiffs' Third Motion In Limine To Exclude United Evidence for Its Res Judicata and Laches Defenses, and Testimonies of Jason Weiner and John Buse: During October and November 2017, Plaintiffs developed and pursued their Third Motion In Limine To Exclude United Evidence for Its Res Judicata and Laches Defenses, and Testimonies of Jason Weiner and John Buse (Dkt. 94 Nov. 3, 2017). Plaintiffs again brought this motion with the intention of minimizing the issues that could be litigated in this case (specifically, to preclude United from consuming trial time litigating meritless affirmative defenses of *res judicata* and laches), thus reducing the length of trial testimony and shortening the trial. Pursuing this motion required analysis of transcripts of United's depositions of Jason Weiner and John Buse and numerous documents produced in discovery, legal research to develop authority to support the exclusion of this testimony on the grounds of the lack of merit of the affirmative defenses, drafting a detailed opening brief with separate analyses concerning the lack of merit of the two affirmative defenses, development of a supporting declaration and accompanying exhibits, review and response to United's detailed opposition in a reply brief, and time spent conferring with United in advance of filing the motion as required by Local Rule 7-3. (Dkt. 99, 112). While the Court did not grant this motion, United responded to the motion by agreeing to drop its *res judicata* defense. United Water Conservation District's Opposition to Plaintiffs' Motion in Limine to Exclude United's *Res Judicata* and Laches Defenses and Testimonies of Jason Weiner and John Buse at 1:23-24 (Dkt. 99); Minutes (Dkt. 122). Accordingly, the motion did partially secure the intended result of eliminating the *res judicata* issue from further consideration at trial. The research and analysis that

Plaintiffs did in the motion further bore fruit when the Court ultimately agreed with Plaintiffs in its trial ruling that United's laches defense lacked merit. Order Re: Motions In Limine [93] [94] [108] [109] [111] [113] [114] [117]; Order Denying Without Prejudice Conditional Motion For Joinder And Motion To Dismiss For Failure To Join [163] [164]; Order Denying As Moot Renewed Motion For Preliminary Injunction [201]; And Findings Of Fact And Conclusions Of Law [176] Holding That Plaintiffs Are Entitled To Declaratory And Injunctive Relief On Their Claim For Take Of Southern California Steelhead, But Not On Their Claim For Take Of Southwestern Willow Flycatcher at 121-124 (¶¶ 256-264) (Dkt. 209 Sept. 23, 2018) ("Trial Order").

37. <u>United's Motion In Limine To Exclude Expert Testimony of Chris Hammersmark</u>: During November 2017, Plaintiffs were required to respond to United's Motion In Limine To Exclude Expert Testimony of Chris Hammersmark (Dkt. 108 Nov. 15, 2017). Responding to this motion required Plaintiffs to analyze and rebut United's legal contentions concerning the standard for excluding expert testimony and fact specific assertions concerning the qualifications and methodology of Dr. Hammersmark, and to draft a detailed opposition brief and an accompanying declaration and exhibit. (Dkt. 116 Nov. 22, 2017). Robust opposition from Plaintiffs was essential to ensure that Dr. Hammersmark would be allowed to testify fully at trial, an important component of Plaintiffs' ultimately successful trial case in chief. Plaintiffs succeeded as the Court allowed Dr. Hammersmark to testify at trial without restriction and denied the motion. Trial Order at 11 (Dkt. 209).

38. <u>United's Motion In Limine To Exclude Expert Testimony of Sharon Kramer</u>: During November 2017, Plaintiffs were required to respond to United's Motion In Limine To Exclude Expert Testimony of Sharon Kramer (Dkt. 109 Nov. 15, 2017). Responding to this motion required Plaintiffs to analyze and rebut United's legal contentions concerning the standard for excluding expert testimony and fact specific assertions concerning the qualifications and methodology of Dr. Kramer, and to draft a detailed opposition brief. (Dkt. 115 Nov. 22, 2017). Robust opposition from Plaintiffs

was essential to ensure that Dr. Kramer would be allowed to testify fully at trial, an important component of Plaintiffs' ultimately successful trial case in chief. Plaintiffs succeeded as the Court allowed Dr. Kramer to testify at trial without restriction and denied the motion. Trial Order at 11 (Dkt. 209).

39.    United's Motion In Limine To Exclude Expert Testimony of Mary Whitfield: During November 2017, Plaintiffs were required to respond to United's Motion In Limine To Exclude Expert Testimony of Mary Whitfield (Dkt. 111 Nov. 20, 2017). Responding to this motion required Plaintiffs to analyze and rebut United's legal contentions concerning the standard for excluding expert testimony and fact specific assertions concerning the qualifications and methodology of Ms. Whitfield, and to draft a detailed opposition brief. (Dkt. 120 Nov. 27, 2017). Robust opposition from Plaintiffs was essential to ensure that Ms. Whitfield would be allowed to testify fully at trial, the key witness for Plaintiffs' Southwestern Willow Flycatcher ("Flycatcher") claim. Plaintiffs succeeded as the Court allowed Ms. Whitfield to testify at trial without restriction and denied the motion. Trial Order at 11 (Dkt. 209).

40.    United's Motion In Limine To Exclude Testimony of Kozmo Bates and Jonathan Mann: During November 2017, Plaintiffs were required to respond to United's Motion In Limine To Exclude Expert Testimony of Kozmo Bates and Jonathan Mann (Dkt. 113 Nov. 21, 2017). Responding to this motion required Plaintiffs to analyze and rebut United's legal contentions concerning the standard for excluding testimony and fact specific assertions concerning disclosures of their testimonies and to draft a detailed opposition brief. (Dkt. 121 Nov. 22, 2017). Robust opposition from Plaintiffs was essential to ensure that Mr. Bates would be allowed to testify at trial. His testimony was helpful to the Plaintiffs' case as the Court ended up citing it as one of the bases for some of its findings. Plaintiffs succeeded as the Court allowed Mr. Bates to testify at trial on his work as a Vern Freeman Dam Fish Passage Panel consultant to United. Trial Order at 11 (Dkt. 209).

41.    United's Motion In Limine To Exclude 2008 Biological Opinion: During

November 2017, Plaintiffs were required to respond to United's Motion In Limine To Exclude the 2008 Biological Opinion (Dkt. 114 Nov. 21, 2017). Responding to this motion required Plaintiffs to analyze and rebut United's legal contentions concerning the standard for excluding documentary evidence and the records of a public agency and to draft a detailed opposition brief. (Dkt. 119 Nov. 27, 2017). Robust opposition from Plaintiffs was essential to ensure that the 2008 Biological Opinion would be deemed admissible evidence at trial. Plaintiffs succeeded as the Court allowed the 2008 Biological Opinion into evidence at trial and denied the motion. Trial Order at 11 (Dkt. 209). The 2008 Biological Opinion was very helpful to the Plaintiffs' case as the Court cited it as one of the bases for many of its Trial Order findings.

42.   <u>Plaintiffs' Fourth Motion In Limine To Exclude Michael Booth Testimony</u>: During November and December 2017, Plaintiffs developed and pursued their Fourth Motion In Limine To Exclude Michael Booth Testimony (Dkt. 117 Nov. 23, 2017). Plaintiffs again brought this motion with the intention of reducing the length of trial testimony and shortening the trial by precluding United from offering undisclosed expert testimony from Michael Booth. Pursuing this motion required analysis of United's witness disclosures and Michael Booth's deposition transcript, legal research to develop authority to support the limitation of this testimony, drafting a detailed opening brief with separate analyses addressing the expected testimony of Dr. Booth and why it should be limited, review of United's detailed opposition to prepare for the court hearing on the motion, and time spent conferring with United in advance of filing the motion as required by Local Rule 7-3. (Dkt. 125, 126). The Court's summary judgment order effectively agreed with Plaintiffs' arguments concerning some of Dr. Booth's proposed testimony being improperly disclosed expert testimony and excluded portions of the Declaration of Michael Booth (Dkt. 91-12) from evidence. Summary Judgment Order at 28 (Dkt. 128). The Court's final Trial Order reflected the same approach. Trial Order at 12 (Dkt. 209).

43.   <u>Plaintiffs' Conditional Motion for Joinder of National Marine Fisheries Service</u>: During trial, Plaintiffs developed and brought their Conditional Motion for

Joinder of National Marine Fisheries Service (Dkt. 163, Dec. 28, 2017). Plaintiffs brought this necessary and appropriate motion to respond to the Court's several inquiries as to why Plaintiffs had not joined NMFS. Drafting this motion required taking into account communications between Plaintiffs and NMFS on this matter as well as extensive legal research concerning joinder of federal agencies in an ESA citizen suit setting. The motion took the position that joining NMFS during the trial would be premature and contrary to governing precedent, but that NMFS's joinder might be appropriate depending on further developments related to implementation of remedy-- hence the recommendation that NMFS joinder be held in abeyance to the future and be conditioned on events that may or may not transpire. It is Plaintiffs' understanding that the Court's Trial Order has essentially adopted this approach.

44.    <u>United's Motion to Dismiss Case for a Failure to Join Indispensable Parties</u>: During trial, Plaintiffs were required to respond to United's Motion to Dismiss Case for a Failure to Join Indispensable Parties, which sought to dismiss Plaintiffs' case due to the Plaintiffs failure to join NMFS (Dkt. 164, Jan. 2, 2018). Plaintiffs had to ensure a thoroughly researched and robust rebuttal to the argument raised in United's motion to preserve its case and ultimately prevail. Doing so entailed significant legal research and drafting a detailed opposition brief. (Dkt. 169, January 4, 2018). Plaintiffs' opposition was successful as the Court denied the motion and granted trial judgment in Plaintiffs' favor.

## 5.    Attempts to Minimize Litigation and Pursue Settlement

45.    Plaintiffs' counsel have devoted considerable effort to minimize the hours spent on this litigation by the parties and their counsel and by the Court through the pursuit of request for admission responses, stipulations to resolve case management matters (including the admissibility of exhibits) and/or establish certain facts/resolve certain claims, and via settlement. While only some of these efforts were successful, Plaintiffs' counsel were obligated by the Federal Rules of Civil Procedure and by the Local Rules to work with opposing counsel to attempt to narrow the issues, avoid

litigation to the extent possible, and to achieve settlement. As noted, this took a great deal of Plaintiffs' counsel's time.

46.     Before filing this case, Plaintiffs' counsel's pursuit of settlement with United included many hours devoted to the following tasks: (i) conference calls on March 10, 2016; April 18, 2016, and June 21, 2016, (ii) providing United a draft detailed written settlement agreement proposal in March 2016, (iii) reviewing and responding to United's written response to Plaintiffs settlement proposals in April 2016, (iv) in May 2016, drafting a detailed request to United that it informally produce a specific list of documents to allow Plaintiffs to further evaluate and develop their settlement proposal to United and securing United's agreement to produce the requested documents, and (v) reviewing United's informal document production in June 2016 to further evaluate and develop Plaintiffs' settlement proposal, and then further communicating with United concerning additional documents missing from United's production that Plaintiffs would need to further evaluate their settlement position. Despite good faith attempts and significant time spent on both sides, these efforts failed to bring about settlement and the Plaintiffs filed their case.

47.     After Plaintiffs filed suit, Plaintiffs' counsel continued to pursue all reasonable opportunities to settle this case up to and through trial. This included: (i) additional conference calls with United that included settlement discussion on July 20, 2016; September 1, 2016; December 1, 2016; February 9, 2017; February 17, 2017; March 1, 2017; April 12, 2017; and April 21, 2017; (ii) additional written requests in September 2016 to United for documents that Plaintiffs would need to further evaluate their settlement positions, (iii) an October 31, 2016 meeting with United's counsel that included discussion of settlement matters, (iv) in December 2016 and January 2017, drafting and sending United an additional detailed settlement proposal letter, (v) in February and March 2017, drafting and sending United a third detailed settlement

proposal letter,[3] (vi) attending a conference with United counsel on February 23, 2017 on various case management matters that included addressing settlement, (vii) attending a 9½ hour settlement conference on March 16, 2017 attended by numerous Plaintiffs and United counsel and client representatives (and providing United additional written materials concerning settlement during the meeting), (viii) facilitating a lengthy conference call between United's experts and Plaintiffs' experts to further discuss technical issues related to settlement on March 24, 2017, (ix) in June 2017, reviewing United's detailed written settlement counterproposal and conferring internally to develop and draft Plaintiffs' detailed written response to United's settlement counterproposal in July 2017 and additional follow-up written communications from Plaintiffs to United with further thoughts and rationale for settlement positions in August and September 2017, (x) sidebar settlement discussions with United and NMFS representatives following the Court's November 30, 2017 summary judgment and preliminary injunction motion hearing, (xi) at the court's direction, participation in lengthy discussions with United during trial about partial settlement of the discrete issues of the proper means for United to monitor steelhead passage at Vern Freeman Dam and how to approach turnout/turn-in management in conjunction with sediment levels in the Santa Clara River, (xii) exchange of numerous email messages with United counsel about settlement throughout the case, and (xiii) discussions with NMFS representatives at various junctures throughout the case to learn NMFS perspectives that would further assist Plaintiffs in having realistic, well-informed settlement approaches and goals.

48.    After the Court's Trial Order in September, Plaintiffs' counsel continued their efforts to settle the issue of Plaintiffs' recovery of attorneys fees and costs pursuant

---

[3] Specifically, on March 10, 2017, Plaintiffs provided United with 25 page single-spaced letter that drew heavily on the expert opinions of Chris Hammersmark and Sharon Kramer with thoughts and analysis pertinent to settlement. The letter analyzed and compared the fish passage project options: the dam removal/infiltration gallery, 400 ft notch, 200 ft notch, current denil ladder, and hardened ramp were all analyzed and compared. This took significant amount of attorney and expert resources.

to ESA section 11(g), 16 U.S.C. § 1540(g)(4). To this end, Plaintiffs sent several written communications to United detailing various aspects of their attorney fees and costs entitlement, including extensive discussion of applicable case law, data concerning prevailing market rates in the Central District of California, detailed biographical information concerning each of Plaintiffs' attorneys and accompanying justifications for their claimed rates, and documentation concerning Plaintiffs' attorneys' time spent on the case.

49.    In addition to pursuit of settlement, Plaintiffs' counsel have sought to reduce litigation by pursuing agreement with United concerning streamlining case proceedings whenever possible and that certain factual and legal issues would not be contested by the parties. To this end, Plaintiffs entered into 7 stipulations with United on various case management and factual and legal issues resolutions (Dkts. 33, 39, 41, 83, 149, 156, 230). Plaintiffs initiated attempts to reach agreement narrowing factual and legal issues and thus truncating litigation burdens in the Rule 26(f) discussions held shortly after case filing referred to in section II.A.2 above. As also noted in section II.A.3 above, Plaintiffs also prepared and provided to United early in the case a very detailed set of requests for admission along with indications to United that Plaintiffs intended United to review and view this request for admission as the equivalent of Plaintiffs' proposed fact and law stipulations--and a means for the parties to determine which issues could be agreed upon and which would be contested. Plaintiffs emphasized this point in the parties' Joint Report of Parties' Meeting and continued to attempt to work with United to use their requests for admission as a template for determining whether the parties would be able to reach agreements that would reduce litigation on certain factual and legal issues.

50.    United admitted some of Plaintiffs' requests for admission. In turn, Plaintiffs admitted some of United's request for admission, thus streamlining issues for trial.

51.    Plaintiffs also reduced litigation burdens by persuading United/agreeing with United to enter into a Trial Facts Stipulation (Dtk. 149). This 21-page, 102-paragraph stipulation reduced the amount of evidence and trial time by establishing certain issues as

uncontested. For example, under the stipulation, Plaintiffs stipulated to the accuracy of the FOM/HOSS model, thus obviating the need to have United proposed expert witness Stuart Beck and potentially other witnesses as well testify concerning this issue. Trial Facts Stipulation at 10, ¶ 46 (Dtk. 149).

52.     Plaintiffs further sought to reduce litigation expense by working (successfully) with United concerning electronic service of documents via email in lieu of personal service, including service of subpoenas to third-party subpoena targets who had served as consultants to United.

53.     Plaintiffs further reduced litigation expense by extensive meet and confer discussion over various discovery disputes that led the parties to resolve discovery disputes short of bringing motions to compel or motions for protective orders. Some of this meet and confer discussion is summarized in section II.A.3 above.

54.     In addition to seeking to avoid or reduce litigation by securing admissions or stipulations concerning certain facts and attempting to reach settlement resolution, Plaintiffs also agreed to voluntarily dismiss Claims 2 and 3, their claims that United had cause take of two bird species, endangered Least Bell's vireo ("Vireo") and the threatened yellow-billed cuckoo ("Cuckoo"). Plaintiffs agreed to voluntarily dismiss these claims given that they intended to present similar evidence for United's alleged take of Flycatcher and a similar remedy to address Flycatcher take as the remedy they would seek to address take of Vireo and Cuckoo. Plaintiffs concluded that if they prevailed on their Flycatcher claim, this would suffice to secure environmental protection for Vireo and Cuckoo. Plaintiffs further concluded that if were unable to prevail on their claim of Flycatcher take, they would likely not prevail on their claims for take of Vireo and Cuckoo, either.

### 6. Trial Preparation and Trial

55.     To prepare Plaintiffs' witnesses for trial examination and cross examination (and to prepare me as lead counsel to ask appropriate questions and introduce appropriate exhibits), Plaintiffs' counsel had to spend many hours in trial preparation sessions with

their three expert witnesses, Dr. Sharon Kramer, Dr. Chris Hammersmark, and Mary Whitfield (especially with Drs. Kramer and Hammersmark, whose testimonies were much more involved). Additionally, Plaintiffs' counsel had to spend considerable time in trial preparation discussion with trial witness Kozmo Bates. Plaintiffs' counsel further spent substantial time on email and telephonic communications with various representatives from the U.S. Department of Justice and NMFS concerning Plaintiffs' request that NMFS representatives testify at trial (which NMFS initially denied) and Plaintiffs' additional communications with NMFS and DOJ representatives once the Court had made plain that the Court wished NMFS representatives to testify (which led to NMFS so testifying).

56.    To prepare me as lead counsel for appropriate trial examination/cross examination of both Plaintiffs' and United's numerous trial witnesses and prepare my co-counsel to coach me during witness examination with suggestions for follow-up questions, and to be prepared with appropriate exhibits, Plaintiffs' counsel further had to review thousands of pages of trial exhibits and 21 deposition transcripts. Many of the latter were for all-day depositions and thus typically well over 200 pages long: transcripts of the depositions of Plaintiffs' own three expert witnesses (Drs. Kramer, Hammersmark, and Whitfield), Mr. Bates, Jason Weiner, John Buse and 11 United consultants and employees including: Dudley Reiser, Steven Howard, Michael Booth, Dana Postlewait, Edward Wallace, Murray McEachron (three deposition transcripts as he was deposed three times), John Hindley, Catherine McCalvin (three deposition transcripts as she was deposed three times), Anthony Emmert, Craig Morton, and Jonathan Mann.

57.    Trial preparation further mandated Plaintiffs to prepare nine lengthy and intricate court filings. Specifically, Plaintiffs had to: (i) work with United to prepare a Joint Trial Exhibit List (Dkt. 133 Dec. 1, 2017), (ii) work with United to prepare an Amended Joint Exhibit List (Dkt. 150 Dec. 11, 2017), (iii) draft Plaintiffs' Memorandum of Contentions of Fact and Law (Dkt. 136 Dec.1, 2017), (iv) prepare a Witness List (Dkt. 134 Dec. 1, 2017), (v) draft Objections to United's Trial Exhibits (Dkt. 142 Dec. 7,

2017), (vi) draft Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Dkt. 145 Dec. 8, 2017), (vii) draft Plaintiffs' Amended Proposed Findings of Fact and Conclusions of Law (Dkt. 147 Dec. 10, 2017), (viii) work with United to reach agreement on a Pretrial Stipulation regarding Specified Exhibits To Be Admitted into Evidence for Truth of the Matters Asserted Therein (Dkts. 156, 157 Dec. 15, 2017), and (ix) draft Plaintiffs' Supplemental Trial Proposed Findings of Facts and Conclusions of Law (Dkt. 171 Jan. 5, 2018). Plaintiffs further had to review and duly take into account during trial United's Witness List (Dkt. 132), United's Memorandum of Contentions of Fact and Law (Dkt. 135), United's Proposed Findings of Fact and Conclusions of Law (Dkt. 144), United's Amended Memorandum of Contentions of Fact and Law (Dkt. 168), and United's Amended Exhibit List (Dkt. 172, Jan. 5, 2018).

58.    Conducting Plaintiffs' trial presentation was a time intensive undertaking, involving examination of 16 trial witnesses and the introduction of hundreds of trial exhibits involving a wide range of highly technical testimony involving complex matters of biology, hydrology, hydraulics and engineering over 11 trial days.

**7. Post-trial Pleadings and Motions**

59.    The Court's September 25, 2018 Trial Order directed the Plaintiffs to promptly file a proposed judgment, which the Plaintiffs did on September 26, 2018 (Dkt. 211). Entry of this judgment became a time-consuming matter, however, as United objected to Plaintiffs' proposed judgment and filed formal objections to the same on September 28, 2018 (Dkt. 218). The Court held a hearing on October 1, 2018 to address the parties' completing versions of the proposed judgments. At the Court's direction, the parties then met with Special Master Judge Smith for an extended discussion on revisions to the proposed judgments in light of the Court's remarks during the hearing. On October 3, 2018, the parties prepared and lodged a joint version of the proposed judgment reflecting the agreements reached with Judge Smith's assistance (Dkts. 217, 218).

60.    United counsel subsequently informed Plaintiffs that they still had additional objections to the judgment and requested the parties meet and confer over these

continuing objections. Plaintiffs cooperated with this request and through a combination of telephonic conference and exchange of emails, the parties were able to reach a consensus on additional modifications to the judgment. At United's request, Plaintiffs agreed not to oppose United's motion to amend the judgment in accord with the parties' agreement and United filed its motion (Dkt. 233 Nov. 1, 2018) and Plaintiffs filed a request that the motion be granted (Dkt. 245 Nov. 30, 2018).

61.    To give the parties time to attempt to negotiate resolution of Plaintiffs' request for attorneys fees and costs from United as the prevailing party in an ESA citizen suit and United's continuing objections to the judgment in a fashion that would obviate the need for a fees motion or litigation of a United appeal, Plaintiffs have cooperatively negotiated with United two stipulations to extend the deadlines for a motion for attorneys fees and costs and a notice of appeal, which the Court approved by order (Dkts. 230, 231, 242, 243).

### 8. Plaintiffs' Motion for Attorneys Fees and Costs

62.    Developing Plaintiffs' Motion for Attorneys Fees and Costs has also required extensive effort. In addition to drafting Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys Fees, this motion required extensive review of voluminous records (approximately 8000 separate time entries) for proper exercise of billing judgment as well as careful review of the case docket, pleadings, and orders to develop the factual and legal arguments. This motion has further required extensive research into case law supporting Plaintiffs' contentions concerning prevailing market rates in the Central District of California. In addition, the fee motion has required overseeing declarations by each of the attorneys and outside counsel familiar with local rates and the reputation of Plaintiffs' counsel.

### B.  Contributions of Co-counsel to Case Tasks

63.    I have served as Plaintiffs' lead counsel in this case. At my close direction, the following counsel assisted in Plaintiffs' litigation of this case: Jason Weiner, Geneva Thompson, Heather Kryczka, John Buse, Patricia Linn, Molly Coyne, Danielle Rathje,

Fredric Evenson, Anthony Barnes, Jodene Isaacs, Stephanie Oxley, and Naomi Melver. The contributions of these attorneys to this case are described below. Additional details regarding the work performed by each of these attorneys can be found in their time records submitted with their respective declarations in support of Plaintiffs' fees motion. Additionally, Plaintiffs were assisted by two law clerks: Sunjana Supekar and Heejin Hwang, who logged 69 and 68.20 hours, respectively, performing useful tasks such as legal research for analysis of certain arguments and claims. While I am aware of case law awarding fees for the work done by law student clerks under supervision of members of the Bar, I am nonetheless cutting their time for billing judgment. Plaintiffs were also provided paralegal assistance by Dawn Edberg and Amy Mar.

64.    It was cost-effective and necessary to have Jason Weiner, Geneva Thompson, Heather Kryczka, John Buse, Patricia Linn, Molly Coyne, Danielle Rathje, Fredric Evenson, Anthony Barnes, Jodene Isaacs, Stephanie Oxley, and Naomi Melver perform the tasks assigned to them described in the ensuing paragraphs. One, these attorneys bill at lower hourly rates than I do. Two, it would have been impossible for me to litigate this case without substantial help from additional attorneys given the very large number of depositions, voluminous document productions, multiple pretrial motions, numerous expert witnesses, and lengthy trial involving testimony on several highly technical issues. Notably, United also found it necessary to have a team of lawyers from two law firms representing it in this case.

65.    Jason Weiner served as my main co-counsel. As described in the concurrently filed Weiner Declaration, under my direction, Mr. Weiner helped lead and substantially contributed to nearly all of the tasks described in section II.A. above. Drawing on his deep knowledge of the record, I had him review and revise many of the briefs and other legal documents drafted in this case as well as draft portions of these documents. His comprehensive knowledge of the record was further very useful in the drafting of the trial examination outlines I relied upon for my examination of the witnesses both during depositions and at trial. His knowledge of the facts and evidence in

this case coupled with his extensive experience in Santa Clara River environmental protection issues generally and with protection of the river's Steelhead population in particular made him particularly valuable and efficient in fashioning case strategy, including which witnesses to secure for Plaintiffs, what documents to seek from United and NMFS, whom to speak with at NMFS concerning feedback on our goals and remedies, and what outcomes to advocate for. Mr. Weiner's declaration details the work that he did on this case.

66.     As noted in section II.A. above, the parties conducted 19 depositions in this case in a short four-month timeframe, May 8, 2017 through September 12, 2017 (most of which were complex expert witness depositions), plus two additional depositions of Catherine McCalvin and Murray McEachron on November 30 and December 7, 2017. Moreover, the depositions in September 2017 were taken as Plaintiffs were also necessarily devoting significant time compiling their evidence, and drafting their briefs and statement of undisputed fact for their motions for summary judgment and preliminary injunction filed on September 25, 2017. To be able to thoroughly and competently review the voluminous documents produced by United and obtained from NMFS through the Freedom of Information Act and to select exhibits and develop lines of questioning for the depositions that I and Jason Weiner took, Mr. Weiner and I need the assistance of additional counsel. Accordingly, Mr. Weiner and I directed Geneva Thompson to review documents produced by United to help meet to determine which documents to pose to deponents as exhibits and to develop lines of questioning related to these exhibits. *See* Declaration of Geneva Thompson in Support of Motion for Attorneys Fees and Costs ("Thompson Declaration") ¶ 10. Additionally, at my direction, Plaintiffs retained Jodene Isaacs to help me to prepare to take the deposition of United expert witness Dana Postlewait. To do so, she necessarily reviewed Mr. Postlewait's expert report and relevant background documents received in discovery to assist me in preparing questions and exhibits for the deposition. She further provided some legal research helpful for meeting and conferring over issues raised with United during the course of the

depositions. *See* Declaration of Jodene Isaacs in Support of Motion for Attorneys Fees and Costs ("Isaacs Declaration"), ¶¶ 6-7. At my direction, Plaintiffs further retained Molly Coyne to review United expert witness Dudley Reiser's emails and scientific papers and prepared questions to ask at Mr. Reiser's deposition. *See* Declaration of Molly Coyne in Support of Motion for Attorneys Fees and Costs ("Coyne Declaration") ¶ 4. Also at my direction, Plaintiffs retained Anthony Barnes and Fredric Evenson to defend the depositions of Jason Weiner and John Buse. Declaration of Anthony Barnes in Support of Motion for Attorneys Fees and Costs ("Barnes Declaration") ¶ 7; Declaration of Fredric Evenson in Support of Motion for Attorneys Fees and Costs ("Evenson Declaration"), ¶ 11. Defending these depositions was a time-consuming sidebar necessitated by United's rejection of Plaintiffs' request that United drop its *res judicata* and laches affirmative defenses, the apparent basis for United wishing to depose Mr. Weiner and Mr. Buse. I needed Mr. Barnes and Mr. Evenson's help, as these depositions came at a time when I was taxed to prepare Plaintiffs' summary judgment and preliminary injunction motions, including the extensive review of the evidence gathered to date that that entailed.

67.     During briefing on Plaintiffs' motion for summary judgment and motion for preliminary injunction, United filed detailed objections to Plaintiffs' evidence. Additionally, upon reviewing United's evidence offered in opposition to Plaintiffs' motions for summary judgment and preliminary injunction, it became clear to me that Plaintiffs, to be appropriately diligent in their pursuit of this case, should assert their own detailed objections to various components of United's evidence. However, the sheer volume of evidentiary objections raised by both United and Plaintiffs coupled with the tight briefing deadlines on these motions and looming trial preparation tasks made it clear to me that the Plaintiffs would need help from additional lawyers to both draft oppositions to United's Objections to Plaintiffs' Summary Judgment Evidence (Dkts. 91-2) and United's Objections to Plaintiffs Preliminary Injunction Evidence (92-1) (which together encompassed nearly 1000 pages of evidentiary objections) and draft Plaintiffs'

Evidence Objections to United's Motion for Summary Judgment and Preliminary Injunction Opposition Evidence (Dkt. 100). At my direction, Plaintiffs retained Anthony Barnes to work with Geneva Thompson to draft Plaintiffs' massive and time-consuming reply to United's evidentiary objections. Barnes Declaration ¶ 8; Thompson Declaration ¶ 10. Ms. Thompson also helped with drafting portions of Plaintiffs' objections to United's summary judgment opposition evidence. Thompson Declaration ¶ 10. Also at my direction, co-counsel Patricia Linn drafted Plaintiffs' evidentiary objections to the summary judgment opposition declaration of Michael Booth and also reviewed and edited for strength of argument and clarity of presentation all of Plaintiff's evidentiary objections to Defendants' expert witness summary judgment opposition declarations. Declaration of Patricia Linn in Support of Motion for Attorneys Fees and Costs ("Linn Declaration") ¶ 11. Plaintiffs also retained Stephanie Oxley to assist with evidentiary objections to the Declarations of Catherine McCalvin and Anthony Emmert in support of Defendants' Oppositions to Plaintiffs' Motions for Summary Judgment and Injunction. Declaration of Stephanie Oxley in Support of Motion for Attorneys Fees and Costs ("Oxley Declaration"), ¶ 2. Plaintiffs also retained Naomi Melver to assist with evidentiary objections to the Declarations of Defendants' attorneys, Mr. Mueller and Mr. Carter in support of Defendants' Oppositions to Plaintiffs' Motions for Summary Judgment and Injunction. Declaration of Naomi Melver in Support of Motion for Attorneys Fees and Costs ("Melver Declaration") ¶¶ 4-5. Finally, Plaintiffs retained Heather Kryzcka to assist with drafting sections of and coordinating/editing all of Plaintiffs' objections to United's evidence submitted in its Opposition to Plaintiffs' Motion for Summary Judgment and Motion for Preliminary Injunction. Declaration of Heather Kryczka in Support of Motion for Attorneys Fees and Costs ("Kryczka Declaration") ¶ 8.

68.    After the conclusion of discovery and in particular the series of expert depositions in the summer of 2017, I spent considerable time with Mr. Weiner and Ms. Thompson discussing trial preparation, including analysis of what witnesses Plaintiffs

would seek to call to the stand and what witnesses United would likely call to the stand for various factual and opinion matters that the parties would seek to establish. I and Mr. Weiner further conferred with United counsel concerning the parties' respective intended witness testimony as part of our Federal Rule of Civil Procedure 16 trial preparation obligations. As a result of these conferences, it became clear to me that there would be a great number of witnesses testifying for both parties on technical matters involving biology, hydrology, hydraulics, and engineering. It further became clear to me that Plaintiffs would wish to move to limit/exclude some of United's intended trial witness testimony and that United would also be seeking to move to limit/exclude some of Plaintiffs' witnesses' intended trial testimony. I concluded in the fall of 2017 that Plaintiffs would need substantial assistance from additional lawyers: (a) to review the 21 deposition transcripts of witnesses deposed by the parties in the case and help me prepare appropriate direct and cross examination questions and help me brief our witnesses concerning anticipated trial cross examination and (b) to be able to brief and respond to what ultimately became nine motions in limine (4 Plaintiffs motions—Dkts. 49, 93, 94, 117; and 5 United motions—Dkts. 108, 111, 113, 114, 115) to limit/exclude trial testimony of various witnesses. At my direction, Ms. Thompson assisted with drafting Plaintiffs' motion in limine to exclude Barbara Wyse and other United witnesses' testimony concerning United's alleged economic hardships in complying with the ESA, motion in limine to exclude redundant testimony of Dudley Reiser, John Hindley, Bruce Orr, and Steven Bachman; Plaintiffs' opposition to United motion in limine to exclude Sharron Kramer's testimony, Plaintiffs' opposition to United's motion in limine to exclude Chris Hammersmark's testimony, Plaintiffs' opposition to United's motion in limine to exclude Mary Whitfield's testimony, and Plaintiffs' opposition to United's motion in limine to exclude Kozmo Bates and Johnathan Mann's testimony. Also at my direction, Patricia Linn and Molly Coyne assisted with drafting the Motion In Limine To Exclude the Testimony of Mike Booth. Linn Declaration ¶ 11; Coyne Declaration ¶ 4. Ms. Coyne further assisted in drafting Plaintiffs' Reply Brief in Support of Plaintiffs'

Motion in Limine to exclude the opinions of Defendant's experts Barbara Wyse, Murray McEachron, Steven Bachmann, Stuart Beck, Steven Howard and Dudley Reiser. Coyne Declaration ¶ 4. Ms. Isaacs assisted with researching and drafting Plaintiffs' successful motion in limine to exclude economic impact testimony from Defendant's Experts Barbara Wyse, Murry McEachron, Steven Bachman, Stuart Beck, Steve Howard, and Dudley Reisman. She also assisted in researching and drafting the reply to Defendant's Opposition to this motion in limine. She also provided research and drafted portions of Plaintiffs' Motion in Limine to Exclude the Testimony of Defendant's experts Dudley Reiser, John Hindley, and Stuart Beck. Ms. Kryczka assisted with: (i) researching and drafting Plaintiffs' Motion In Limine to Exclude Dudley Reiser and Steve Howard Testimony, and (ii) legal research for and drafting oppositions to United's motions in limine to exclude testimony of Sharon Kramer and Chris Hammersmark and to exclude the 2008 BiOp, (iii) preparing outlines or sections of outlines of suggested questioning to assist Mr. Sproul with direct examination of the following witnesses: Sharon Kramer, Catherine McCalvin, and Mike Booth, (iv) preparing outlines of suggested questioning to assist Mr. Sproul with cross-examination of the following witnesses: Mike Booth, Catherine McCalvin, Dudley Reiser, and Steve Howard, (v) caucusing with Mr. Sproul and the following Plaintiffs' expert witnesses to prepare them for direct and cross examination at trial: Sharon Kramer and Chris Hammersmark, and (vi), assisting Mr. Sproul with selection of trial exhibits and presentation of exhibits and question coaching at trial as his effective trial counsel second chair for most trial witnesses. Kryczka Decl. ¶ 8.

69.     In addition to the tasks described above, Ms. Thompson provided necessary and valuable assistance that allowed me to keep the litigation on track by assisting me with numerous other discrete case tasks: (i) helping with drafting multiple filings including an *ex parte* application to extend time to file motion to compel United's response to Plaintiffs' request for production of documents, Plaintiffs' summary judgment statement of uncontroverted facts, Plaintiffs' motion for summary judgment,

Plaintiffs' motion for preliminary injunction, Plaintiffs' reply in support of motion for preliminary injunction, and Plaintiffs' reply in support of motion for summary judgment; (ii) reviewing and analyzing documents United produced during discovery and that NMFS provided in response to FOIA requests for evidence in support of Plaintiffs' claims and requested relief, particularly the extensive NMFS-United correspondence in which NMFS repeatedly complained of United's delayed and incomplete submittals necessary for NMFS to process ESA regulatory approval of United's operation and maintenance of Vern Freeman Dam and warned that United was taking Steelhead in violation of the ESA (Plaintiffs heavily relied on this correspondence, and her review and analysis of the same, as basis for Plaintiffs' request that United be enjoined to develop these submittals more expeditiously in the future), (iii) reviewing and analyzing United's privilege logs for objections and drafting letters discussing Plaintiffs' objections to the improper use of privilege to shield discovery production, (iv) taking (solo) the second deposition of United engineer Murray McEachron, (v) assisting with drafting of several deposition subpoenas, (vi) preparation of Plaintiffs' expert witnesses' opening and reply summary judgment and preliminary injunction declarations and Plaintiffs' summary judgment and preliminary injunction motions exhibits for and trial exhibits, (vii) assisting with outlines used to prepare Chris Hammersmark and Mary Whitfield to testify at trial, (viii) interviewing Plaintiffs' standing witnesses Nicholas Hernandez and Isabel Ayala and helping with drafting their standing declarations, (ix) helping me to direct my review of documents to be prepared for oral argument on Plaintiffs' summary judgment and preliminary injunction motions, (x) helping me to direct my review of documents to be prepared for trial examination of witnesses and oral argument at trial, and (xi) assisting my witness examination at trial by ensuring the proper exhibits were projected for the Court, counsel, and witnesses to view during trial, tracking and recording which exhibits were used during trial and ensuring they were properly authenticated, and assisting me to develop objections to improper evidence presented by United's counsel at trial. She also

conferred with United's counsel regarding evidence admission throughout trial.
Thompson Declaration ¶ 10.

70.     In addition to the tasks described above, Ms. Kryczka provided necessary
and valuable assistance that allowed me to keep the litigation on track by aiding me with
numerous other discrete case tasks: (i) preparing outlines or sections of outlines of
suggested questioning to assist me with direct examination of the following witnesses:
Sharon Kramer, Catherine McCalvin, and Mike Booth; (ii) preparing outlines of
suggested questioning to assist me with cross-examination of the following witnesses:
Mike Booth, Catherine McCalvin, Dudley Reiser, and Steve Howard; (iii) caucusing with
me and the following Plaintiffs' expert witnesses to prepare them for direct and cross
examination at trial: Sharon Kramer and Chris Hammersmark, and (iv), assisting me with
selection of trial exhibits and presentation of exhibits during trial and (v) passing me
notes during trial with feedback on how trial examinations were proceeding and
suggested questions to pursue, *i.e.*, to serve as second chair for most trial witnesses.
Kryczka Declaration ¶ 8.

71.     In addition to the tasks described above, Ms. Linn provided necessary and
valuable assistance that allowed me to keep the litigation on track by assisting me with
numerous other discrete case tasks: (i) during the initial stages of the litigation, reviewing
the factual evidence for evaluation and development of claims and performing legal
research, (ii) drafting portions of the citizen suit 60 day notice letter, (iii) participating in
settlement discussions and discussions concerning potential expert witness needs, (iv)
formulation of Plaintiffs' discovery plan and the dispositive motion plan/schedule, (v)
editing the complaint, (vi) drafting the case management conference statement, (vi) work
on various Rule 26(f) matters, and (vii) drafting some of the initial interrogatories and
requests for admissions. Linn Declaration ¶ 10. As documented in the Linn Declaration,
Ms. Linn has a great deal of experience in litigating ESA claims, particularly those
involving impacts of dams and water diversions on anadromous fish, so it was very
valuable to me and the Plaintiffs to confer with her and gain her assistance and analysis

and development of the claims, case management, and discovery propounded in this case. *Id.* at 4.

72.     As described in the concurrently filed Declaration of John Buse in Support of Motion for Attorneys Fees and Costs ("Buse Decl."), Mr. Buse assisted this case by taking the lead in preparing the Center for Biological Diversity's responses to United's request for production of documents (including an appropriate privilege log), interrogatories and requests for admission that necessitated response from the Center for Biological Diversity. His work on this was significantly more efficient than having me or Mr. Weiner work on these responses with the applicable Center for Biological Diversity staff with custody of the documents and first hand knowledge of subject matter addressed in the interrogatories and requests for admission given his closer working relationship to this staff. He further assisted by helping to fashion Plaintiffs' settlement strategy and positions, strategic approach to requesting injunctive relief, and development of arguments against United's *res judicata* and laches affirmative defenses.

73.     In addition to the tasks described above, Ms. Coyne provided necessary and valuable assistance that allowed me to keep the litigation on track by aiding me with numerous other discrete case tasks: (i) drafting Plaintiffs' motion for conditional joinder of NMFS during the trial (when I was otherwise quite occupied with various trial tasks), (ii) a joint stipulation regarding the settlement impasse between Plaintiffs and United required by the Local Rules (when I was very occupied with trial preparation), (iii) legal research for and drafting assistance with Plaintiffs' motion for preliminary injunction (when I was overloaded with numerous tasks related to filing concurrently to Plaintiffs' complex motions for summary judgment and preliminary injunction together with their voluminous exhibits and declarations), (iv) legal research for Plaintiffs' draft motion to compel United to respond to discovery requests (which was useful in a successful meet and confer process to resolve a discovery dispute), (v) the introductory statement for the the parties' stipulation regarding United's withholding of documents, inappropriate claims of privilege and failure to produce non-privileged documents; (vi) assistance with

drafting witness lists, (vii) assistance with preparing Plaintiffs' supplemental initial disclosures, (viii) assistance with drafting subpoenas and notices of subpoena to Defendant's expert witnesses Dudley Reiser and Steven Howard, and (ix) assistance with drafting correspondence to United's counsel regarding various discovery disputes and United's inadvertent disclosures of privileged documents.

74.     Ms. Rathje assisted me with Plaintiffs' motion to strike United's affirmative defenses described earlier in paragraph 30. It was cost-effective to have her do the legal research to determine whether the motion would be timely and well-supported substantively and to have her do the initial drafting of the meet and confer correspondence with United and the subsequent motion draft. She bills at a significantly lower rate than I do and these were tasks within her skill level. I also needed her assistance because I was pressed for time with more complex tasks related to developing our evidence and expert opinions concerning the technical engineering, hydrology, hydraulics, and biology issues intertwined with Plaintiffs' claims--tasks for which she or other more junior lawyers would not be as well suited.

75.     In addition to the tasks described above, Ms. Oxley provided necessary and valuable assistance that allowed me to succeed at trial by reviewing deposition testimony provided by United witness Dana Postlewait and former United Fish Panel consultant Kozmo Bates and Dana Postlewait's preliminary injunction motion opposition declaration. Using this review, she then drafted proposed cross-examination questions for me to pose to Dana Postlewait and direct questions to be posed to Kozmo Bates at trial. Oxley Declaration ¶ 2.

76.     In addition to the tasks described above, Mr. Evenson helped Plaintiffs' expert hydrologist Chris Hammersmark draft certain portions of his opening summary judgment declaration related to Plaintiffs' claim for Steelhead take. He also worked closely with Plaintiffs' Steelhead expert Dr. Kramer, facilitating the flow of hydrologic information from Dr. Hammersmark to Dr. Kramer, and ensuring that all of the hydrology facts, opinions, and exhibits needed to support Dr. Kramer's opinions

regarding take of Steelhead were included in Dr. Hammersmark's summary judgment declaration. His assistance was necessary given the tight deadlines for producing what became very detailed and very lengthy expert reports and my necessary focus on working with Dr. Kramer and her expert report and subsequent summary judgment declaration.

77.    In addition to the tasks described above, Ms. Isaacs provided necessary and valuable assistance that allowed me to keep the litigation on track by aiding me with ensuring accurate references in Plaintiffs' Summary Judgment Statement of Uncontroverted Fact and the Declaration of Jason Weiner in Support of Plaintiff's Motion for Summary Judgment. She also assisted in drafting Plaintiffs' successful standing witness declarations. Isaacs Declaration ¶ 8.

### III.    Billing Judgment Reductions

78.    In exercising billing judgment, I reduced from Plaintiffs' request for attorneys' fees all time that Plaintiffs' attorneys spent litigating Claims 2, 3, and 4 regarding unauthorized take of the Least Bell's Vireo, the Western Yellow Billed Cuckoo, and the Southwestern Willow Flycatcher, respectively, in recognition that Plaintiffs did not prevail on these claims. To make these fee reductions, I carefully reviewed each of Plaintiffs' attorneys' time records, and cut all billing time that would not have been incurred but for Plaintiffs' claims related to unauthorized take of bird species.

79.    The vast majority of work performed in this case was conducted in pursuit of the Steelhead claim. This is also evidenced by the orders that the Court has issued in this matter. For instance, of the Court's 149 page Trial Order issued September 23, 2018 (Dkt. 209), only about 13 pages addressed discussion relevant to the bird claims, or 8.7% of the Order (pp. 7:20-23, 7:28, 8:6-8, 8:13-15, 10:19-21, 12:2-8, 14:7, 86:28-87:2, 100:1-110:28, 111:27-112:1, 124:18-125:12, 151:9-11, 151:26-28). This is further illustrated by review of the percentage of the text in key pleadings filed in this action that were devoted to the bird claims. Many of the pleadings did not address bird-related content at all, such as the Declaration of Sharon Kramer in Support of Plaintiff's Motion

for Summary Judgment, and only a very few pleadings were devoted exclusively to bird claims related content, such as the Declaration of Mary Whitfield in Support of Plaintiff's Motion for Summary Judgment. Key pleadings that had mixed Steelhead/bird claim related content typically had only a small portion of the latter, as illustrated by these examples (% references below are to the % of the document's content that was bird claim related):

--Plaintiffs' Motion for Preliminary Injunction (Dkt. 61): 1.25 of the 19 pages, or 6.6% (pages/lines 8:3-8:23, 11:16-17, 16:5-8, 16:13-16)

-- Plaintiffs' Motion for Summary Judgment (Dkt. 63): two of the 24 pages, or 8.3% (pages/lines 2:10-14, 14:20-16:3, 23:17-27)

-- Declaration of Jason Weiner in Support of Plaintiffs' Motion for Summary Judgment and accompanying exhibits (Dkt. 64, *et seq*.): 14 out of 208 exhibits, or 6.73%

-- Declaration of Chris Hammersmark in Support of Plaintiffs' Motion for Summary Judgment (Dkt. 65): 21 of the 85.5 pages, or 24.8% (pages/lines 58:18-70:9, 75:7-77:8, 80:15-87:17)

-- Declaration of I. Ayala In Support of Plaintiffs' Motion for Summary Judgment (Dkt. 67-2): about 10 lines out of the 112 lines, or 8.9% (pages/lines 5:10-15, 6:7-10)

-- Declaration of M. Waiya In Support of Plaintiffs' Motion for Summary Judgment (Dkt. 67-3): about 8 lines out of the 124 lines, or 6.5% (pages/lines 6:19-26)

-- Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Summary Judgment (Dkt. 68): thirty of the 153.3 pages, or 19.6% (pages/lines 119:12-147:3, 154:10-156:10)

-- United's Statement of Genuine Dispute of Material Fact (Dkt. 91-1): 82 of the 410.3 pages, or 20% (pages/lines 9:11-11:9, 325:10-405:7)

-- United's Objections to Plaintiffs' Summary Judgment Evidence (Dkt. 91-

2): 80.3 of the 467.3 pages, or 17.2% (pages/lines 388:1-468:10)

-- United's Opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. 92): two of the 24.5 pages, or 8.2% (pages/lines 4:5, 6:16-7:6, 15:7-10, 15:27-28, 16:7-14, 20:17-21, 24:13-23)

-- Plaintiff's Reply in Support of Motion for Summary Judgment (Dkt. 97): 8 lines/0.3 pages of the 24.7 pages, or 1.2% (pages/lines 19:13-20)

-- Plaintiff's Objections to United's Summary Judgment Evidence (Dkt. 99): 3 pages of the 47.3 pages, or 6.3 % (pages/lines 5:24, 6:19, 6:23, 17:25, 20:7-21, 27:14-28:17, 41:20-42:21)

-- Plaintiffs' Statement of Genuine Dispute of Material Fact of United's Additional Material Facts (Dkt. 100-1): 0.5 pages of the 47.3 pages, or 4.8 % (pages/lines 1:8-10, 9:23-10:2)

-- Plaintiffs' Reply In Support of Motion for Preliminary Injunction (Dkt. 102): 1/3 page of the 20 pages, or 1.7%

-- United's Motion In Limine to Exclude the Testimony of Chris Hammersmark (Dkt. 108): 2.2 pages of the 20.7 pages, or 10.6% (pages/lines 2:5-7, 3:3-7, 4:13-17, 14:5-15:17, 20:15-19)

-- Plaintiff's Opposition to United's Motion In Limine to Exclude the Testimony of Chris Hammersmark (Dkt. 116): two pages of the 19.2 pages, or 10.4% (pages/lines 7:1-6, 16:24-18:15)

-- United's Reply in Support of Motion In Limine to Exclude the Testimony of Chris Hammersmark (Dkt. 123): 0.3 pages of the 7.1 pages, or 4.2% (3:5-9, 4:5-7 pages/lines)

-- Joint Trial Exhibit List (Dkt. 133): 51.5 of Plaintiffs' 317 trial exhibits and 122 of United's 644 trial exhibits or 16.2% (Plaintiffs) and 17.4% (United) of the exhibits devoted to Flycatcher

-- United's Trial Memorandum of Contentions of Fact and Law (Dkt. 135): 0.5 pages of the 12.4 pages, or 4% (pages/lines 7:9-15, 9:18, 10:2-7, 13:10)

-- Plaintiffs' Proposed Trial Findings of Fact and Conclusions of Law (Dkt. 145): 36.5 pages of the 206.2 pages, or 17 % (pages/lines 133:1-164:18, 192:13-194:21, 197:24-198:1, 198:7-10, 203:5-204:19)

-- United's Proposed Trial Findings of Fact and Conclusions of Law (Dkt. 144): 1.2 pages of the 6.3 pages, or 17.7% (pages/lines 2:20-3:4, 6:16-7:6)

Thus, as reflected in my exercise of billing judgment, it is readily apparent that it is appropriate to reduce Plaintiffs' lodestar by only a relatively small percentage to reflect that they did not prevail on their bird take claims given the demonstrably small portion of the case devoted to those claims.

80.     To make these billing reductions, with assistance from my co-counsel, I first identified and cut all time records that facially identified tasks related to Plaintiffs' bird claims, *i.e.*, records related to factual research about bird species, records related to legal research exclusively related to bird take claims, records that reflected discussions between Plaintiffs' attorneys regarding bird claims, and records related to drafting bird take-related sections of briefs or other documents. I and my co-counsel also cut all time entries for tasks related to the following witnesses, who were exclusively focused on bird take claims: Mary Whitfield, Dr. Steven Bachman, Dr. John Hindley, and Dr. Bruce Orr. I and my co-counsel reduced all time spent drafting and reviewing expert reports, preparing for and taking depositions of these witnesses, reviewing deposition transcripts, examining these witnesses at trial, drafting or opposing motions in limine regarding these experts' testimony, and objecting to evidence presented by these witnesses, as well as any other tasks performed that involved these witnesses. One of Plaintiffs' experts, Dr. Hammersmark provided expert opinions and assistance on both Plaintiffs' Steelhead and bird take claims (though far more of his time was taken up with work on Plaintiffs' Steelhead claim). My co-counsel and I have carefully reviewed our time records to segregate out time that we spent working with Dr. Hammersmark on birds claims.

81.     Many of the time records submitted by Plaintiffs' attorneys obviously relate exclusively to Plaintiffs' claim regarding unauthorized take of Steelhead, which Plaintiffs

DECLARATION OF CHRISTOPHER SPROUL

41

CASE NO. 16-cv-03869-DOC-PLA

prevailed on. Therefore I did not reduce these entries due to Plaintiffs' failure to prevail on its bird take claims. For example, any time entry for a task performed related to the following witnesses is necessarily related to Plaintiffs' Steelhead claim because these witnesses were exclusively focused on Steelhead: Dr. Sharon Kramer, Kozmo Bates, Jonathon Mann, Dr. Dudley Reiser, Steve Howard, Dana Postelwait, and Ed Wallace. In addition, all tasks performed related to communications with NMFS, review of NMFS documents, or examination of NMFS witnesses Anthony Spina and Darren Brumback were exclusively related to Plaintiffs' Steelhead claim. All time entries related to review of certain documents, such as NMFS's 2008 Biological Opinion, United's draft Multi-Species Habitat Conservation Plan, United-NMFS correspondence, the 2010 United Fish Panel Report; various reports from United consultants, such as R2, AECOM, NHC and Entrix retained to analyze Steelhead impacts and potential alternatives to Vern Freeman Dam's current fish ladder, United's annual reports addressing its attempts to monitor by impacts on Steelhead, United's operational logs documenting its operation of the Vern Freeman Dam diversion, NMFS publications addressing Steelhead such as NMFS's Federal Register notice of ESA listing of Steelhead and Steelhead Recovery Plan, are also exclusively related to Plaintiffs' Steelhead claim as these documents only addressed topics pertinent to United's impact on Steelhead.

82.     Most of the requests for production of documents, interrogatories, and requests for admission that Plaintiffs sent to United requested information pertinent exclusively to Plaintiffs' Steelhead claim (Claim 1); only a relatively small portion of this discovery pertained to Plaintiffs' Claims 2, 3, and 4 on bird species. Most of the subpoenas that Plaintiffs sent to third parties also related exclusively to Plaintiffs' Steelhead claim. All of the 13 subpoenas that Plaintiffs sent to the following third parties were exclusively related to Plaintiffs' Steelhead claims, as these organizations and individuals only had information pertinent to Steelhead-related issues in the case: Western Fishes, AECOM, Alden Research Laboratory, Inc.; Payne/TRPA/Normandeau, R2 Resources, NHC, GEI, MWH/Stantec, Cardno/Entrix, Terry Roelofs, William Trush,

Jonathan Mann, and Kozmo Bates. And only about 25% of the document production request set forth in Plaintiffs' additional subpoena to Stillwater Sciences was directed to Flycatcher related information.

83.     Other time records that I reviewed involved tasks that would have been performed in the same amount of time even if Plaintiffs had not brought bird claims, *i.e.*, these were essential tasks to pursuing the Steelhead claim. For example, Plaintiffs' attorneys would have incurred the same level of fees performing a task like drafting the civil cover sheet regardless if Plaintiffs were alleging take of birds or if Plaintiffs were only bringing a claim for take of Steelhead. To give another example, Plaintiffs' expert Dr. Hammersmark was retained to work on both the Flycatcher and Steelhead claims. A task such as drafting his retainer agreement would have been performed even if he was only retained for the Steelhead claim—making it appropriate not to reduce time on these tasks for billing judgment, which would have been essential and performed in the same amount of time even if the Steelhead claim was the sole claim.

84.     I cut all time for fees incurred that would not have been incurred but for Plaintiffs bringing bird claims. In some instances, Plaintiffs' attorneys incurred fees working on both bird claims and the Steelhead claim--such as when working on Plaintiffs' Motion for Summary Judgment which sought summary judgment on both the Steelhead and Flycatcher claims. For those time entries where an attorney was performing a task that involved a mix of Steelhead and bird claims, I reduced the time entry to that reasonably claimed for work that advanced the Steelhead claim.

85.     My co-counsel and I have sought to limit the number of hours spent and number of attorneys involved in preparing this case to the extent possible to minimize the costs of litigation, while still being effective. While I always seek to do so in keeping with what I believe to be the ethical obligations of counsel to clients and the judicial process, I had special motivation to do so in this case. I and several of my co-counsel are working on contingency in this matter as Plaintiffs, nonprofit organizations, lack sufficient financial resources to pay for legal counsel. This gave me additional financial

motivation to reduce the risks to my firm and my co-counsel by striving to keep the time invested in this case to that I have judged to be prudently necessary.

86.    I closely supervised and directed the work of the additional lawyers brought onto Plaintiffs' litigation team to ensure their productivity and to avoid duplication to the maximum extent feasible. To prepare Plaintiffs' fees motion, I have spent many hours reviewing the time records of all of these attorneys for any work that seemed relatively inefficient or excessive, and I have reduced or cut their hours in exercise of billing judgment whenever I deemed this to be the case (in addition to billing reductions I made for work on birds claims). In total, I reduced Plaintiffs' lodestar by 1,808.73 hours (or $1,000,911.57 or about 25.7%) due to time incurred pursuing bird claims and to trim any "fat" in Plaintiffs' billing. This reduction is reasonable given the thorough methodology that I utilized to make billing judgment reductions, that the vast bulk of the time spent in this case was on Plaintiffs' winning Steelhead claim rather than on the bird take claims that Plaintiffs did not prevail on, that this matter was extraordinarily complex and went to an 11-day trial involving numerous expert witnesses on multiple disciplines, and that I diligently pursued directing and monitoring my various co-counsel to ensure their productivity.

### IV.    My Hourly Rate for Attorney Work

87.    I have set my rate for purposes of this action at $840 per hour. In my opinion, this rate is well within the reasonable 2018 market rate in the Central District of California for an attorney with my skill, experience, and reputation. To calculate my hourly rate, my co-counsel and I performed an extensive review of fee awards in cases involving a wide variety of complex civil litigation in the U.S. District Court for the Central District of California as well as other market data.

88.    Specifically, as one key metric to determine a reasonable 2018 market rate for me, my co-counsel and I determined the average of rates awarded in numerous complex civil litigation cases in Central District of California cases from 2014 to 2018

for attorneys with a range of 28 to 36 years of experience.[4] The following chart shows the data points we relied on to reach this average. The relevant cases are discussed in the following paragraphs. As depicted below, attorneys with these years of experience were awarded rates ranging from $700 to $950 per hour in these cases. The average of the awarded rates is $838 per hour. I have rounded this sum to $840 per hour as one of the primary bases for determining my rate.

| Year Attorney | Hourly Rate | Case Name |
|---|---|---|
| 28 | $850 | Nozzi v. Hous. Auth., No. CV 07-380 PA (FFMx), 2018 U.S. Dist. LEXIS 26049 (C.D. Cal. Feb. 15, 2018) |
| 28 | $775 | Rodriguez v. County of Los Angeles, C.D. Cal. No. 2:10-cv-06342- CBM-AJW, Order Granting Plaintiffs' Motion for Attorneys' Fees, filed December 29, 2014 |
| 28 | $700 | Rodriguez v. County of Los Angeles, C.D. Cal. No. 2:10-cv-06342- CBM-AJW, Order Granting Plaintiffs' Motion for Attorneys' Fees, filed December 29, 2014 |
| 28 | $810 | Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E., No. 2:16-cv-01001- |

[4] Whenever the case decisions referred to below did not readily indicate the identity of the attorneys involved or their years of experience, I  and my associates discerned this information by a combination of looking up the attorneys' declarations submitted in the cases in support of the request for attorneys fees, looking up the year these attorneys were admitted into practice on the California State Bar website, and/or looking up this information on the attorneys' own websites.

DECLARATION OF CHRISTOPHER SPROUL

45

CASE NO. 16-cv-03869-DOC-PLA

| | | |
|---|---|---|
| | | CAS (AFMx), 2017 U.S. Dist. LEXIS 10456 (C.D. Cal. Jan. 23, 2017) |
| 28 | $700 | Doe v. United Healthcare Ins. Co., No. SACV 13-0864 DOC(JPRx), 2014 U.S. Dist. LEXIS 194727 (C.D. Cal. Oct. 15, 2014) |
| 29 | $850 | Nozzi v. Hous. Auth., No. CV 07-380 PA (FFMx), 2018 U.S. Dist. LEXIS 26049 (C.D. Cal. Feb. 15, 2018) |
| 29 | $930 | Perfect 10, Inc. v. Giganews, Inc., No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015) |
| 31 | $865 | Amusement Art, LLC v. Life Is Beautiful, LLC, No. 2-14-cv-08290-DDP-JPR, 2017 U.S. Dist. LEXIS 79135 (C.D. Cal. May 23, 2017) |
| 32 | $800 | Doe v. United Healthcare Ins. Co., No. SACV 13-0864 DOC(JPRx), 2014 U.S. Dist. LEXIS 194727 (C.D. Cal. Oct. 15, 2014) |
| 32 | $845 | Michael Corona, et al v. Sony Pictures Entertainment (case no. 14-cv-09600-RGK) |
| 35 | $925 | Doe v. United Healthcare Ins. Co., No. SACV 13-0864 DOC(JPRx), 2014 U.S. Dist. LEXIS 194727 (C.D. Cal. Oct. 15, 2014) |

| 35 | $895 | Michael Corona, et al v. Sony Pictures Entertainment (case no. 14-cv-09600-RGK) |
| 36 | $950 | Doe v. United Healthcare Ins. Co., No. SACV 13-0864 DOC(JPRx), 2014 U.S. Dist. LEXIS 194727 (C.D. Cal. Oct. 15, 2014) |

89. In *Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*, No. 2:16-cv-01001-CAS (AFMx), 2017 U.S. Dist. LEXIS 10456, at *3 (C.D. Cal. Jan. 23, 2017), the court found that each of the hourly rates requested were "reasonable in light of their respective levels of experience and the local legal market." Lorenzo Gasparetti states in his declaration (Dkt. 114, p. 1) that he had 28 years of experience in 2016, and charged a discounted hourly rate of $810 per hour for this matter.

90. In *Nozzi v. Hous. Auth.*, No. CV 07-380 PA (FFMx), 2018 U.S. Dist. LEXIS 26049, at **20-21 (C.D. Cal. Feb. 15, 2018), the court considered the total lodestar and approved the requested fee award. In that case, attorneys Anne Richardson and Lisa Jaskol charged an hourly rate of $850. According to Anne Richardson's declaration (Dkt. 324, ¶ 8), Ms. Richardson graduated from law school in 1989 and therefore had 28 years of experience in 2017. Ms. Jaskol graduated from law school in 1988 and therefore had 29 years of experience in 2017 (Dkt. 324, ¶ 8).

91. In *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016), the court found that the requested hourly rates were "reasonable and consistent with those prevailing in the community for similar services." *Id.* at *3. In that case, the plaintiffs requested an hourly rate of $845 for Daniel C. Girard (Dkt. 159-2), an attorney who according to his LinkedIn profile graduated from law school in 1984 (*see* https://www.linkedin.com/in/danielgirard1/) and therefore had 32 years of experience in

2016. The plaintiffs also requested an hourly rate of $895 for Lynn Lincoln Sarko (Dkt. 159-2), an attorney who graduated law school in 1981 and therefore had 35 years of experience in 2016 ((Dkt. 159) at ¶ 90).

92.     In *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015), the court found that defendants' requested hourly rates were "reasonable" and "comparable to prevailing market rates for attorneys of similar experience, skill, and reputation in similarly complex litigation." *Id.* at **61-62. Andrew Bridges requested hourly rates ranging from $825 per hour in 2011, when he had 26 years of experience and up to $930 per hour for work performed in 2014, when he had 29 years of experience. *Id.* at *45.

93.     In *Amusement Art, LLC v. Life Is Beautiful, LLC*, No. 2-14-cv-08290-DDP-JPR, 2017 U.S. Dist. LEXIS 79135 (C.D. Cal. May 23, 2017), the court found that the defendant's requested hourly rates were "reasonable" and "in line with the prevailing rates." *Id.* at **17-18. Defendants' counsel charged hourly rates between $450 to $865. *Id.* at *17. The exhibits setting forth the billing rates of each attorney were submitted under seal. However, the Boyd Declaration (Dkt. 181) states that the most experienced attorney was Barni Rothman, an attorney who received her J.D. in 1984 and had been practicing for 31 years. Thus the highest hourly rate in that case, $865, can be attributed to an attorney of 31 years or less experience.

94.     In *Rodriguez v. County of Los Angeles*, No. 2:10-cv-06342-CBM-AJW, Order Granting Plaintiffs' Motion for Attorneys' Fees, (C.D. Cal. December 29, 2014) (Dkt. 720, pp. 14-16), the court found requested rates reasonable including $775 per hour for David McLane and $700 per hour for James Muller, two attorneys who each had 28 years of experience in 2014.

95.     In *Doe v. United Healthcare Ins. Co.*, No. SACV 13-0864 DOC (JPRx), 2014 U.S. Dist. LEXIS 194727, at **7-8 (C.D. Cal. Oct. 15, 2014), this Court found that the requested hourly rates were reasonable. In that case, Catherine I. Hanson charged an hourly rate of $800 an hour. *Id.* at *12. According to the California Bar Association's

website, Ms. Hanson was admitted to the bar in 1982 and therefore had 32 years of experience in 2014. Harvey Rosenfield charged $925 an hour. *Id.* Mr. Rosenfield was admitted to the bar in 1979 and therefore had 35 years of experience in 2014 (Dkt. 44-4). Joe R. Whatley Jr. an attorney who was admitted to the bar in 1978 and had 36 years of experience in 2014, charged $950 per hour (Dkt. 44-2, p. 5). Alan M. Mansfield, who graduated from law school in 1986 and had 28 years of experience in 2014, charged $700 per hour (Dkt. 44-2, p. 14).

96.  Some of the cases I have relied on in calculating my average hourly rate were decided several years ago. As case outcomes and other readily available market information makes plain, attorney hourly rates have increased in the years since some of these cases were decided. If the rates awarded to attorneys with comparable years of experience in those cases were to be adjusted to the equivalent 2018 rates, those rates would be significantly higher.

97.  I have endeavored to project what the rates awarded several years ago in some of these cases would be if appropriately adjusted for inflation in the price of legal services. I have employed an adjustment factor of 3% per year, which in my opinion is a conservative rate that likely is less than the true inflation in the Los Angeles/Orange County legal market. I am basing the 3% adjustment rate on Barrett Litt's declaration submitted on January 9, 2018 in *Nozzi v. Hous. Auth.*, No. CV 07-380 PA (FFMx) (Dkt. 311, ¶ 21-27), which included a detailed analysis of the annual rate of increase for the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics in the Department of Labor. Mr. Litt calculated that the average annual rate increase of the Legal Services Consumer Price Index was 2.96% between June 2008 and May 2018 (*id.* at ¶ 22). I agree with Mr. Litt that the national 3% increase per year is likely an underestimate of fee increases in major metropolitan areas, which have reported more rapid increases in legal rates (*id.* at ¶ 23).[5]

_____

[5] For support for my opinion that attorney hourly rates have increased in recent years, I point to a series of federal court decisions that have awarded me attorney fees

between 2011 and 2017. *Pacificans For A Scenic Coast v. Cal. DOT*, No. 15-02090, 2017 U.S. Dist. LEXIS 199145 (N.D. Cal. Nov. 22, 2017); *Our Children's Earth Foundation v. National Marine Fisheries Service*, No. 14-01130, 2017 U.S. Dist. LEXIS 29130 (N.D. Cal. Mar. 1, 2017); *Our Children's Earth Foundation v. U.S. Environmental Protection Agency*, No. 13-02857, 2016 U.S. Dist. LEXIS 40626 (N.D. Cal. Mar. 25, 2016)); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv. ("SYRCL")*, No. 06-2845, 2012 U.S. Dist. LEXIS 42287, at *9 (E.D. Cal. Mar. 26, 2012), *aff'd* 2014 U.S. App. LEXIS 12450 (9th Cir. July 1, 2014); *San Francisco Baykeeper v. West Bay Sanitary District*, No. C-09-5676, 2011 U.S. Dist. LEXIS 138093, at **20-26 (N.D. Cal. Dec. 1, 2011) (Dkt. 174). In these decisions, the courts awarded me higher hourly rates than I had been awarded in previous years—with some of the increases well exceeding 3% per year. For example, Judge Orrick in *Our Children's Earth Foundation v. National Marine Fisheries Service*, noted that "For time in 2016--as to which plaintiffs may have not had an hourly rate approved by another court--plaintiffs are entitled to a 10% increase over their 2015 approved-rates, absent specific justification supported by a declaration explaining why a particular attorney or paralegal should be granted a higher percentage increase." 2017 U.S. Dist. LEXIS 29130, at *31.

This case law is well reflected in legal journal and legal blog articles that I have read over the years emphasizing that attorney rates have continued to increase substantially year after year. *See, e.g*., ABA Journal, "Average Hourly Billing Rate For Partners Last Year Was $727 In Largest Law Firms" (posted July 15, 2013) (noting that attorney billing rates nationally increased 3.1% for law firm partners and 7.4% for associates the prior year) (published at: http://www.abajournal.com/news/article/average_hourly_billing_rate_for_partners_last_year_was_727_in_largest_law_f/).

I further note that the U.S. Department of Justice's so-called "Laffey Matrix," which the Department of Justice publishes annually to provide objective guidance in assessing appropriate hourly rates for attorneys of differing levels of experience in the Washington, D.C. area, has consistently shown annual increases in prevailing attorney hourly rates. The Department of Justice Laffey Matrix is published at: https://www.justice.gov/usao-dc/file/796471/download. Notably, the Department of Justice has relied upon the PPI-OL to estimate the annual increase in attorney hourly rates which is a national index of the general rise in attorney compensation.

I also note the Declaration of Richard M. Pearl ("Pearl Decl.") prepared for *La Mirada Avenue Neighborhood Association Of Hollywood v. City of Los Angeles*, Case No. BS140889, (CA Superior Ct. County of Los Angeles) provides additional supporting information. Attached hereto as Ex. 8 is a true and correct copy of the Pearl Decl. The Pearl Decl. (dated January 19, 2017) broadly surveyed Los Angeles metropolitan area attorneys' fees data. Mr. Pearl is the principal of his own law firm, the Law Offices of Richard M. Pearl, in Berkeley, California. He specializes in issues related to court-

98.     Applying the 3% per year adjustment factor to the rate awarded in *Doe v. United Healthcare Ins. Co*., which was decided four years ago in 2014, the rate of $800 per hour that this Court found reasonable for an attorney with 32 years of experience would equate to a rate of $900.41 per hour for an attorney with 32 years of experience in 2018. Therefore, my hourly rate of $840 per hour is significantly below the inflation-

awarded attorneys' fees, including the representation of parties in fee litigation and appeals, serving as an expert witness, and serving as a mediator and arbitrator in disputes concerning attorneys fees and related issues. Ex. 8 ¶ 1. Notably, one federal court expressly recognized that "Mr. Pearl specializes in matters relating to court-awarded attorneys' fees and has served as an expert witness, mediator, and arbitrator in fee disputes and related matters. He has also written extensively on court-awarded attorneys' fees. Mr. Pearl is 'frequently called upon to opine about the reasonableness of attorneys' fees.'" *Kranson v. Fed. Express Corp.*, 2013 U.S. Dist. LEXIS 173499 (N.D. Cal. Dec. 11, 2013) (citations omitted). Mr. Pearl opines "in my experience, [from 2014 to January 2017], most Los Angeles Area firms have raised their rates by at least 5-10%." Pearl Decl. ¶ 15. The extensive data in the Pearl Decl. confirms that attorneys rates have continued to increase annually.

The Pearl Decl., though the data is somewhat dated at this point, also adds additional support for the reasonableness of $840 per hour as a 2018 prevailing market rate in the Los Angeles/Orange County market for an attorney with 32 years of experience—and that the rates claimed by Plaintiffs' other attorneys are also reasonable. For example, the Pearl Decl. recites that a 15 year attorney was awarded $900 per hour and a two-year attorney was awarded $450 per hour as 2016 rates in *The Kennedy Commission v. City of Huntington Beach*, No. 30-2015-00801675 (Ca. Superior Ct., County of Los Angeles July 13, 2016). Pearl Decl. ¶ 14. $900 per hour is substantially less than I am claiming in 2018, even though I have more than twice the experience. For additional example, the Pearl Decl. recites the following year 2016 hourly rates awarded in *State Compensation Insurance Fund v. Khan, et al.*, Case No. SACV 12-01072-CJC(JCGx) (C.D. Cal. July 6, 2016) (Dkt. 408): 22 years: $890/hour, 20 years: $840/hour, five years: $670/hour, four years: $560/hour, paralegals: $325-$340/hour. Pearl Decl. ¶ 14. Again, the $890 per hour rate for a 22 year lawyer is substantially less than the rate that I am claiming even though I have a decade more experience.

The Pearl Decl. further pointed out that a Wall Street Journal article published on April 9, 2013, "On Sale: The $1150 Per Hour Lawyer " noted that the 50 top grossing law firms *in 2013* billed their partners at an *average* rate between $879 and $882 per hour. The Pearl Decl. further pointed out that the Los Angeles law firm Gibson Dunn & Crutcher charged $1,125 per hour for a 37 year lawyer, $955 per hour for a 23 year lawyer and $575 per hour for a three-year lawyer as 2015 rates. Pearl Declaration ¶ 16.

adjusted hourly rate that this Court awarded to a 32 year attorney in 2014. This further supports that my claimed rate of $840 per hour as a 2018 rate is well within reasonable prevailing market rates in the Central District of California.

99.     I have also compared my rate to Barrett Litt's analysis of prevailing market rates as reflected in his January 9, 2018 declaration in *Nozzi v. Hous. Auth.*, No. CV 07-380 PA (FFMx) (Dkt. 311). Under my supervision, my associates collected data from Mr. Litt's "Table 3 – Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports," which analyzes attorney fee awards and rates charged in commercial litigation in the Central District of California (Dkt. 311-2, pp. 11-16; *see* Dkt. 311, ¶15-20 (explaining methodology)). My associates and I adapted this data to reflect fee awards for attorneys with comparable years of experience to me, including data from attorneys with 28-36 years of experience. This data is reflected in the chart below. Footnotes detailing citations for each of the rates reported are included on pages 16-22 of Exhibit B of the Litt Declaration (Dkt. 311-2).

| AVERAGES | | 32 YRS EXPERIENCE (4 YRS BEFORE/AFTER) | $ 820 | | $ 997 |
|----------|------|-----------------|------|------|--------------|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** |
| Unnamed | Paul Hastings | 36 (1974) | $940 | 2010 | $1,156 |
| Unnamed | Lieff Cabraser | 34 (1978) | $800 | 2012 | $927 |
| Unnamed | O'Melveny & Myers | 34 (1975) | $860 | 2009 | $1,089 |
| Unnamed | Paul Hastings | 33 (1978) | $940 | 2011 | $1,122 |
| Daniel Kolkey | Gibson Dunn | 32 (1977) | $840 | 2009 | $1,064 |
| Unnamed | Pachulski, Stang et al. | 32 (1977) | $650 | 2009 | $823 |
| Unnamed | Hennigan, Bennett & Dorman | 31 (1978) | $680 | 2009 | $861 |

| Unnamed | Hennigan, Bennett & Dorman | 30 (1979) | $760 | 2009 | $963 |
|---------|---------------------------|-----------|------|------|------|
| Unnamed | Lieff Cabraser | 29 (1983) | $775 | 2012 | $898 |
| Arturo Gonzalez | Morrison & Forester | 28 (1985) | $950 | 2013 | $1,069 |

100.   As illustrated in the final column, Mr. Litt utilized the 3% adjustment factor to calculate the adjusted 2017 hourly rates (Dkt. 311, ¶ 21-27). The average 2017 hourly rate is $997 per hour. This rate would be slightly higher once adjusted for 2018 rates. Thus, my 2018 rate of $840 per hour is significantly lower than rates that have been charged by other attorneys engaged in commercial litigation in the Central District of California once adjusted for the increased cost of legal services. I also note that my claimed rate of $840 per hour is the same as set *nine years ago, in 2009*, to another attorney with 32 years of experience (Daniel Kolkey). This again further supports that my claimed rate of $840 per hour as a 2018 rate is well within reasonable prevailing market rates in the Central District of California.

101.   My associates and I have also compared my rates to rates awarded to civil rights attorneys in the Central District of California, as set forth in Barrett Litt's Declaration in *Nozzi v. Hous. Auth.*, No. CV 07-380 PA (FFMx) (Dkt. 311). Under my supervision, my associates collected data from Mr. Litt's "Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks" which analyzes attorney fee awards and lodestar crosschecks in civil rights litigation in the Central District of California (Dkt. 311-2, pp. 1-8; *see* Dkt. 311, ¶15-20 (explaining methodology)). My associates and I adapted this data to reflect fee awards for attorneys with comparable years of experience to me, including data from attorneys with 28-36 years of experience. This data is reflected in the chart below. Footnotes detailing the sources for each of the rates reported are included on pages 16-22 of Exhibit B of the Litt Declaration (Dkt. 311-2).

| AVERAGES | | 32 YRS EXPERIENCE (4 YRS BEFORE/ AFTER) | $744 | | $871 |
|----------|--|------------------------------------------|------|--|------|

| ATTORNEY | FIRM | Practice Yrs [Grd. Yr.] | RATE | YEAR | ADJUSTED RATE | |
|---|---|---|---|---|---|---|
| David Borgen | Goldstein Borgen Dardarian | 35 (1981 | $795 | 2016 | $819 | |
| Mark Rosenbaum | ACLU | 35 (1974) | $740 | 2009 | $937 | |
| Thomas P. Greerty | Law Offices of Thomas P. Greerty | 34 (1979) | $725 | 2013 | $816 | |
| Paul L. Hoffman | Schonbrun, de Simone | 33 (1976) | $750 | 2009 | $950 | |
| Carol Sobel | Law Office of Carol Sobel | 32 (1978) | $725 | 2010 | $892 | |
| Unnamed | Prison Law Office | 32 (1978) | $700 | 2010 | $861 | |
| Unnamed | Bingham, McCutcheon | 32 (1978) | $700 | 2010 | $861 | |
| Jose R. Allen | Skadden, Arps | 31 (1985) | $1,150 | 2016 | $1,185 | |
| Carol Sobel | Law Ofc Carol Sobel | 31 (1978) | $710 | 2009 | $899 | |
| Carol A. Sobel | Law Offices of Carol Sobel | 31 (1978) | $710 | 2009 | $899 | |
| Dale Galipo | Law Ofc Dale Galipo | 30 (1984) | $800 | 2014 | $874 | |
| Dale Galipo | Law Ofc Dale Galipo | 30 (1984) | $800 | 2014 | $874 | |
| Linda Dardarian | Goldstein Borgen Dardarian | 29 (1987) | $775 | 2016 | $798 | |
| Michael Bien | Rosen Bien Galvan & Grunfeld | 28 (2008) | $640 | 2008 | $835 | |
| David M. McLane | Kaye, McLane, Bednarski & Litt | 28 (1988) | $775 | 2014 | $847 | |
| Jim DeSimone | Schonbrun, de Simone | 28 (1985) | $725 | 2013 | $816 | |
| Dale Galipo | Law Ofc of Dale Galipo | 28 (1984) | $700 | 2012 | $811 | |
| Susan Abitanta | Law Office of Ian Herzog | 28 (1983) | $600 | 2011 | $716 | |
| Robert Rubin | LCCR | 28 (1978) | $625 | 2006 | $865 | |

102.   As illustrated in the final column, Mr. Litt utilized the 3% adjustment factor to calculate his adjusted 2017 hourly rates (Dkt. 311, ¶ 21-27). The average 2017 hourly rate is $871 per hour. This rate would be slightly higher once adjusted for 2018 rates. Thus, my 2018 rate of $840 per hour is significantly lower than rates that have been awarded to attorneys engaged in civil rights litigation in the Central District of California once adjusted for the increased cost of legal services in recent years. This further supports that my claimed rate of $840 per hour as a 2018 rate is well within reasonable prevailing market rates in the Central District of California.

103.   Finally, I note that I have been awarded $775 per hour as a 2016 rate in a consent judgment issued by the California Superior Court for the County of Orange in a case brought pursuant to California Health & Safety Code §§ 25249.5, *et seq.* California Health and Safety Code § 25249.7(f)(4)(B) requires California Superior Courts to find that the award of attorneys fees sought in such consent judgments "is reasonable under California law." The California Superior Court for the County of Orange effectively approved my hourly rate in issuing this consent judgment. The $840 hourly rate that I am claiming in this case represents about a 4% per year increase over the $775 per hour that the Orange County Superior Court found reasonable for me in 2016.[6]

## V.   Hourly Rates for Plaintiffs' Other Counsel

### John Buse

---

[6] I have also been awarded $800 per hour as a 2017 rate in three consent judgments issued by the California Superior Court for the County of San Francisco in cases brought pursuant to California Health & Safety Code §§ 25249.5, *et seq.* and $800 per hour as a 2017 rate in *Pacificans For A Scenic Coast v. Cal. DOT*, No. 15-02090, 2017 U.S. Dist. LEXIS 199145, at **5-9, a case against the U.S. Fish and Wildlife Service and the California Department of Transportation asserting, *inter alia*, claims under the ESA. These awards were all based upon a showing that $800 per hour was a reasonable 2017 market rate for me in the San Francisco Bay Area legal market and thus are not directly on point for this case in the Los Angeles/Orange County legal market. I point them out only to illustrate that courts have awarded me rates not that much lower than $840 per hour that I am claiming in this case, especially if the $800 per hour were to be adjusted for a year's inflation.

104.   John Buse has 26 years of experience as of the time this motion is filed. As detailed in his concurrently filed declaration, Mr. Buse has extensive experience in environmental litigation, particularly under the ESA. I am aware from talking with colleagues that Mr. Buse enjoys a reputation for environmental citizen suit expertise, as reflected in numerous successful citizen suit case outcomes. In conjunction with Mr. Buse, I have set his hourly rate at $780 per hour as an appropriate 2018 rate to claim in the Central District of California for an attorney of his level of skill, years of experience, and reputation for environmental law expertise. This rate is commensurate if not considerably lower than rates found reasonable in Central District of California attorneys fee award decisions for attorneys with his level of experience working on cases involving complex civil litigation. In setting this hourly rate, Mr. Buse and I have reviewed market data and recent attorney fee awards in cases involving various types of complex civil litigation in the U.S. District Court for the Central District of California, which are described in detail below. A $780 per hour rate is substantially less than the rates awarded to several lawyers with comparable experience in recent cases and is close to the average of such awarded rates. Accordingly, in my opinion, this is a reasonable market-based 2018 rate for his work in this case.

105.   In *Nozzi v. Hous. Auth.*, No. CV 07-380 PA (FFMx), 2018 U.S. Dist. LEXIS 26049 at **20-21 (C.D. Cal. Feb. 15, 2018), the court considered the total lodestar and approved the requested fee award in a class action lawsuit. In that case, attorney Hernán Vera charged an hourly rate of $750. According to Anne Richardson's declaration (Dkt. 324, ¶ 8), Hernán Vera graduated from law school in 1994 and therefore had 23 years of experience in 2017. Attorney Paul Estuar charged an hourly rate of $765. According to Barrett Litt's declaration (Dkt. 323, ¶ 10), Mr. Estuar graduated from law school in 1993 and therefore had 24 years of experience in 2017. Attorney Patrick Dunlevy charged an hourly rate of $750. Mr. Dunlevy graduated law school in 1992 and therefore had 25 years of experience in 2017 (Dkt. 323, ¶ 10). Attorneys Anne Richardson and Lisa Jaskol charged an hourly rate of $850. According to Anne Richardson's declaration (Dkt. 324, ¶

8), Ms. Richardson graduated from law school in 1989 and therefore had 28 years of experience in 2017. Ms. Jaskol graduated from law school in 1988 and therefore had 29 years of experience in 2017 (Dkt. 324, ¶ 8).

106.    In a July 19, 2018 minute order in *Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV 16-01133 JGB (KKx), (Dkt. 67), the court awarded the requested attorney fees. Michael Gould, an attorney who had 27 years of experience in 2018 according to his declaration (Dkt. 57-1, ¶ 2), charged an hourly rate of $750.

107.    In *Perfect 10, Inc. v. Giganews, Inc*., No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015), the court found that defendants' requested hourly rates were "reasonable" and "comparable to prevailing market rates for attorneys of similar experience, skill, and reputation in similarly complex litigation." *Id.* at **61-62. Andrew Bridges requested hourly rates ranging from $825 per hour in 2011, when he had 26 years of experience, up to $930 per hour for work performed in 2014, when he had 29 years of experience. *Id.* at *45.

108.    In *Rodriguez v. County of Los Angeles*, C.D. Cal. No. 2:10-cv-06342-CBM-AJW, Order Granting Plaintiffs' Motion for Attorneys' Fees, filed December 29, 2014 (Dkt. 720, pp. 14-16), the court found requested rates reasonable including $775 per hour for David McLane and $700 per hour for James Muller, two attorneys who each had 28 years of experience in 2014. Attorney Ronald Kaye, who had 26 years of experience, charged $775 per hour, which the court also found reasonable. *Id*. at 14, 16.

109.    In *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016), the court found that the requested hourly rates were "reasonable and consistent with those prevailing in the community for similar services." *Id.* at *3. In that case, the plaintiffs requested an hourly rate of $850 for Michael Sobol (Dkt. 159-2), an attorney who graduated from law school in 1989 and therefore had 27 years of experience in 2016 (Dkt. 159, ¶ 102).

110.    In *Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*, No. 2:16-cv-01001-CAS (AFMx), 2017 U.S. Dist. LEXIS 10456 at *3 (C.D. Cal. Jan. 23, 2017), the court found

that each of the hourly rates requested were "reasonable in light of their respective levels of experience and the local legal market." Lorenzo Gasparetti states in his declaration (Dkt. 114, p. 1) that he had 28 years of experience in 2016, and charged a discounted hourly rate of $810 per hour for this matter.

111.    In *Toyo Tire & Rubber Co. v. H.K. Tri-Ace Tire Co.*, No. SACV 14-00054-CJC(JPRx), 2018 U.S. Dist. LEXIS 20668 at *10 (C.D. Cal. Jan. 24, 2018), the court found that the requested hourly rates were reasonable. Victor de Gyarfas requested rates of $675-$695 per hour (*id.* at *9). Mr. Gyarfas is an attorney who graduated from law school in 1994 (Dkt. 35-1, ¶ 20) and who therefore had 23 years of experience in 2017.

112.    In a Minute Order filed on March 31, 2016 in *Freedom from Religion Foundation, Inc., et al., v. Chino Valley Unified School District Board of Education, et al.*, Case No. 14-2336-JGB (DTBx) (Dkt. 101), the court found that plaintiffs' requested hourly rates were reasonable. In that case, plaintiffs sought an hourly rate of $650 for David Kaloyanides, who was admitted to the California bar in 1992 and therefore had 24 years of experience in 2016 (Dkt. 101, pp. 6-7).

113.    In *Doe v. United Healthcare Ins. Co.*, No. SACV 13-0864 DOC(JPRx), 2014 U.S. Dist. LEXIS 194727 at **7-8 (C.D. Cal. Oct. 15, 2014), this Court found that the requested hourly rates were reasonable. In that case, Edith M. Kallas charged an hourly rate of $900 an hour. *Id.* at *12. Ms. Kallas graduated from law school in 1987 and therefore had 27 years of experience in 2014 (Dkt. 44-2, p. 6). This Court awarded $700 per hour to Alan M. Mansfield, who graduated from law school in 1986 and had 28 years of experience in 2014 (Dkt. 44-2, p. 14).

### Fredric Evenson

114.    Fredric Evenson has 20 years of experience as of the time this motion is filed. Mr. Evenson has been my co-counsel in many environmental laws citizen suits, including cases brought under the ESA. Based on my years of experience with him, I am well aware that he has extensive expertise in environmental citizen suit litigation--as is further reflected in his concurrently filed declaration in support of Plaintiffs' fee motion.

In conjunction with Mr. Evenson, I have set his hourly rate at $735 per hour as an appropriate 2018 rate to claim in the Central District of California for an attorney of his level of skill, years of experience, and reputation for environmental law expertise. This rate is commensurate if not considerably lower than rates found reasonable in Central District of California attorneys fee award decisions for attorneys with his level of experience working on cases involving complex civil litigation. In setting this hourly rate, Mr. Evenson and I have reviewed market data and recent attorney fee awards in cases involving a wide variety of complex civil litigation in the U.S. District Court for the Central District of California, which are described in detail below. A $735 per hour rate is substantially less than the rates awarded to several lawyers with comparable experience in recent cases and is close to the average of such awarded rates. Accordingly, in my opinion, this is a reasonable market-based 2018 rate for his work in this case.

115.  In *Nozzi v. Hous. Auth.*, No. CV 07-380 PA (FFMx), 2018 U.S. Dist. LEXIS 26049 at **20-21 (C.D. Cal. Feb. 15, 2018), the court considered the total lodestar and approved the requested fee award in a class action lawsuit. In that case, attorney Hernán Vera charged an hourly rate of $750. According to Anne Richardson's declaration (Dkt. 324, ¶ 8), Hernán Vera graduated from law school in 1994 and therefore had 23 years of experience in 2017. Attorney Paul Estuar charged an hourly rate of $765. According to Barrett Litt's declaration (Dkt. 323, ¶ 10), Mr. Estuar graduated from law school in 1993 and therefore had 24 years of experience in 2017. In *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015), the court found that defendants' requested hourly rates were "reasonable" and "comparable to prevailing market rates for attorneys of similar experience, skill, and reputation in similarly complex litigation." *Id.* at **61-62. Ilana Rubel requested hourly rates ranging from $715 per hour in 2013, when she had 16 years of experience, up to $750 per hour for work performed in 2014, when she had 17 years of experience (Dkt. 644-1, ¶ 18). In *Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*, No. 2:16-cv-01001-CAS (AFMx), 2017 U.S. Dist. LEXIS 10456 at *3 (C.D. Cal. Jan. 23, 2017), the court

found that each of the hourly rates requested were "reasonable in light of their respective levels of experience and the local legal market." Lorenzo Gasparetti states in his declaration (Dkt. 114, p. 1) that attorney Peter Ellis had 18 years of experience in 2016, and charged a discounted hourly rate of $730 per hour for this matter. In *Doe v. United Healthcare Ins. Co*., No. SACV 13-0864 DOC(JPRx), 2014 U.S. Dist. LEXIS 194727, at **7-8 (C.D. Cal. Oct. 15, 2014), this Court found that the requested hourly rates were reasonable. In that case, Pam Pressley charged an hourly rate of $650. *Id.* at *12. Ms. Pressley is a public interest lawyer with Consumer Watchdog who was admitted to the bar in 1995 and therefore had 19 years of experience in 2014 (Dkt. 44-4). Charlene P. Ford charged an hourly rate of $700. *Doe*, 2014 U.S. Dist. LEXIS 194727 at *12. Ms. Ford is a lawyer with Whatley Kallas who graduated from law school in 1993 and therefore had 21 years of experience in 2014 (Dkt. 44-2, p. 12). Adjusting for inflation using a factor of 3% annually (see my justification in paragraph 97 above for the 3% annual increase rate), 2014 awards of $650 and $700 per hour would equate to $900.41 per hour for a 32 year attorney in 2018. In *3M Co. v. Phx. Auto. Refinishing Co.*, No. CV 17-00649-RSWL-DTB, 2018 U.S. Dist. LEXIS 70589 at *19 (C.D. Cal. Apr. 25, 2018), the court found that the requested hourly rates for attorneys were reasonable and in line with the prevailing market rates. In that case, Michael Kahn, an attorney who had been practicing since 2002 and therefore had 16 years of experience, sought an hourly rate of $790 (*id.* at **18-19). In *Pac. Hosp. Grp. Ventures v. Newcrestimage Holdings, LLC*, No. 8:17-cv-01353-JLS-JDE, 2017 U.S. Dist. LEXIS 159365 at *11-12 (C.D. Cal. Sep. 27, 2017), the court granted the requested attorney fee amount. Nathan Spatz charged $785 per hour (*id.* at 11). Mr. Spatz is an attorney who was admitted to the bar in 1999 according to the California Bar Association website, and therefore had 18 years of experience in 2017. The court also awarded $720 per hour to Jeffrey Gans, an attorney who graduated in law school in 1995 according to his firm's website, and therefore had 22 years of experience in 2017 (*see* https://www.pillsburylaw.com/en/lawyers/jeffrey-gans.html).In *Sugarfina, Inc. v. Sweitzer Ltd. Liab. Co*., No. 2:17-CV-07950-ODW(JCx),

2018 U.S. Dist. LEXIS 137457 at **11-12 (C.D. Cal. July 30, 2018), the court found that the requested hourly rates were reasonable. Jennifer Trusso Salinas, an attorney with 20 years of experience, charged an hourly rate of $752.02 (Dkt. 34, ¶ 19).

**Anthony Barnes**

116.   Anthony Barnes has 20 years of experience as of the time this motion is filed. His extensive environmental law/citizen suit background is reflected in his concurrently filed declaration in support of Plaintiffs' fee motion. In conjunction with Mr. Barnes, I have set his hourly rate at $720 per hour. Mr. Barnes has been my co-counsel in another case and from my experience working with him, I know him to be a skilled civil litigator with expertise in environmental law. An hourly rate of $720 for an attorney with 20 years of experience is lower than rates awarded to attorneys with comparable years of experience in Central District of California cases this year. In one case decided in the Central District of California this year, *3M Co. v. Phx. Auto. Refinishing Co.*, No. CV 17-00649-RSWL-DTB, 2018 U.S. Dist. LEXIS 70589 (C.D. Cal. Apr. 25, 2018), the court awarded a rate of $790 per hour to Michael Kahn, an attorney who was admitted to the bar in 2002 and therefore had 16 years of experience, four years of experience less than Mr. Barnes. In another case decided this year, *Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV 16-01133 JGB (KKx), 2018 U.S. Dist. LEXIS 100835 (C.D. Cal. June 14, 2018), the court awarded a rate of $750 to Kyle R. Nordrehaug, an attorney who was admitted to the bar in 1999 and therefore had 19 years of experience, one year less than Mr. Barnes. In *Sugarfina, Inc. v. Sweitzer Ltd. Liab. Co.*, No. 2:17-CV-07950-ODW(JCx), 2018 U.S. Dist. LEXIS 137457 (C.D. Cal. July 30, 2018), the court awarded $752.02 per hour to Jennifer Trusso Salinas, an attorney who graduated from law school in 1998 and therefore had 20 years of experience. Mr. Barnes's requested rate of $720 per hour is less than the rates awarded to attorneys with comparable years of experience this year.

117.   Attorney fees awarded in the Central District in previous years also support Mr. Barnes's rate and demonstrate that it is on the low end for an attorney with his

experience level. In 2017, the Central District awarded an hourly rate of $785 to Nathan Spatz, an attorney who was admitted to the bar in 1999 and had 18 years of experience in 2017, in *Pac. Hosp. Grp. Ventures v. Newcrestimage Holdings, LLC*, No. 8:17-cv-01353-JLS-JDE, 2017 U.S. Dist. LEXIS 159365 (C.D. Cal. Sep. 27, 2017). In *Perfect 10, Inc. v. Giganews, Inc*., No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015), the court awarded a 2014 hourly rate of $750 to Ilana Rubel and Brian Buckley, attorneys with 17 and 18 years of experience respectively.

118.   In one case decided several years ago, *Doe v. United Healthcare Ins. Co*., No. SACV 13-0864 DOC(JPRx), 2014 U.S. Dist. LEXIS 194727 (C.D. Cal. Oct. 15, 2014), Judge Carter awarded an hourly rate of $650 to Pam Pressley, a public interest lawyer with Consumer Watchdog who was admitted to the bar in 1995 and therefore had 19 years of experience in 2014, and awarded an hourly rate of $700 to Charlene P. Ford, a lawyer with Whatley Kallas who was admitted to the bar in 1993 and therefore had 21 years of experience in 2014. Adjusting for inflation using a factor of 3% annually, 2014 awards of $650 and $700 per hour would equate to $731.58 for a 19 year attorney and $787.86 for a 21 year attorney in 2018 (see my justification in paragraph 97 above for the 3% annual increase rate).

**Jodene Isaacs**

119.   Jodene Isaacs has 15 years of experience as of the time this motion is filed. Ms. Isaacs has been my co-counsel in multiple citizen suits brought under various environmental laws for well over a decade. Her extensive environmental law/citizen suit background is reflected in her concurrently filed declaration in support of Plaintiffs' fee motion. From my years of experience working with her and discussions with other colleagues, I am well aware that she has a reputation for skill and expertise in various aspects of environmental civil litigation. In conjunction with Ms. Isaacs, I have set her hourly rate at $670 per hour as an appropriate 2018 rate to claim in the Central District of California for an attorney with her level of skill, years of experience, and reputation for environmental law expertise. This rate is commensurate if not considerably lower than

rates found reasonable in Central District of California attorneys fee award decisions for attorneys with her level of experience working on cases involving complex civil litigation. In setting this hourly rate, Ms. Isaacs and I have reviewed market data and recent attorney fee awards in cases involving a wide variety of complex civil litigation in the U.S. District Court for the Central District of California, which are described in detail below. A $670 per hour rate is substantially less than the rates awarded to several lawyers with comparable experience in recent cases and is close to the average of such awarded rates. Accordingly, in my opinion, this is a reasonable market-based 2018 rate for her work in this case.

120.   Specifically, to determine her 2018 rate, Ms. Issacs and I surveyed numerous Central District of California cases from 2014 to 2018 that awarded fees in complex civil litigation cases. To calculate the average fee award for an attorney with 15 years of experience, we collected data from these cases showing hourly rates that were awarded or found to be reasonable for attorneys with a range of 13 to 17 years of experience. The following chart shows the data points we relied on to reach this average, and the cases are discussed in the following paragraphs. Averaging the hourly rates together results in an average of $668 per hour for an attorney with comparable years of experience to Ms. Isaacs, which rounds to an hourly rate of about $670 per hour.

| Year Attorney | Hourly Rate | Case Name |
| --- | --- | --- |
| 13 | $675 | *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016) |
| 13 | $615 | *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016) |
| 13 | $640 | *Nozzi v. Hous. Auth.*, No. CV 07-380 PA (FFMx), 2018 U.S. Dist. LEXIS 26049 (C.D. Cal. Feb. 15, 2018) |
| 14 | $600 | *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016) |
| 15 | $625 | *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK |

| | | (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016) |
|---|---|---|
| 16 | $790 | *3M Co. v. Phx. Auto. Refinishing Co.*, No. CV 17-00649-RSWL-DTB, 2018 U.S. Dist. LEXIS 70589 (C.D. Cal. Apr. 25, 2018) |
| 16 | $575 | *Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV 16-01133 JGB (KKx), 2018 U.S. Dist. LEXIS 100835 (C.D. Cal. June 14, 2018) |
| 17 | $700 | *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016) |
| 17 | $750 | *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015) |
| 17 | $705 | *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015) |

121.   In *Nozzi v. Hous. Auth.*, No. CV 07-380 PA (FFMx), 2018 U.S. Dist. LEXIS 26049 at **20-21 (C.D. Cal. Feb. 15, 2018), the court considered the total lodestar and approved the requested fee award. Attorney Stephanie Carroll charged an hourly rate of $640. According to Anne Richardson's declaration, Ms. Carroll graduated from law school in 2004 and therefore had 13 years of experience in 2017 (Dkt. 324, ¶ 8).

122.   In *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015), the court found that defendants' requested hourly rates were "reasonable" and "comparable to prevailing market rates for attorneys of similar experience, skill, and reputation in similarly complex litigation." *Id.* at **61-62. Ilana Rubel requested hourly rates ranging from $715 per hour in 2013, when she had 16 years of experience, up to $750 per hour for work performed in 2014, when she had 17 years of experience (Dkt. 644-1, ¶ 18). Jennifer Kelly, an attorney with 17 years of experience, requested an hourly rate of $705 for work performed in 2013 (Dkt. 644-1, ¶ 19).

123.   In *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016), the court found that the

requested hourly rates were "reasonable and consistent with those prevailing in the community for similar services." *Id.* at *3. In that case, plaintiffs requested $675 per hour for Cari Campen Laufenberg (159-2), an attorney who graduated from law school in 2003 and therefore had 13 years of experience in 2016 (Dkt. 159, ¶ 91). Jordan Elias charged $615 per hour (159-2), and was admitted to the bar in 2003 according to the California Bar Association website, and therefore had 13 years of experience in 2016. Nicholas Diamand charged $600 per hour (Dkt. 159-2), graduated law school in 2002 and therefore had 14 years of experience in 2016 (Dkt. 159, ¶ 103). Roger Heller, an attorney who graduated law school in 2001 and had 15 years of experience in 2016 (Dkt. 159, ¶ 101), charged $625 per hour (159-2). Gretchen Cappio, an attorney who graduated law school in 1999 and had 17 years of experience in 2016 (Dkt. 159, ¶ 92) charged $700 per hour (159-2).

124.    In *Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV 16-01133 JGB (KKx), 2018 U.S. Dist. LEXIS 100835 (C.D. Cal. June 14, 2018), the court awarded the requested attorney fees in a class action lawsuit. Molly Desario, an attorney who graduated from law school and was admitted to the bar in 2002 and therefore had 16 years of experience in 2018 (Dkt. 55-2), charged an hourly rate of $575.

125.    In *3M Co. v. Phx. Auto. Refinishing Co.*, No. CV 17-00649-RSWL-DTB, 2018 U.S. Dist. LEXIS 70589 at *19 (C.D. Cal. Apr. 25, 2018), the court found that the requested hourly rates for attorneys were reasonable and in line with the prevailing market rates. In that case, Michael Kahn, an attorney who had been practicing since 2002 and therefore had 16 years of experience, sought an hourly rate of $790 (*id.* at **18-19).

**Patricia Linn**

126.    As indicated in and for the reasons explained by the concurrently filed Linn Declaration, Plaintiffs' claimed Central District of California 2018 rate for Patricia Linn (who has 11 years of experience at the time this motion is filed) is $630 per hour. Ms. Linn has been my co-counsel in several citizen suits brought under the ESA and other laws. From my several years of working with her, I am well aware that Ms. Linn has a

great deal of expertise with the ESA and with all aspects of civil litigation.

### Jason Weiner, Stephanie Oxley and Naomi Melver

127.   Jason Weiner, Stephanie Oxley and Naomi Melver[7] each have 10 years of experience as of the time this motion is filed. All three of these attorneys have been my co-counsel in prior successful citizen suits. Based on my working experience with them, I am well aware that they have considerable expertise and skill in complex environmental civil litigation--as is further reflected in their concurrently filed declarations in support of Plaintiffs' fee motion. In conjunction with Mr. Weiner, Ms. Oxley and Ms. Melver, I have set their hourly rates at $600 per hour as appropriate 2018 rates to claim in the Central District of California for attorneys of their skill, years of experience, and reputation for environmental law expertise. This rate is commensurate if not considerably lower than rates found reasonable in Central District of California attorneys fee award decisions for attorneys with their level of experience working on cases involving complex civil litigation. In setting this hourly rate, I and my co-counsel have reviewed market data and recent attorney fee awards in cases involving a wide variety of complex civil litigation in the U.S. District Court for the Central District of California, which are described in detail below. A $600 per hour rate is substantially less than the rates awarded to several lawyers with comparable experience in recent cases and is close to the average of such awarded rates. Accordingly, in my opinion, this is a reasonable market-based 2018 rate for their work in this case.

128.   Specifically, to determine this 2018 rate, I and my co-counsel surveyed numerous cases decided in the U.S. District Court for the Central District of California between 2014 and 2018. To calculate the average fee award for an attorney with 10 years of experience, we collected data from these cases showing hourly rates that were awarded

---

[7] Although Ms. Melver passed the California Bar in 2007 and would otherwise have accumulated eleven years of practice, we are subtracting a year to account for the gap in her practice from February 2011 to May 2012, as noted in her declaration.

or found to be reasonable for attorneys with a range of 8 to 12 years of experience. The following chart shows the data points relied on to reach this average, and the cases are discussed in the following paragraphs. Averaging the hourly rates together results in an average of $602 per hour for an attorney with comparable years of experience to Mr. Weiner, Ms. Oxley, and Ms. Melver, which rounds to an hourly rate of about $600 per hour.

| Year Attorney | Hourly Rate | Case Name |
|---|---|---|
| 8 | $550 | *Freedom from Religion Foundation, Inc., et al., v. Chino Valley Unified School District Board of Education, et al.*, Case No. 14-2336-JGB (DTBx) (Dkt. 101) |
| 8 | $475 | *Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV 16-01133 JGB (KKx), 2018 U.S. Dist. LEXIS 100835 (C.D. Cal. June 14, 2018) |
| 8 | $525 | *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015) |
| 8 | $495 | *Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*, No. 2:16-cv-01001-CAS (AFMx), 2017 U.S. Dist. LEXIS 10456 (C.D. Cal. Jan. 23, 2017) |
| 9 | $730 | *Nozzi v. Hous. Auth.*, No. CV 07-380 PA (FFMx), 2018 U.S. Dist. LEXIS 26049 (C.D. Cal. Feb. 15, 2018) |
| 9 | $690 | *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015) |
| 10 | $460 | *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016) |
| 10 | $565 | *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016) |
| 10 | $545 | *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016) |
| 10 | $670 | *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015) |
| 10 | $600 | *Rodriguez v. County of Los Angeles*, C.D. Cal. No. 2:10-cv-06342-CBM-AJW, Order Granting Plaintiffs' Motion for Attorneys' Fees, filed December 29, 2014 (Dkt. 720) |
| 11 | $635 | *Toyo Tire & Rubber Co. v. H.K. Tri-Ace Tire Co.*, No. SACV |

| | | |
|---|---|---|
| | | 14-00054-CJC(JPRx), 2018 U.S. Dist. LEXIS 20668 at *10 (C.D. Cal. Jan. 24, 2018) |
| 11 | $690 | *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015) |
| 11 | $700 | *ScripsAmerica, Inc. v. Ironridge Global LLC et al*, Case No. CV 14-03962-SJO (AGRx) (C.D. Cal.), Order Granting Defendant Ironridge Global LLC, John Kirkland, Brendan O'Neill's Motion for Attorney's Fees, filed January 12, 2016 (Dkt. No. 50) |
| 11 | $570 | *Sugarfina, Inc. v. Sweitzer Ltd. Liab. Co.*, No. 2:17-CV-07950-ODW(JCx), 2018 U.S. Dist. LEXIS 137457 (C.D. Cal. July 30, 2018) |
| 12 | $710 | *Pac. Hosp. Grp. Ventures v. Newcrestimage Holdings, LLC*, No. 8:17-cv-01353-JLS-JDE, 2017 U.S. Dist. LEXIS 159365 (C.D. Cal. Sep. 27, 2017) |
| 12 | $695 | *Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV 16-01133 JGB (KKx), 2018 U.S. Dist. LEXIS 100835 (C.D. Cal. June 14, 2018) |
| 12 | $500 | *Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV 16-01133 JGB (KKx), 2018 U.S. Dist. LEXIS 100835 (C.D. Cal. June 14, 2018) |
| 12 | $640 | *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015) |

129.   In *Nozzi v. Hous. Auth.*, No. CV 07-380 PA (FFMx), 2018 U.S. Dist. LEXIS 26049 at **20-21 (C.D. Cal. Feb. 15, 2018), the court considered the total lodestar and approved the requested fee award. In that case, attorney Paul Hughes charged an hourly rate of $730. Paul Hughes charged an hourly rate of $730. According Barrett Litt's declaration (Dkt. 323, ¶ 10), Mr. Hughes graduated from law school in 2008 and therefore had 9 years of experience in 2017.

130.   In *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015), the court found that defendants' requested hourly rates were "reasonable" and "comparable to prevailing market rates for attorneys of similar experience, skill, and reputation in similarly complex litigation." *Id.* at **61-62. Jennifer Golinveaux is an attorney with 12 years of experience who requested hourly rates ranging from $610 per hour in 2011, and $640 per hour for work performed

in 2012 (Dkt. 644-1, ¶ 39). Joseph Belichick requested hourly rates ranging from $660 in 2013 to $690 in 2014, when he had 10-11 years of experience (Dkt. 644-1, ¶ 21). Liwen Mah, an attorney with 9 years of experience, requested hourly rates ranging from $660 in 2013 to $690 in 2014 (Dkt. 644-1, ¶ 23). Todd Gregorian requested a rate of $670 per hour for work performed in 2014, when he had 10 years of experience (Dkt. 644-1, ¶ 22). Kevin Joon Oh, who graduated law school in 2006 and had 8 years of experience in 2014, requested rates ranging from $470 in 2011 to $525 in 2012 (Dkt. 644-1, ¶ 40).

131.   In *Rodriguez v. County of Los Angeles*, C.D. Cal. No. 2:10-cv-06342-CBM-AJW, Order Granting Plaintiffs' Motion for Attorneys' Fees, filed December 29, 2014 (Dkt. 720, pp. 14, 16), the court found requested rates reasonable including $600 per hour for Kevin LaHue, an attorney who had 10 years of experience in 2014.

132.   In *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016), the court found that the requested hourly rates were "reasonable and consistent with those prevailing in the community for similar services." *Id.* at *3. In that case, the plaintiffs requested an hourly rate of $460 for Nicole Diane Sugnet (Dkt. 159-2), an attorney who graduated law school in 2006 according to her LinkedIn profile, and therefore had 10 years of experience in 2016 (*see* https://www.linkedin.com/in/nsugnet/). The plaintiffs also requested an hourly rate of $565 for Dena C. Sharp (Dkt. 159-2), an attorney who graduated law school in 2006 according to her firm's website and therefore had 10 years of experience in 2016 (*see* https://www.norcalfirelawyers.com/attorney/connolly/). Plaintiffs also requested $545 for Matthew B. George, an attorney who earned his JD in 2005 and has been practicing law since 2006, according to his LinkedIn profile (*see* https://www.linkedin.com/in/matthew-george-79b7b630/).

133.   In *Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*, No. 2:16-cv-01001-CAS (AFMx), 2017 U.S. Dist. LEXIS 10456 at *3 (C.D. Cal. Jan. 23, 2017), the court found that each of the hourly rates requested were "reasonable in light of their respective levels of experience and the local legal market." Lorenzo Gasparetti states in his declaration

(Dkt. 114, p. 2) that Monica Ortiz had 8 years of experience in 2016, and charged a discounted hourly rate of $495 per hour for this matter.

134.    In *Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV 16-01133 JGB (KKx), 2018 U.S. Dist. LEXIS 100835 (C.D. Cal. June 14, 2018), the court awarded the requested attorney fees, except for an award to one firm for whom it asked for additional information. Aparajit Bhowmik, an attorney who graduated from law school and was admitted to the bar in 2006 and therefore had 12 years of experience in 2018 (Dkt. 55-2), charged an hourly rate of $695. Piya Mukherjee, who graduated from law school and was admitted to the bar in 2010 and therefore had 8 years of experience in 2018 (Dkt. 55-2), charged an hourly rate of $475. In a July 19, 2018 minute order in *Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV 16-01133 JGB (KKx), (Dkt. 67), the court awarded the remainder of the requested attorney fees. Aarin Zeif charged an hourly rate of $500 according to Michael Gould's declaration (Dkt. 57-1, ¶ 10). Ms. Zeif is an attorney who graduated from law school and was admitted to the bar in 2006 according to her firm's website, and therefore had 12 years of experience in 2018 (*see* https://www.wageandhourlaw.com/team/aarin-zeif/).

135.    In *Toyo Tire & Rubber Co. v. H.K. Tri-Ace Tire Co.*, No. SACV 14-00054-CJC(JPRx), 2018 U.S. Dist. LEXIS 20668 at *10 (C.D. Cal. Jan. 24, 2018), the court found that the requested hourly rates were reasonable. Jean-Paul Ciardullo requested rates of $510-$635 per hour (*id.* at *9). Mr. Ciardullo is an attorney who graduated from law school in 2006 (Dkt. 35-1, ¶ 21) and who therefore had 11 years of experience in 2017.

136.    In a Minute Order filed on March 31, 2016 in *Freedom from Religion Foundation, Inc., et al., v. Chino Valley Unified School District Board of Education, et al.*, Case No. 14-2336-JGB (DTBx) (Dkt. 101), the court found that plaintiffs' requested hourly rates were reasonable. In that case, plaintiffs sought an hourly rate of $550 for Rebecca Markert, who was admitted to the California bar in 2008 and therefore had 8 years of experience in 2016 (Dkt. 101, pp. 7-8).

137.    In *Pac. Hosp. Grp. Ventures v. Newcrestimage Holdings, LLC*, No. 8:17-cv-

01353-JLS-JDE, 2017 U.S. Dist. LEXIS 159365 at **11-12 (C.D. Cal. Sep. 27, 2017), the court granted the requested attorney fee amount. Laura Fried-Studlo was granted an hourly rate of $710 (*id.* at *11). According to her firm's website, Ms. Fried-Studlo graduated from law school in 2005 and therefore had 12 years of experience in 2017 (*see* https://www.pillsburylaw.com/en/lawyers/laura-freid-studlo.html).

138.   In *Sugarfina, Inc. v. Sweitzer Ltd. Liab. Co*., No. 2:17-CV-07950-ODW(JCx), 2018 U.S. Dist. LEXIS 137457 at **11-12 (C.D. Cal. July 30, 2018), the court found that the requested hourly rates were reasonable. André De La Cruz, an attorney with 11 years of experience, charged an hourly rate of $570 (Dkt. 34, ¶ 19).

139.   In *ScripsAmerica, Inc. v. Ironridge Global LLC et al*, Case No. CV 14-03962-SJO (AGRx) (C.D. Cal.), Order Granting Defendant Ironridge Global LLC, John Kirkland, Brendan O'Neill's Motion for Attorney's Fees, filed January 12, 2016 at pp. 6-7 (Dkt. No. 50), the court reduced the hourly rates requested by defendants to rates aligned with the prevailing market rates. The court assigned a rate of $700 per hour for Shannon Mader (*id.* at p. 7), an attorney who graduated from law school and was admitted to the bar in 2004 and therefore had 11 years of experience in 2015 (Dkt. 41-1, ¶ 11).

### Danielle Rathje

140.   Danielle Rathje has four years of experience as of the time this motion is filed. Her substantial environmental law/citizen suit background for an attorney with four years experience is reflected in her concurrently filed declaration in support of Plaintiffs' fee motion. Ms. Rathje has been my co-counsel in other citizen suits in addition to this case. I am well familiar with her considerable skill for a more recently admitted attorney. In conjunction with her, I have set her hourly rate at $425 per hour as an appropriate 2018 rate to claim in the Central District of California for an attorney of her level of experience. This rate is commensurate if not considerably lower than rates found reasonable in Central District of California attorneys fee award decisions for attorneys with her level of experience working on cases involving complex civil litigation. In setting this hourly rate, Ms. Rathje and I have reviewed market data and recent attorney

fee awards in cases involving a wide variety of complex civil litigation in the U.S. District Court for the Central District of California, which are described in detail below. A $425 per hour rate is substantially less than the rates awarded to several lawyers with comparable experience, even in cases decided several years ago and is well within or even below the average of such awarded rates. Accordingly, in my opinion, this is a reasonable market-based 2018 rate for her work in this case.

141.    In *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015), the court awarded Annasara Purcell, a three-year attorney, $505 per hour as a 2014 rate and awarded Shane Witnov, a four year attorney, variable rates ranging from $350 to $410 per hour.

142.    In *State Compensation Insurance Fund v. Khan, et al*, No. SACV 12-01072 CJC(JCGx) (C.D. Cal. July 6, 2016) (Dkt. No. 408), the court awarded $560 per hour to Joseph Doman, an attorney with 4 years of experience.

143.    In *ScripsAmerica, Inc. Ironridge Global LLC, et al*, No. CV 14-03962-SJO (AGRx) (C.D. Cal. January 12, 2016) (Dkt. No. 50), the court awarded $450 per hour to Chelsea Norrell, an attorney with four years of experience.

144.    In *Doe v. United Healthcare Insurance Co., et al.*, No. 13-0864 DOC (JPRx), 2014 U.S. Dist. LEXIS 194727 (C.D. Cal. Oct. 15, 2014), Judge Carter awarded $425 per hour to attorney Jerry Flanagan, a lawyer with four years of experience and $400 per hour to Lawrence Bond, also an attorney with four years of experience

145.    I further note that the Pearl Declaration referred to in footnote 5 above (Exhibit 8 to my declaration), recites market data for rates charged by law firms in the Los Angeles metropolitan area that further supports the reasonableness of a $425 per hour rate in the Central District of California in complex civil litigation for an attorney with four years of experience. For example, the Pearl Declaration indicates that Los Angeles based law firm Gibson Dunn & Crutcher charged $575 per hour for an attorney with three years of experience as a 2015 rate, Arnold Porter charged $640 per hour for an attorney with four years of experience as a 2015 rate, Cooley LLP charged $445

Christopher Sproul per hour for an attorney with three years of experience as a 2014 rate. Some of the rates recited in the Pearl Declaration are lower than these rates (for example, Hadsell, Stormer, Richardson & Renick charged $375 per hour for an attorney with four years of experience as a 2015 rate). Overall, however, the extensive market data recited in the Pearl Declaration well supports that $425 per hour for an attorney with four years of experience as a 2018 rate is well within and likely substantially below the average market rate in the Los Angeles metropolitan area.

### Geneva Thompson, Heather Kryczka, and Molly Coyne

146.   Geneva Thompson, Heather Kryczka, and Molly Coyne have two years of experience as of the time this motion is filed. Their substantial environmental law/citizen suit background for attorneys of their recent Bar admission status is reflected in their concurrently filed declaration in support of Plaintiffs' fee motion. Ms. Kryczka and Ms. Coyne have been my co-counsel in several other citizen suits in addition to this case. I am well familiar with their considerable skill for more recently admitted attorneys. In conjunction with my co-counsel, I have set the hourly rates of Geneva Thompson, Heather Kryczka, and Molly Coyne at $385 per hour as an appropriate 2018 rate to claim in the Central District of California for attorneys of their level of experience. This rate is commensurate if not considerably lower than rates found reasonable in Central District of California attorneys fee award decisions for attorneys with their level of experience working on cases involving complex civil litigation. In setting this hourly rate, I and my co-counsel have reviewed market data and recent attorney fee awards in cases involving a wide variety of complex civil litigation in the U.S. District Court for the Central District of California, which are described in detail below. A $385 per hour rate is substantially less than the rates awarded to several lawyers with comparable experience in recent cases and is close to the average of such awarded rates. Accordingly, in my opinion, this is a reasonable market-based 2018 rate for their work in this case.

147.   In *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015), the court found that defendants'

requested hourly rates were "reasonable" and "comparable to prevailing market rates for attorneys of similar experience, skill, and reputation in similarly complex litigation." *Id.* at **61-62. Shannon Kumagai requested an hourly rate of $370 for work performed in 2014, when Shannon Kumagai had 1 year of experience (Dkt. 644-1, ¶ 29). Earl Mah requested $360 per hour for work performed in 2014 when he had 1 year of experience (Dkt. 644-1, ¶ 30). Armen Nercessian requested $450 per hour for work performed in 2014 when Armen had 2 years of experience (Dkt. 644-1, ¶ 28). Annasara Purcell requested $505 per hour for work performed in 2014 when she had 3 years of experience (Dkt. 644-1, ¶ 27). In *Amusement Art, LLC v. Life Is Beautiful, LLC*, No. 2-14-cv-08290-DDP-JPR, 2017 U.S. Dist. LEXIS 79135 (C.D. Cal. May 23, 2017), the court found that the defendant's requested hourly rates were "reasonable" and "in line with the prevailing rates." *Id.* at **17-18. Defendants' counsel charged hourly rates between $450 to $865. *Id.* at *17. The exhibits setting forth the billing rates of each attorney were submitted under seal. However, the Boyd Declaration (Dkt. 181) states that the least experienced attorney was Samuel T. Boyd, an attorney who received his J.D. in 2013, who was admitted to the bar in 2014 according to the California Bar Association website, and had been practicing for 0-3 years over the course of the litigation, from 2014-2017. Thus, the least experienced attorney in the case requested an hourly rate of $450 or higher.

148.   In *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016), the court found that the requested hourly rates were "reasonable and consistent with those prevailing in the community for similar services." *Id.* at *3. In that case, the plaintiffs requested hourly rates of $350 for Jesse D. Gossett and Valerie H. Li (Dkt. 159-2), attorneys who graduated law school in 2014 according to their LinkedIn profiles, and therefore had 2 years of experience in 2016 (*see* https://www.linkedin.com/in/jessegossett/; https://www.linkedin.com/in/valeriehli/). The plaintiffs also requested an hourly rate of $350 for Chris K. Hikida (Dkt. 159-2), an attorney who graduated law school in 2013 and therefore had 3 years of experience in 2016 (*see*

https://www.linkedin.com/in/christopher-hikida-787361a/). The plaintiffs also requested hourly rates of $395 for Matthew J. Preusch, Christopher Springer, and Melissa Gardner (Dkt. 159-2). Mr. Preusch graduated law school in 2013 (Dkt. 159, ¶ 93), and Mr. Springer and Ms. Gardner were both admitted to the bar in 2013 according to the California Bar Association website, and therefore each of these attorneys had 3 years of experience in 2016. In *Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*, No. 2:16-cv-01001-CAS (AFMx), 2017 U.S. Dist. LEXIS 10456 at *3 (C.D. Cal. Jan. 23, 2017), the court found that each of the hourly rates requested were "reasonable in light of their respective levels of experience and the local legal market." Lorenzo Gasparetti states in his declaration (Dkt. 114, p. 2) that Mikiko Thelwell had 2 years of experience in 2016, and charged a discounted hourly rate of $330 per hour for the matter.

149.   In *Doe v. United Healthcare Ins. Co.*, No. SACV 13-0864 DOC(JPRx), 2014 U.S. Dist. LEXIS 194727 at **7-8 (C.D. Cal. Oct. 15, 2014), this Court found that the requested hourly rates were reasonable. In that case, Scott Garrett charged an hourly rate of $300. *Id.* at *12. Mr. Garrett graduated law school and passed the bar examination in 2012, and therefore had 2 years of experience in 2014 (Dkt. 44-2, p. 16). Kristin Libby charged an hourly rate of $375. *Doe*, 2014 U.S. Dist. LEXIS 194727, at *12. According to her firm's website, Ms. Libby graduated law school in 2011 and passed the bar examination in 2011 and therefore had 3 years of experience in 2014 (*see* http://www.whatleykallas.com/index.php/attorneys/115-kristin-b-libby).

## VI.   Hourly Rate for Paralegal Work

150.   I and my co-counsel have set the paralegal rates charged for all Plaintiffs' paralegal work as follows: $250 per hour for any paralegal work done by any staff with 20 or more years of legal experience (myself, Dawn Edberg), $230 per hour for any staff with ten or more years but less than 20 years of legal experience (Jodene Isaacs, Patricia Linn, Jason Weiner, Amy Mar), and $200 per hour for any staff with less than 10 years of experience (Geneva Thompson, Heather Kryczka, and Molly Coyne). In conjunction with my co-counsel, I have set these hourly rates as appropriate 2018 rates to claim in the

Central District of California for paralegals with these levels of experience. These rates are well within rates found reasonable in Central District of California attorneys fee award decisions for paralegals with these levels of experience working on cases involving complex civil litigation. In setting this hourly rate, I and my co-counsel have reviewed market data and recent attorney fee awards in cases involving complex civil litigation in the U.S. District Court for the Central District of California, which are described in detail below.

151.    In *Rodriguez v. County of Los Angeles*, C.D. Cal. No. 2:10-cv-06342-CBM-AJW, Order Granting Plaintiffs' Motion for Attorneys' Fees, filed December 29, 2014 (Dkt. 720, pp. 14, 16), the court found $295 per hour reasonable for Julia White, a senior paralegal. The court further found $175 per hour a reasonable rate for more junior paralegals and legal assistants.

152.    In *Nozzi v. Hous. Auth.*, No. CV 07-380 PA (FFMx), 2018 U.S. Dist. LEXIS 26049 at **20-21 (C.D. Cal. Feb. 15, 2018), the court considered the total lodestar and approved the requested fee award in a class action lawsuit. Julia White, a senior paralegal, charged $335 per hour (Dkt. 323, ¶ 10). Jackie Chidiac, who had been a paralegal since 2002, charged $200 per hour (Dkt. 324, ¶ 8). Miguel Villafuerte, a junior paralegal, charged $150 per hour (Dkt. 323, ¶ 10).

153.    In *Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*, No. 2:16-cv-01001-CAS (AFMx), 2017 U.S. Dist. LEXIS 10456 at *3 (C.D. Cal. Jan. 23, 2017), the court found that each of the hourly rates requested were "reasonable in light of their respective levels of experience and the local legal market." Lorenzo Gasparetti states in his declaration (Dkt. 114, p. 3) that Lizeth Sanchez is a para-professional, and charged a discounted hourly rate of $250 per hour for the matter.

154.    In *Amusement Art, LLC v. Life Is Beautiful, LLC*, No. 2-14-cv-08290-DDP-JPR, 2017 U.S. Dist. LEXIS 79135 (C.D. Cal. May 23, 2017), the court found that the defendant's requested hourly rates were "reasonable" and "in line with the prevailing

rates." *Id.* at **17-18. Defendants' paralegals and support staff charged hourly rates between $215 and $380 per hour. *Id.*

155.   In *3M Co. v. Phx. Auto. Refinishing Co.*, No. CV 17-00649-RSWL-DTB, 2018 U.S. Dist. LEXIS 70589 at *19 (C.D. Cal. Apr. 25, 2018), the court found that the requested hourly rates for attorneys were reasonable and in line with the prevailing market rates. In that case, Sakura Toyama, a senior paralegal with over thirteen years of experience, sought an hourly rate of $260 (*id.* at *19).

156.   In *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015), the court found that defendants' requested hourly rates were "reasonable" and "comparable to prevailing market rates for attorneys of similar experience, skill, and reputation in similarly complex litigation." *Id.* at **61-62. Sarah Victoria, a paralegal with 5 years of experience, requested an hourly rate of $240 for work performed in 2014 (Dkt. 644-1, ¶ 36). Lisa Magee, a paralegal with 15 years of experience, requested an hourly rate of $275 for work performed in 2013 (Dkt. 644-1, ¶ 37). Robert Winant, a paralegal with over 23 years of experience, charged an hourly rate of $345 in 2014 (Dkt. 644-1, ¶ 35). Carol McCoy, a paralegal with 16 years of experience, charged an hourly rate of $285 in 2013 and $295 in 2014 (Dkt. 644-1, ¶ 34).

157.   In *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (SHx), 2016 U.S. Dist. LEXIS 183837 (C.D. Cal. Apr. 12, 2016), the court found that the requested hourly rates were "reasonable and consistent with those prevailing in the community for similar services." *Id.* at *3. In that case, the plaintiffs requested hourly rate of $215 for Jennifer A. Dallape (Dkt. 159-2), a paralegal who received her paralegal certificate in 2014 according to her LinkedIn profile, and therefore had 2 years of experience as a paralegal in 2016 (*see* https://www.linkedin.com/in/jenniferdallapemorgan/). Cate R. Brewer and Sara J. Stevens, paralegals since 2003 according to their LinkedIn profiles, also requested $215 per hour (see https://www.linkedin.com/in/cate-brewer-4b9a81a/;

https://www.linkedin.com/in/sarajstevens/). Paralegal Miriam Gordon charged $270 per hour (Dkt. 159-2).

158.   In *ScripsAmerica, Inc. v. Ironridge Global LLC, et al*, Case No. CV 14-03962-SJO (AGRx) (C.D. Cal.), Order Granting Defendant Ironridge Global LLC, John Kirkland, Brendan O'Neill's Motion for Attorney's Fees, filed January 12, 2016 at pp. 6-7 (Dkt. No. 50), the court assigned a rate of $350 per hour for paralegals Lolita C. Gadverry and Suzanne Wilson (*id.* at 7).

## VIII.   Plaintiffs' Costs

159.   Plaintiffs have incurred expenses in bringing this action that are of the type ordinarily and necessarily incurred in litigation and typically billed of clients by their counsel: the Court's filing fee to initiate this case, expert witness invoices, court reporter fees for depositions and trial transcripts, the costs of paper courtesy copies of pleadings and exhibits for the Court, postage or other delivery charges to send documents to the Court, the Defendant, or third-party subpoena targets; electronic legal research using LEXIS-NEXIS, PACER, or LEXIS COURTLINK, and travel expenses to attend conferences with opposing counsel, settlement conferences, depositions, court hearings, and trial.

160.   In exercise of billing judgment, Plaintiffs have cut any expenses associated with pursuing Claims 2, 3, and 4 (alleging take of various bird species), such as fees charged by Plaintiffs' retained Flycatcher expert Mary Whitfield, the costs of sending documents to Ms. Whitfield for her review, the cost of serving subpoenas on third parties who only possessed information relevant to the Flycatcher claim, the cost of a drone flyover over the Santa Clara River to gather evidence pertinent to the Flycatcher claim, deposition transcript costs for depositions of witnesses who testified exclusively on Flycatcher related issues, and court courtesy copies of filings associated with dismissal of Claims 2 and 3. Jason Weiner and I also carefully reviewed all expenses associated with Plaintiffs' retention of expert Chris Hammersmark, who provided declaration and trial testimony on both Steelhead and Flycatcher issues, to properly allocate these expenses

and cut any expenses associated with his Flycatcher work. As further explained in the concurrently filed Declaration of Chris Hammersmark in Support of Plaintiffs' Motion for Attorneys Fees and Costs and the Weiner Declaration, the majority of Dr. Hammersmark's time that he billed Plaintiffs for was spent working on Steelhead related issues. We reduced the $132,862.50 that Dr. Hammersmark's firm, cbec, inc., billed Plaintiffs for his expert work to $101,575.35 to reflect that $31,287.15 of his billing should be allocated to Flycatcher opinion development. We also cut 2% of the cost of the deposition transcript for Chris Hammersmark (which reflects that 2% of the transcript addressed Flycatcher content, thus making 2% an appropriate pro rata reduction of the cost of that transcript). After these billing judgment reductions, Plaintiffs had $290,616.26 in case costs incurred through December 21, 2018 (additional costs required to complete briefing on this Motion for Attorneys Fees, including Plaintiffs' reply briefing, will be documented in subsequent declarations submitted on reply). I have attached as Exhibit 4 a spreadsheet which itemizes all Plaintiffs' costs. I have further attached as Exhibit 5 a separate spreadsheet which accurately itemizes the $4,547.54 in case costs that Environmental Advocates directly incurred itself (including expenses such as mileage for travel or in-house document printing) that the clients have not reimbursed Environmental Advocates for. Receipts for these Environmental Advocates' incurred expenses are attached as Exhibit 6. Spreadsheets which itemize the other case expenses incurred by staff for Wishtoyo and the Center for Biological Diversity or expenses that were billed directly to Wishtoyo and the Center for Biological Diversity rather than through Environmental Advocates are attached as exhibits to the concurrently filed Weiner Declaration and the Buse Declaration. Receipts for the other case expenses incurred by staff for Wishtoyo and the Center for Biological Diversity or expenses that were billed directly to Wishtoyo and the Center for Biological Diversity rather than through Environmental Advocates are attached as exhibits to the Weiner Declaration and the Buse Declaration.

### IX.        Miscellaneous

161.   I directed my co-counsel Molly Coyne to research whether there have been any attorney fee awards in the Central District of California within the last ten years in citizen suits brought under the ESA—or any other federal environmental laws such as the CWA, CAA, RCRA, or the SDWA. Her research indicates that there have been no such awards in any reported cases.

162.   In my many years of practice, as noted, I have brought several attorney fee petitions and been awarded fees in environmental law cases, but none of these have been in the Central District of California. Additionally, none of these cases went to trial and all involved substantially fewer hours than this case; trials are exceedingly rare in federal environmental law cases. In my 32 years of practice I have had only three trials—and two of those were in the same case as a second trial was ordered on Ninth Circuit remand. The other two trials I have done did not result in an attorneys fees award as my client the United States Environmental Protection Agency was the prevailing plaintiff and thus not entitled to attorneys fees. Furthermore, none of my many colleagues at EPA ever took a judicial case to trial during the 15 years I worked at EPA and similarly all my public interest group colleagues have also not taken their cases to trial, instead settling or resolving on motions all their cases before trial. Accordingly, I believe there are no directly comparable Central District of California cases, or cases in any federal court in California, awarding attorneys fees under the ESA or any other federal environmental law.

163.   The closest directly analogous fee award case of which I am aware is the 2011 Eastern District of California decision *SYRCL v. NMFS, et al.* awarding me and my colleagues $1,875,951.20 in a case finding federal agency violation of ESA section 7 (I was also lead counsel in that case). *SYRCL*, 2012 U.S. Dist. LEXIS 42287, at *20. However, there was no trial and much more limited discovery in *SYRCL* and thus substantially fewer hours incurred. Even still, if the *SYRCL* award was adjusted to reflect my 3% general inflation in the legal market rate discussed above, the *SYRCL* award would be the equivalent of $2,313,713.42 in 2018. Moreover, if the SYRCL rate were

adjusted to reflect the approximate 53.64% increase in my average hourly billing rate awarded in *SYRCL*, $545,[8] to the $840 hourly rate sought here in the Central District in 2018, the SYRCL award would be $2,882,136.39.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed in San Francisco, California on January 8, 2019.

Christopher A. Sproul

Christopher Sproul
Attorney for Plaintiffs

---

[8] The United States government was the defendant in *SYRCL* and uniquely entitled under controlling Supreme Court precedent to being only required to pay historic rates to prevailing parties, rather than counsel's currently prevailing rates. *Library of Congress v. Shaw*, 478 U.S. 310 (1986) (federal government's limited sovereign immunity waiver precludes prevailing parties from added compensation for delay in payment, such as award of current rather than historic rates). My hourly rates in *SYRCL* ranged from $504 to $585, *i.e.*, an average of $545.