ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
Mark T. Palin (State Bar No. 135398)
 MPalin@aalrr.com
David D. Boyer (State Bar No. 144697)
 DBoyer@aalrr.com
Brian M. Wheeler (State Bar No. 266661)
 BWheeler@aalrr.com
Shawn M. Ogle (State Bar No. 266259)
 SOgle@aalrr.com
12800 Center Court Drive South, Suite 300
Cerritos, California 90703-9364
Telephone: (562) 653-3200
Fax: (562) 653-3333

SOMACH SIMMONS & DUNN, PC
Paul S. Simmons (State Bar No. 127920)
 psimmons@somachlaw.com
Jared S. Mueller (State Bar No. 257659)
 mueller@somachlaw.com
500 Capitol Mall, Suite 1000
Sacramento, California 95814
Telephone: (916) 446-7979
Fax: (916) 446-8199

Attorneys for Defendant
UNITED WATER CONSERVATION DISTRICT

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| WISHTOYO FOUNDATION, CENTER FOR BIOLOGICAL DIVERSITY, and VENTURA COASTKEEPER, a program of WISHTOYO FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED WATER CONSERVATION DISTRICT,<br><br>Defendant. | Case No.    2:16-cv-03869-DOC-PLA<br><br>**NOTICE OF APPEAL AND REPRESENTATION STATEMENT** |

1       NOTICE IS HEREBY GIVEN that United Water Conservation District hereby

2  appeals to the United States Court of Appeals for the Ninth Circuit from the following

3  orders: (1) the Amended Judgment and Permanent Injunction, dated December 1, 2018;

4  and (2) the Order Granting In Part Plaintiff's Motion for Attorneys' Fees and Costs,

5  dated March 5, 2019.  A true and correct copy of the Amended Judgment and Permanent

6  Injunction is attached hereto as Exhibit A.   A true and correct copy of the Order

7  Granting In Part Plaintiff's Motion for Attorneys' Fees and Costs is attached hereto as

8  Exhibit B.  A true and correct copy of the Order for Extension of Deadline for Motion

9  for Attorneys' Fees and Costs and Notice of Appeal is attached hereto as Exhibit C.

10

11  Dated:  April 3, 2019           ATKINSON, ANDELSON, LOYA, RUUD &
                                        ROMO

12

13                              By:  */s/ Shawn M. Ogle*

14                                Shawn M. Ogle
                                Attorneys for Defendant

15                                UNITED WATER CONSERVATION
                                DISTRICT

16

17

18

19

20

21

22

23

24

25

26

27

28

## REPRESENTATION STATEMENT

Under Fed. R. App. P. 12(b) and Ninth Circuit Rule 3-2(b), counsel signing notice of appeal assert that they represent Defendant United Water Conservation District ("United"), in this matter, and no other parties.  United is the only appellant in this appeal.  Below is a roster of the parties to this action that identifies their counsel by name, firm, address, telephone number and email address.

<u>Attorneys for Defendant and Appellant United Water Conservation District:</u>

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
Mark T. Palin (State Bar No. 135398)
    MPalin@aalrr.com
David D. Boyer (State Bar No. 144697)
    DBoyer@aalrr.com
Brian M. Wheeler (State Bar No. 266661)
    BWheeler@aalrr.com
Shawn M. Ogle (State Bar No. 266259)
    SOgle@aalrr.com
12800 Center Court Drive South, Suite 300
Cerritos, California 90703-9364
Telephone:  (562) 653-3200
Fax:  (562) 653-3333

SOMACH SIMMONS & DUNN, PC
Paul S. Simmons (State Bar No. 127920)
    psimmons@somachlaw.com
Jared S. Mueller (State Bar No. 257659)
    mueller@somachlaw.com
500 Capitol Mall, Suite 1000
Sacramento, California 95814
Telephone:  (916) 446-7979
Fax:  (916) 446-8199

<u>Attorneys for Plaintiffs and Respondents Wishtoyo Foundation, Center for Biological Diversity, and Ventura Coastkeeper, a program of Wishtoyo Foundation:</u>

Christopher A. Sproul (Cal. Bar No. 126398)
Molly Coyne (Cal. Bar No. 312914)
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: mcoyne@enviroadvocates.com

NOTICE OF APPEAL AND REPRESENTATION STATEMENT

006299.00029
23255701.1

Jason Weiner (Cal. Bar No. 259264)
Wishtoyo Foundation and its Ventura Coastkeeper Program
9452 Telephone Road #432
Ventura, CA 93004
Telephone: 805-823-3301; Facsimile: 805-258-5107
Email: jweiner.venturacoastkeeper@wishtoyo.org
Email: gthompson@wishtoyo.org

John Buse (Cal. Bar No. 163156)
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: (510) 844-7125
Fax: (510) 844-7150
Email: jbuse@biologicaldiversity.org

Patricia Weisselberg (Cal. Bar. No. 253015)
Law Office of Patricia Weisselberg
115 Oakdale Avenue
Mill Valley, CA 94941
Telephone: (415) 388-2303
Email: pweisselberg@wans.net

Dated: April 3, 2019

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: /s/ Shawn M. Ogle
    Shawn M. Ogle
    Attorneys for Defendant
    UNITED WATER CONSERVATION DISTRICT

006299.00029
23255701.1

NOTICE OF APPEAL AND REPRESENTATION STATEMENT

NOTE: CHANGES HAVE BEEN
MADE TO THIS DOCUMENT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| WISHTOYO FOUNDATION ET AL., | Case No.: CV 16-3869-DOC (PLAx) |
| Plaintiffs, | |
| vs. | AMENDED JUDGMENT AND PERMANENT INJUNCTION |
| UNITED WATER CONSERVATION DISTRICT, | |
| Defendant. | |

1     **ORDER ENTERING FINAL JUDGMENT AND PERMANENT INJUNCTION**[1]

2        Plaintiffs Wishtoyo Foundation, Ventura Coastkeeper, and Center for Biological

3 Diversity ("Plaintiffs") filed a complaint against Defendant United Water Conservation

4 District ("United" or "Defendant") on June 2, 2016. The Court conducted a bench trial on

5 December 11–15, 18–20, 2017, and January 3–5, 2018. The Court filed an order on

6 September 23, 2018 (Dkt. 209), including findings of fact and conclusions of law holding

7 that Plaintiffs are entitled to declaratory and injunctive relief on their claim for take of

8 Southern California Steelhead, but not on their claim for take of Southwestern Willow

9 Flycatcher. Pursuant to that order, this is a final judgment resolving all claims pursuant to

10 Fed. R. Civ. P. 58.

11                           **I.**

12 **IT IS ORDERED, ADJUDGED, AND DECREED** that:

13        Plaintiffs are entitled to a declaratory judgment that Defendant United's operation

14 and maintenance of Vern Freeman Dam ("VFD"), including its operation and maintenance

15 of the fish ladder at the VFD, and United's diversion of water from the VFD, constituted

16 unauthorized "take" of the Distinct Population Segment of Southern California Steelhead

17 ("Steelhead") in violation of section 9 of the Endangered Species Act ("ESA"), 16 U.S.C.

18 § 1538.

19                          **II.**

20 **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that:

21        Plaintiffs are not entitled to a declaratory judgment that United's actions constitute

22 unauthorized "take" of Southwestern Willow Flycatcher in violation of ESA section 9.

23 Accordingly and furthermore, Plaintiffs are not entitled to injunctive relief as to the

24 Southwestern Willow Flycatcher.

25

26 _____

27 [1] Having considered Defendant's Motion to Amend Judgment (Dkt. 233) and Proposed Order (233-1), as well as Plaintiffs' Request to Grant Defendant's Motion to Amend Judgment (Dkt.

28 245), the Court enters this order. This order supersedes and amends the October, 4, 2018 Amended Judgment and Permanent Injunction (Dkt. 219), which is hereby VACATED.

2

**EXHIBIT A**

## III.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that:

United Water Conservation District is hereby permanently enjoined to undertake the following actions:

**1.  Water Diversion**

Commencing on **October 22, 2018,** United shall continue to adhere to the water diversion operating rules set forth in Reasonable and Prudent Alternative ("RPA") 2 of National Marine Fisheries Service ("NMFS")'s 2008 Biological Opinion for VFD, pursuant to NMFS's interpretation of RPA 2A such that the ramping rates apply whether or not United initiates diversion procedures at, above, or below 750 cubic feet per second ("cfs"), until such time as United secures incidental take authorization from NMFS for the maintenance and operation of VFD with respect to Steelhead, or unless the parties move for relief from those operating rules and the Court approves the motion.

For purposes of water diversion, United may continue to use the Sespe Creek Trigger. Further, for purposes of United's compliance with RPA 2, United shall continue to treat the adult Steelhead migration season as extending from January 1 to May 31 and shall treat the juvenile Steelhead migration season as extending from March 1 to May 31. Likewise, the Court declines to order Plaintiffs' requested adjustment to the required migration corridor width at the critical riffle (0.5 feet to 0.8 feet) and a revisiting of the critical riffle measurements previously done by Thomas R. Payne & Associates in 2005. If existing operational methods and metrics did not exist, the Court might be in a different position. But given the availability of an existing set of operational parameters, the Court declines to order and supervise the implementation of Plaintiffs' requested revisions of such parameters, which should be addressed in the permitting regulatory process.

**2.  Monitoring and Adaptive Management**

For purposes of monitoring compliance and effectiveness of the flow criteria used in United's operations, commencing **January 1, 2019,** United shall adhere to the directives in terms and conditions 1(a) of the incidental take statement in the NMFS 2008 Biological

**EXHIBIT A**

1 | Opinion for VFD that provides: "For the purpose of ensuring that flow criteria are met,

2 | United shall apply a noncontact method (e.g., continuous wave microwave radar,

3 | monostatic UHF Doppler radar, pulsed Doppler microwave radar, acoustic Doppler

4 | technologies, and or emerging drone based videography), or other method that is agreeable

5 | to NMFS, to continuously monitor instantaneous river discharge in the Santa Clara River

6 | where the Highway 118 bridge and the Highway 101 bridge cross the river." *See*

7 | Biological Opinion at 81.

8 | **3. Long Term Fish Passage Infrastructure**

9 | Plaintiffs' request for injunctive relief is granted in part with respect to long term

10 | fish passage infrastructure. United shall achieve 100% design, including physical

11 | modeling, of the top-two long term fish passage infrastructure alternatives: (1) the

12 | hardened ramp and (2) 400-foot notch, before it selects its preferred alternative. If

13 | Plaintiffs and United are willing to stipulate to substitute the vertical slot in place of the

14 | 400-foot notch, which has only been designed to about a 10% level, the Court is willing to

15 | consider such a stipulation. In developing its design plans and permit applications, United

16 | shall strongly consider, and shall only reject with clearly articulable reasons, the six

17 | guidelines recommended in the Declaration of NMFS biologist Anthony Spina ("Spina

18 | Decl.") (Dkt. 179-1) that accompanied the NMFS Amicus Brief ("NMFS Br.") (Dkt. 179)

19 | filed at the Court's request.

20 | By the dates provided below, United shall complete forthwith the necessary studies

21 | to evaluate all reasonable alternatives to the existing fish ladder, select a preferred

22 | alternative, and submit complete regulatory authorization requests to NMFS, the U.S. Fish

23 | and Wildlife Service ("USFWS"), the U.S. Army Corps of Engineers, the California

24 | Department of Fish and Wildlife ("CDFW"), and the California State Water Resources

25 | Control Board. United shall fully complete engineering design (including necessary

26 | modeling) on the: (1) hardened ramp; and (2) 400-foot notch. As part of its required

27 | California Environmental Quality Act ("CEQA") environmental review, United shall

28 | further analyze the other two options discussed in trial testimony: the vertical slot and a

**EXHIBIT A**

1    damless diversion in conjunction with an infiltration gallery. However, United shall not be

2    required at this stage to do in-depth modeling/engineering analysis of the vertical slot

3    option or a damless diversion option in conjunction with an infiltration gallery. Instead,

4    United shall simply include reasonable study and analysis of the vertical slot alternative

5    and a damless diversion in conjunction with an infiltration gallery alternative for purposes

6    of CEQA environmental review. Therefore:

7        a.    By **no later than January 31, 2020**, United shall complete evaluations and

8              100% designs of the following alternative Steelhead fish passage

9              infrastructures for VFD, including physical modeling and complete

10             engineering design, sufficient for United to choose a preferred alternative

11             and to meet NMFS's directions for the detail required for an adequate habitat

12             conservation plan submittal: (i) the hardened ramp and (ii) the 400-foot

13             notch;

14       b.    By **no later than January 31, 2020**, United shall complete the alternatives

15             analysis for the (i) vertical slot and a (ii) damless diversion in conjunction

16             with an infiltration gallery, sufficient for purposes of CEQA environmental

17             review;

18       c.    By the earlier of **April 31, 2020**, or **three months after** completion of the

19             evaluations and designs of the hardened ramp and 400-foot notch, United

20             shall select a preferred Steelhead fish passage infrastructure project. The

21             Steelhead passage alternative selected must meet the Steelhead passage

22             design criteria set forth by NMFS during NMFS's review and approval of the

23             alternative, including in regards to attraction flow, velocities and turbulence

24             through the passage, and in regards to the flow ranges in which the passage

25             will provide for Steelhead passage (i.e., for the hardened ramp, NMFS

26             indicates that the ramp shall be designed to provide for Steelhead passage

27             between 45 to at least 6,000 cfs river flow). This alternative must include

28             design of monitoring of Steelhead migration in the reach of the Santa Clara

Case 2:16-cv-03869-DOC-PLA   Document 298   Filed 04/03/19   Page 10 of 35   Page ID
#:31407
Case 2:16-cv-03869-DOC-PLA   Document 248   Filed 12/01/18   Page 6 of 11   Page ID
#:27267

1      River below VFD and through VFD and its new fish passage infrastructure

2      selected;

3    d.    By **no later than June 30, 2020**, United shall submit completed regulatory

4      applications for the following:

5      i.    ESA section 10 incidental take permit and habitat conservation plan

6      ("MSHCP") to NMFS and the USFWS for operation and maintenance

7      of VFD and United's Diversion at the VFD. These applications shall

8      be accompanied by a complete Draft Environmental Impact Report so

9      that United's proposed approval of the habitat conservation plan is

10      ready for the institution of environmental review under CEQA. These

11      applications shall include proposals for a new fish passage

12      infrastructure project at VFD, bypass flows from VFD sufficient to

13      avoid jeopardizing the survival and recovery of Steelhead and

14      otherwise minimizing take of Steelhead consistent with ESA

15      directives to include reasonable and prudent measures for reducing

16      take of listed species in any authorization for species take, appropriate

17      compliance monitoring reasonably consistent with term and condition

18      4 in the incidental take statement in NMFS's 2008 Biological Opinion

19      for VFD, and adaptive management reasonably consistent with term

20      and condition 3 in the incidental take statement in NMFS's 2008

21      Biological Opinion for VFD. United will in good faith pursue

22      coordination of its CEQA review with any National Environmental

23      Policy Act ("NEPA") review performed by NMFS, USFWS, or any

24      other federal agency in conjunction with regulatory approval of the

25      Steelhead fish passage infrastructure project and other remedial

26      measures required by this judgment. United shall promptly provide

27      any information requested by NMFS, USFWS, or any other federal

28      agency to assist such federal agencies in their performance of NEPA

**10**   6             **EXHIBIT A**

Case 2:16-cv-03869-DOC-PLA   Document 298   Filed 04/03/19   Page 11 of 35   Page ID
#:31408
Case 2:16-cv-03869-DOC-PLA   Document 248   Filed 12/01/18   Page 7 of 11   Page ID
#:27268

| | | |
|---|---|---|
| 1 | | review for these measures.[2] Nothing in this judgment precludes |
| 2 | | United from seeking incidental take authorization in whole or in part |
| 3 | | through a section 7 federal consultation between a federal action |
| 4 | | agency (e.g. U.S. Army Corps of Engineers) and NMFS or the |
| 5 | | USFWS. In such event, United shall promptly provide any |
| 6 | | information requested by the federal action agency in their |
| 7 | | performance of their ESA section 7 consultation responsibilities |
| 8 | | including preparation of any biological assessment;[3] |
| 9 | ii. | Army Corps Clean Water Act 404 permit for the New Fish Passage |
| 10 | | Infrastructure Project; |
| 11 | iii. | State Water Resources Control Board or Regional Water Quality |
| 12 | | Control Board Clean Water Act section 401 Water Quality |
| 13 | | Certification for the New Fish Passage Infrastructure Project; and |
| 14 | iv. | CDFW Lake and Streambed Alteration Agreement for the New Fish |
| 15 | | Passage Infrastructure Project; and |
| 16 | e. | By **no later than two years from** receiving final regulatory approvals for a |
| 17 | | new Steelhead fish passage infrastructure project, United shall complete |
| 18 | | construction of and commence operating such new infrastructure. This |
| 19 | | project shall include such infrastructure as needed for implementation of a |
| 20 | | long term monitoring and counting system for upstream migrating adult |
| 21 | | Steelhead and downstream migrating Steelhead kelts and juveniles that do |
| 22 | | not require Steelhead to navigate around or over an obstacle for the purposes |
| 23 | | of being counted. |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | [2] The Court retains the authority to add obligations under NEPA to this Amended Judgment if additional parties are joined to this case in the future. |
| 28 | | [3] Nothing in this section shall be construed as altering the Judgment with respect to United's obligations regarding design of (1) the hardened ramp and (2) 400-foot notch. |

**EXHIBIT A**

Case 2:16-cv-03869-DOC-PLA   Document 298   Filed 04/03/19   Page 12 of 35   Page ID
#:31409
Case 2:16-cv-03869-DOC-PLA   Document 248   Filed 12/01/18   Page 8 of 11   Page ID
#:27269

**4.    Interim Fish Passage Infrastructure**

  The Court grants in part Plaintiffs' request for injunctive relief with respect to interim improvements to United's fish passage infrastructure. Therefore:

   a. By **no later than November 1, 2018**, and as early as possible, United shall install the existing DIDSON camera in the area between the trash rack and Denil fish ladder upstream exit gate upstream of the diversion canal gate that lets water into the fish screen bay to monitor adult steelhead passage from the VFD infrastructure upstream into the Santa Clara River. United shall also monitor downstream movement of adult, kelt, and juvenile Steelhead entering the VFD infrastructure through this camera.

   b. By **no later than January 31, 2020**, and no later than the completion of the top-two fish passage alternative designs (the hardened ramp and the 400-foot notch), United shall develop and submit a plan to NMFS for modifying or replacing the VFD diversion canal fish screen in the VFD fish screen forebay to comply with NMFS Anadromous Salmonid Passage Facility Design fish screen criteria, to meet NMFS criteria's for approach and sweeping velocity for fish screens; to eliminate velocity hot spots (i.e., localized areas where velocity levels are elevated on the fish screen face that will tend to trap, suck through, or injure juvenile Steelhead); to ensure reliable cleaning and prevention of clogging; to contain brushes that run the entire length of the screen face; and to contain appropriate screen opening sizes fry cannot pass through and that meet NMFS's Anadromous Salmonid Passage Facility Design fish screen criteria for Steelhead fry. United's plan shall address and respond to recommendations (1) in the reports from its consultants MWH Americas (the MWH Americas Report entitled 'Final Appraisal Report Fish Screening Facility at the Freeman Diversion,' dated December 2006 [Trial Exhibit 140] ) and Northwest Hydraulic Consultants ("NHC") (the NHC report entitled 'Sediment Transport and Deposition Assessment of the

1    Freeman Diversion Conveyance System, Phase 1: Existing System
2    Performance,' dated January 7, 2015 [Trial Exhibit 141] and the NHC report
3    entitled 'Sediment Transport and Deposition Assessment of Freeman
4    Diversion Conveyance System,' dated March 9, 2016 [Trial Exhibit 142] )
5    and (2) the Biological Assessment, and shall either include provisions for
6    these recommendations or explanations for any recommendations that it
7    determines not to follow. United's plan shall address any design
8    considerations needed to function effectively in conjunction with the top-two
9    new fish passage alternatives (the hardened ramp and the 400-foot notch);

10    c.    By **no later than June 30, 2020,** United shall submit a completed regulatory
11          application for NMFS approval (and the approval of the Army Corps of
12          Engineers, California State Water Resources Control Board, and the
13          California Department of Fish and Wildlife, if such approval is required).
14          Any required fish screen regulatory applications may be submitted in
15          conjunction with or separately from the long term fish passage regulatory
16          applications; and

17    d.    By **no later than two years** (but significantly earlier, if feasible) from
18          receiving final regulatory approvals for a modified or new fish screen,
19          United shall complete construction of and commence operating such a fish
20          screen.

21    **5.    Trapping**

22    United shall not resume trapping, hauling or any handling of Steelhead without
23    authorization from NMFS. Because United must request NMFS Long Beach's assistance
24    and supervision when stranded fish need to be hauled or handled, NMFS shall respond
25    promptly to a request for such assistance.

26    **6.    Compensatory Measures**

27    The Court denies Plaintiffs' requests for relief that ask United to contribute up to
28    $7,105,000 toward compensatory mitigation measures to mitigate the past and future

Case 2:16-cv-03869-DOC-PLA  Document 298  Filed 04/03/19  Page 14 of 35  Page ID
#:31411
Case 2:16-cv-03869-DOC-PLA  Document 248  Filed 12/01/18  Page 10 of 11  Page ID
#:27271

1  harms of VFD inflicted upon Steelhead.

2  **7.    Compliance with Injunction**

3      United shall file with the Court on the docket Compliance Reports setting forth in

4  detail the manner and form in which United has complied with the Permanent Injunction.

5  United shall file such Compliance Reports: (1) every 120 calendar days from the date of

6  Judgment; and (2) within five calendar days of any deadline contained in the Permanent

7  Injunction. If during any period between Compliance Reports, United receives any written

8  comments from any of the Regulatory Agencies (NMFS, USFWS, U.S. Army Corps of

9  Engineers, CDFW, and California State Water Resources Control Board) related to

10  United's efforts to develop or achieve approval of Regulatory Authorization applications

11  pertaining Steelhead and VFD (including related to fish passage infrastructure, the fish

12  screen, water diversion operations, or adaptive management monitoring), United shall

13  attach the agencies' comments to the next Compliance Report, subject to any applicable

14  laws of privilege. If United provides the Regulatory Agencies with any written responses

15  to such comments, United shall attach its responses to the following Compliance Report,

16  subject to any applicable laws of privilege.

17                                    **IV.**

18      **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the

19  Permanent Injunction shall remain in effect until each of the following conditions are met:

20  (1) United receives ESA incidental take authorization for VFD; and (2) United completes

21  construction and commences operations of a new fish passage structure that has been

22  approved by NMFS pursuant to ESA incidental take authorization. When such conditions

23  are met, United shall move to dissolve the Permanent Injunction.

24                                    **V.**

25      **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Judge James

26  L. Smith (Ret.) is appointed as a Special Master to monitor compliance with the Permanent

27  Injunction and the progress of the parties.

28

**EXHIBIT A**

Case 2:16-cv-03869-DOC-PLA   Document 298   Filed 04/03/19   Page 15 of 35   Page ID
#:31412
Case 2:16-cv-03869-DOC-PLA   Document 248   Filed 12/01/18   Page 11 of 11   Page ID
#:27272

## VI.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction over this matter for the purposes of enforcing or modifying the terms of the Permanent Injunction. In the event that following United's submission of proper permit applications for building new fish passage infrastructure at VFD, any of the Regulatory Agencies (NMFS, FWS, U.S. Army Corps of Engineers, CDFW, and California State Water Resources Control Board) are not completing their reviews in a timely fashion, are not providing sufficient guidance to United, or it is clear that permits will not be issued and compliance with the ESA will not be forthcoming, the Court will entertain appropriate motions to join—or the Court will involuntarily join—any such Regulatory Agency at that time, or the Court will otherwise reconsider the balance it has struck.

## VII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the deadline for any of the parties to move for an award of attorneys' fees and costs pursuant to ESA section 11(g), 16 U.S.C. § 1540(g) is extended to 30 days from the entry of this Final Judgment. A party opposing such fees and costs shall have 14 days to file any objections to that motion. The parties shall promptly meet and confer in a good faith attempt to resolve the issue of attorneys' fees and costs award without the need for motion(s) on this matter.

There being no just reason for delay, the Clerk of the Court is hereby directed, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to enter this Final Judgment forthwith.

IT IS SO ORDERED.

DATED:
December 1, 2018

_David O. Carter_
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

8
9
10
11
12
13
14

| | |
|---|---|
| **WISHTOYO FOUNDATION ET AL.,** | **Case No.: CV 16-3869-DOC (PLAx)** |
| Plaintiffs, | |
| vs. | **ORDER GRANTING IN PART PLAINTIFF'S MOTION ATTORNEYS' FEES AND COSTS [254]** |
| **UNITED WATER CONSERVATION DISTRICT,** | |
| Defendant. | |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**16** -1-

**EXHIBIT B**

Case 2:16-cv-03869-DOC-PLA   Document 298   Filed 04/03/19   Page 17 of 35   Page ID
#:31414
Case 2:16-cv-03869-DOC-PLA   Document 288   Filed 03/05/19   Page 2 of 17   Page ID
#:31195

1   Before the Court is Plaintiffs Wishtoyo Foundation ("Wishtoyo") and Center for

2   Biological Diversity's ("Center") (collectively, "Plaintiffs") Motion for Attorneys' Fees and

3   Costs against United Water Conservation District ("United" or "Defendant"), pursuant to the

4   Endangered Species Act ("ESA") section 11(g), § 1540(g)(4).

5   This case concerned the Vern Freeman Diversion Dam ("VFD") on the Santa Clara

6   River ("River") in Ventura County, California, and its impacts on endangered wildlife.

7   Complaint ("Compl.") (Dkt. 1) ¶¶ 1–2. On September 27, 2018, the Court entered a declaratory

8   judgment that Defendant United's operation and maintenance of the fish ladder of the VFD,

9   and United's diversion of water from the VFD, constituted unauthorized "take" of the District

10  Population Segment of Southern California Steelhead ("Steelhead") in violation of section 9 of

11  the ESA, 16 U.S.C. § 1538 (Dkt. 212).[1] Plaintiffs now seek attorneys' fees and costs associated

12  with this Judgment.

13  **I.   FACTS[2][3]**

14  Located in Ventura and Los Angeles counties, the Santa Clara River flows westward

15  from its headwaters in the San Gabriel Mountains, across the broad Santa Clara River valley

16  and expansive Oxnard Plain, to the Pacific Ocean.[4] The Vern Freeman Diversion Dam

17  ("VFD"), built in the late 1980s and early 1990s with federal funds, is a concrete diversion dam

18  spanning the width of the Santa Clara River at about 10.5 river miles from the Pacific Ocean.[5]

19  Defendant United Water Conservation District ("United" or "Defendant") operates VFD.

20  Using a series of channels and gates, United can divert surface water from the River into

21

22

23

---

24  [1] The Judgment was subsequently amended by the Court, as noted below, but the Amended Judgment also declared that
United's operation and maintenance of the fish ladder of the VFD, and United's diversion of water from the VFD, constituted
unauthorized "take" of Steelhead (Dkt. 248).

25  [2] Unless indicated otherwise, to the extent any of the facts in this Order are disputed, the Court concludes they are not
material to the disposition of the Motions. Further, to the extent the Court relies on evidence to which the parties have

26  objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it
unnecessary to rule on them because the Court does not rely on the disputed evidence.

27  [3] The following facts are taken from the Court's September 23, 2018 Order including Findings of Fact and Conclusions of
Law (Dkt. 209).

28  [4] Trial Exhibit List ("Trial") (Dkt. 178), Ex. 218 at 2.
[5] Trial Ex. 245 Fig. 1.

**17**   -2-                                           **EXHIBIT B**

Case 2:16-cv-03869-DOC-PLA   Document 298   Filed 04/03/19   Page 18 of 35   Page ID
#:31415
Case 2:16-cv-03869-DOC-PLA   Document 288   Filed 03/05/19   Page 3 of 17   Page ID
#:31196

recharge basins (which in turn recharge aquifers in the Oxnard plain to increase the availability
of groundwater) or into a piping system to the Pleasant Valley water district.[6]

VFD presents two notable obstacles to steelhead migration, especially for adults. First,
United's diversion of water at VFD reduces the availability of water downstream for steelhead
migration.[7] For instance, during dry summer months, a sandbar typically builds up at the mouth
of the Santa Clara River estuary, which (along with other dry portions over the river) cuts off
migratory access to the Santa Clara River to or from the ocean.[8] But when river flow levels
increase during the wet season—typically December through April—a migration corridor can be
created, and the sandbar can be breached, allowing steelhead to migrate upstream and
downstream (assuming there is sufficient water depth and height for the fish).[9] However,
United—by diverting water at VFD—artificially shortens the frequency and durations of
migration corridor periods, thereby reducing migration opportunities for steelhead.[10]

Second, VFD is a bottleneck in the river; and the only way for adult steelhead swimming
upstream to pass VFD is to enter VFD's fish ladder, climb the ladder, and exit the ladder above
VFD, but it is difficult for adult steelhead to successfully pass through the fish ladder.[11] When
significant river flows pass over the crest of VFD (often when flows are above 500 cubic feet
per second), steelhead are drawn to the flow falling below the crest, and they have difficulty
finding the entrances to the fish ladder, located on the extreme southern edge of VFD.[12] In other
words, when there are significant flows of water over the crest, the fish ladder entrances (and
adjacent auxiliary pipe) do not emanate sufficient "attraction flows" (water flows that draw
steelhead to a particular location) to enable adult steelhead to find the fish ladder.[13] Thus, spill of
water over the VFD crest tends to attract steelhead toward the dam's face and can preclude

---

[6] See generally Trial Ex. 218; Testimony of Anthony Emmert ("Emmert Test."), Dec. 15, 2017, Vol. 1; Testimony of Murray McEachron ("McEachron Test."), Dec. 18, 2017, Vol. 4. (When citing testimony for which the transcripts have not been produced for publication at this time, the Court will cite to the witness name, date, and volume number for that date.)
[7] See, e.g., Biological Opinion at 45.
[8] TFS ¶¶ 35–37.
[9] Id.; McEachron Test., Dec. 18, 2017, Vol. 4.
[10] See, e.g., Biological Opinion at 45.
[11] See, e.g., id. at 47; TFS ¶ 45.
[12] See, e.g., Biological Opinion at 37.
[13] Id.

**EXHIBIT B**

steelhead from finding the fish ladder entrances.[14] But, paradoxically, if United diverts more to reduce the spill flow, which makes it easier for adult steelhead to find the fish ladder, then less water is available to create a continuous migration corridor downstream.[15] In these ways, the structure and operation of VFD significantly hampers the migration of steelhead in the Santa Clara River to and from the Pacific Ocean.

In 1997, a federal agency, the National Marine Fisheries Service ("NMFS"), listed Southern California Steelhead (a specific population of steelhead in Southern California) as an endangered species.[16] In 2008, after a multiyear consultation, NMFS issued a biological opinion, which concluded that VFD—by impeding the migration of Southern California Steelhead in the Santa Clara River watershed (a significant steelhead population unit)—is likely to jeopardize the continued existence of the Southern California Steelhead and to destroy or adversely modify its critical habitat.[17] In this biological opinion, NMFS set forth "reasonable and prudent alternatives" for United to implement in order to allow for (or approximate) unimpeded steelhead migration.[18] These alternatives included: (1) physically modifying VFD's infrastructure to improve fish passage; and (2) reducing the diversion of water at VFD (in other words, increasing the bypass of water downstream) to improve the functioning of the steelhead migration corridor downstream of VFD.[19]

NMFS expected that United would implement the Biological Opinion's reasonable and prudent alternatives until 2011 (the period the Opinion was expected to cover); and then for the time period after 2011 acquire an incidental take permit (an incidental take permit that allows an activity to proceed even though it may result in the "incidental" taking of a species).[20] However, the U.S. Bureau of Reclamation (the federal agency that financed the construction of VFD) declined to adopt the Biological Opinion and United subsequently never acquired an incidental take permit; but since 2009 United has been working itself and with NMFS towards a

---

[14] *See id.*
[15] *Id.* at 50.
[16] *See* 62 Fed. Reg. 43937 (Aug. 18, 1997). TFS ¶ 17.
[17] *See* Biological Opinion at 50, 66.
[18] *See id.* at 67–78.
[19] *Id.*
[20] Transcript, Jan. 4, 2018, Vol. 2 ("D10V2") (Dkt. 187) at 35–36.

**EXHIBIT B**

Conservation Plan, a work product that United must develop in order to apply for an incidental take permit under the ESA.[21]

About eight years later, in 2016, Plaintiffs Wishtoyo Foundation ("Wishtoyo"), Ventura Coastkeeper ("Coastkeeper"), and Center for Biological Diversity's ("Center") (collectively, "Plaintiffs") brought this Endangered Species Act citizen suit against United, making allegations that parallel the conclusions reached by the federal government in the 2008 Biological Opinion—namely that VFD's water diversions and infrastructure harm or "take" steelhead by impeding migration; that United should physically modify VFD to improve steelhead passage; and that United should increase the bypass of water at VFD to improve steelhead migration.[22] Plaintiffs also brought an Endangered Species Act claim against United based on the alleged impact of VFD's water diversions on the migration habitat of endangered Southwestern Willow Flycatcher, a songbird that migrates to areas adjacent to VFD.[23] The federal government did not intervene in this action.

## II.    PROCEDURAL HISTORY

On June 2, 2016, Plaintiffs filed suit, alleging the unauthorized take of four endangered species. *See generally* Compl (Dkt. 1). On June 16, 2017, the parties stipulated to the dismissal of Plaintiffs' second and third claims, which dealt with the Least Bell's Vireo and Western Yellow-Billed Cuckoo. *See* Order Dismissing with Prejudice Plaintiffs' Second and Third Claims (Dkt. 45). Plaintiff's two remaining claims were: (1) Unauthorized Take of Steelhead in violation of section 9 of the ESA, 16 U.S.C. § 1538; and (2) Unauthorized Take of Flycatcher in violation of section 9 of the ESA, 16 U.S.C. § 1538. Compl. ¶¶ 88–92, 105–11. Plaintiffs sought declaratory and injunctive relief for both claims. *Id.* at 51.

On September 23, 2018, the Court issued its Order re: Motions in Limine; Order Denying Without Prejudice Plaintiffs' Conditional Motion for Joiner and Motion to Dismiss for Failure to Join; Order Denying as Moot Plaintiffs' Renewed Motion for Preliminary Injunction; and Findings of Fact and Conclusions of Law Holding That Plaintiffs Are Entitled to

---

[21] *See id.*; McEachron Test., Dec. 18, 2018, Vol. 4; Emmert Test., Dec. 15, 2017, Vol. 1; 16 U.S.C. § 1539(a)(1)(B).
[22] *See generally* Complaint (Dkt. 1).
[23] *See id.*

**EXHIBIT B**

Case 2:16-cv-03869-DOC-PLA   Document 298   Filed 04/03/19   Page 21 of 35   Page ID
#:31418
Case 2:16-cv-03869-DOC-PLA   Document 288   Filed 03/05/19   Page 6 of 17   Page ID
#:31199

Declaratory and Injunctive Relief on their Claim for Take of Southern California Steelhead, but

Not on Their Claim for Take of Southwestern Willow Flycatcher (Dkt. 209). Consistent with its

Findings of Fact and Conclusions of Law, the Court entered Judgment and a Permanent

Injunction (Dkt. 212) on September 27, 2018. The Court entered an Amended Judgment and

Permanent Injunction (Dkt. 219) on October 4, 2018.

On December 1, 2018, pursuant to Defendant's Motion to Alter Judgment (Dkt. 233)

and Plaintiffs' Notice of Non-Opposition to the Motion to Alter Judgment (Dkt. 245), the Court

entered a final Amended Judgment and Permanent Injunction (Dkt. 248). The Court's final

Amended Judgment and Permanent Injunction mandated that United take actions or cease

action pertaining to water diversion, monitoring and adaptive management, long term fish

passage infrastructure, interim fish passage infrastructure, trapping, and compensatory

measures, as well as requiring periodic Compliance Reports, ongoing monitoring by Special

Master Judge James L. Smith (Ret.), and the Court's retention of jurisdiction of the matter for

the purposes of enforcing the Permanent Injunction (Dkt. 248).

Defendants filed the First Compliance Report (Dkt. 232) on October 26, 2018 and the

Second Compliance Report (Dkt. 274) on February 1, 2019 in accordance with this Court's

Amended Judgment. Special Master Judge Smith filed a Report on Compliance Reports 1 and 2

(Dkt. 283) on February 21, 2019, recommending that the Court accept and approve the First

and Second Compliance Reports. The Court issued an Order Accepting and Approving the First

and Second Compliance Reports (Dkt. 284) on February 22, 2019.

On, January 9, 2019, Plaintiffs filed the instant Motion for Attorneys' Fees and Costs

("Motion") (Dkt. 254), along with declarations in support (and associated exhibits) by: Chris

Hammersmark; Drevet Hunt, D. Cooper, K. Schmidt; Jodene Issacs; Stephanie Oxley; Naomi

Melver; Danielle Rathje; Anthony Barnes; John Buse; Christopher Sproul; Fredric Evenson;

Molly Coyne; Dawn Edberg; Geneva Thompson; Jason Weiner; Patricia Linn; and Heather

Kryczka (Dkts. 255–273, 277–280, 282). On February 4, 2019, Defendant United opposed the

Motion ("Opposition") (Dkt. 275) and made evidentiary objections. Plaintiffs replied ("Reply")

(Dkt. 276) on February 17, 2019 with additional declarations (Dkt. 277–80, 282) and opposed

**EXHIBIT B**

1  Defendant's evidentiary objections (Dkt. 281) on February 18, 2019. Defendant made

2  evidentiary objections to the new evidence submitted on reply by Plaintiffs in support of the

3  Motion (Dkt. 285) on February 26, 2019. The Court heard oral arguments on the Motion on

4  March 4, 2019.

5    **III.   LEGAL STANDARD**

6    **A. Attorney Fees under the ESA**

7         Under the Endangered Species Act ("ESA"), in connection with a citizen suit, a court

8  "may award costs of litigation (including reasonable attorney and expert witness fees) to any

9  party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4).

10  When interpreting comparable fee shifting statutes, the Supreme Court has determined that "the

11  term 'appropriate' modifies but does not completely reject the traditional rule that a fee

12  claimant must 'prevail' before it may recover attorney's fees." *Ruckelshaus v. Sierra Club*, 463

13  U.S. 680, 686 (1983). "Since '[t]he attorney's fees provisions of the ESA and the Civil Rights

14  Act of 1964 likewise have a common purpose,' courts 'apply to the ESA the civil rights

15  standard for awarding fees to prevailing parties.'" *S. Yuba River Citizens League and Friends of*

16  *River v. Nat'l Marine Fisheries Serv.*, No. S-06-2845-LKK (JFMx), 2012 WL 1038131, at *2

17  (March 27, 2012) (quoting *Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1095 (9th Cir. 1999),

18  *cert denied* 528 U.S. 1115 (2000)). Accordingly, awarding attorney's fees to plaintiffs who

19  brought suit under the ESA is allowable where plaintiffs have shown some success on the

20  merits. *See Ruckelshaus*, 463 U.S. at 684.

21         Additionally, some district courts have required a plaintiff to have made a "substantial

22  contribution" to the goals of the ESA to seek attorneys' fees. *See S. Yuba River Citizens League*

23  *and Friends of River*, 2012 WL 1038131, at *3 (citations omitted). It is unclear whether the

24  Ninth Circuit has abandoned "substantial contribution" as a requirement for plaintiffs seeking

25  attorneys' fees under the ESA.[24]

26

27  [24] "The 'substantial contribution' requirement was set forth in *Carson–Truckee Water Conservancy Dist. v. Sec'y of the Interior*, 748 F.2d 523, 524 (9th Cir.1984), which was later overruled on other grounds by *Marbled Murrelet* 182 F.3d 1091 at 1094–95 (9th Cir.1999). The Ninth Circuit has not decided whether the *Carson–Tucker* substantial contribution

28  requirement has been abandoned. *See e.g.*, *Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, 103 Fed. Appx. 627, 629 (9th Cir.2004) ('We need not resolve this doctrinal dispute, because [the] motion for attorneys fees satisfied both standards.'). In

**EXHIBIT B**

**B. Attorney Fees Standard**

"It is the plaintiff's burden to show both that the hourly fee requested is reasonable, and that the number of hours spent is reasonable." *S. Yuba River Citizens League and Friends of River v. Nat'l Marine Fisheries Serv.*, No. S-06-2845-LKK (JFMx), 2012 WL 1038131, at *2 (March 27, 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. A court should exclude from the initial fee calculation "hours that were not 'reasonably expended.'" *Id.* at 434.

A district court "has a great deal of discretion in determining the reasonableness of the fee." *In re Smith*, 586 F.3d 1169, 1173 (9th Cir. 2009) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)). Where "a voluminous fee application is filed in exercising its billing judgment the district court is not required to set forth an hour-by-hour analysis of the fee request." *Gates*, 987 F.2d at 1399. In those instances, "the district court has the authority to make across-the-board percentage cuts. . . in the number of hours claimed. . . as a practical means of trimming the fat from a fee application." *In re Smith*, 586 F.3d at 1174 (quoting *Gates*, 987 F.2d at 1399). However, cutting a large percentage of the fee request "has been criticized when employed in cases where the fee applications at issue involved substantial amounts of money and where district courts failed adequately to articulate their reasons for selecting specific percentage deductions." *Gates*, 987 F.2d at 1399. "[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "Though a small reduction of fees necessitates only 'cursory explanation,' anything more disparate requires 'a more specific articulation of the court's reasoning.'" *In re Smith*, 586 F.3d at 1174 (quoting *Moreno*, 534 F.3d at 1111).

___

recent cases, the Ninth Circuit has omitted the 'substantial contribution' requirement from its attorneys' fees analysis." *S. Yuba River Citizens League and Friends of River*, 2012 WL 1038131, at *3.

**EXHIBIT B**

## IV.   DISCUSSION

Plaintiffs initially requested $3,131,597.40 in attorneys' fees and $290,616.26 in costs for a total of $3,422,213.66. Mot. at 23. In their Reply, Plaintiffs requested $3,199,907.97 and $197,328.76. *See* Reply.

### A. Plaintiffs' Entitlement to Attorneys' Fees

The Court finds that Plaintiffs are entitled to attorneys' fees under 16. U.S.C. § 1540(g)(4). Plaintiffs received a declaratory Judgment from this Court that Defendant's operation of the VFD constituted authorized "take" of the District Population Segment of Southern California Steelhead ("Steelhead") in violation of section 9 of the ESA, 16 U.S.C. § 1538 (Dkt. 248). Plaintiffs thus succeeded on their first claim for relief, *see* Compl. at 42–46, and can be considered the prevailing party as to the first claim. Plaintiffs acknowledge that they did not prevail on claims 2–4, including their claim for take of Flycatcher, and only seek fees for time spent on claim 1. Mot. at 1 n.1. Defendant United does not dispute that Plaintiffs are entitled to attorneys' fees, instead arguing that the Court should reduce Plaintiffs' fee request. Opp'n at 1–2.

To the extent that the "substantial contribution" standard applies, Plaintiffs have made a substantial contribution to the goals of the ESA in bringing and succeeding on their first claim. Section 9 of the ESA makes it unlawful for any person to "take" any species listed as endangered[25] under the ESA, absent specific exceptions. 16 U.S.C. § 1538(a)(1)(B). Plaintiffs brought this lawsuit to prevent the ongoing, authorized taking of Steelhead by United. *See generally* Compl. Plaintiffs not only received a favorable ruling from the Court, but the Court also entered an expansive permanent injunction with respect to the VFD, requiring United to create new infrastructure (Dkt. 248). *Cf. Carson-Truckee Water Conservancy Dist.*, 748 F.2d at 526 (affirming district court's determination that the party's participation did not substantially contribute to the ESA goals because the issue at hand was narrow, and the government had already raised and litigated the issue before the party intervened). Thus, Plaintiffs substantially

---

[25] In the Court's Order Granting in Part Plaintiffs' Motion for Summary Judgment, the Court relied on the National Marine Fisheries Service's definition of Steelhead to determine that Steelhead qualifies as an endangered species for purposes of the ESA (Dkt. 128 at 17–18).

**EXHIBIT B**

Case 2:16-cv-03869-DOC-PLA   Document 298   Filed 04/03/19   Page 25 of 35   Page ID
#:31422
Case 2:16-cv-03869-DOC-PLA   Document 288   Filed 03/05/19   Page 10 of 17   Page ID
#:31203

1   contributed to the goals of section 9 of the ESA, 16 U.S.C. § 1538 in preventing a further taking

2   of Steelhead, and Plaintiffs are accordingly entitled to attorneys' fees under 16 U.S.C. §

3   1540(g)(4).

### B. The Fee Amount

5   Plaintiffs seek a total fee amount based on their calculated lodestar. *See generally* Mot.

6   United disputes the fee amount for numerous reasons as outlined in its Opposition, and asks the

7   court to award no more than $2,105,048.92 in attorneys' fees, a reduction in Plaintiffs' initial

8   fee request of $1,026,548.48. *See generally* Opp'n. The Court addresses Plaintiffs' fee

9   calculations and the disputed amounts in turn.

### 1. Plaintiffs' Lodestar

11   Plaintiffs' Motion sought a lodestar of $3,131597.40. Declaration of Christopher Sproul

12   in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Sproul Decl.") (Dkt. 263) at 4;

13   *see also* Sproul Decl. Ex. 1 (264). Plaintiffs lodestar is based on the time spent on the instant

14   litigation by each attorney and paralegal, multiplied by the hourly rate for each attorney and

15   paralegal, after taking into account billing cuts. Sproul Decl. Ex. 1.

16   A court calculates the lodestar figure by "multiplying the number of hours reasonably

17   expended on the litigation times a reasonable hourly rate." *Davis v. City & Cty. of San*

18   *Francisco*, 976 F.2d. 1536, 1541 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d

19   345 (1993) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)); *see also Hensley*, 461 U.S. at

20   433 ("[t]he most useful starting point for determining the amount of a reasonable fee is the

21   number of hours reasonably expended on the litigation multiplied by a reasonable hourly

22   rate."). A court may then "increase or reduce the presumptively reasonable lodestar fee" based

23   on a number of factors. *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988).

24   A court should exclude from the initial fee calculation "hours that were not 'reasonably

25   expended.'" *Hensley*, 461 U.S. at 434. A court may also credit a party with fewer hours if the

26   time claimed is "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

27   Other factors that may reduce the hours "deemed reasonable" include: "(1) the overstaffing of a

28   case or a demonstration of exceptional skill and efficiency; and (2) the relative novelty and

**25**  -10-                                                      **EXHIBIT B**

1    complexity of the issued raised." *Cunningham*, 879 F.2d at 485 (citing *Hensley*, 461 U.S. at

2    434).

3           Given the complexity and time-consuming nature of this case, as well as the diligence

4    and expertise of Plaintiffs' counsel, the Court finds Plaintiffs' overall lodestar reasonable,

5    subject to deductions as noted below. Plaintiffs filed the Complaint in this case on June 6, 2016

6    (Dkt. 1), engaging in active, contentious litigation for more than two years. To achieve success

7    on the merits of Plaintiffs' first claim, for take of Steelhead, Plaintiffs' counsel engaged in

8    necessary, time-intensive tasks, including: gathering a robust evidentiary record involving

9    extensive discovery; litigating 15 pre-trial and 3 post-trial motions; preparing for and engaging

10   in 11 days of trial; and engaging with Defendant and the Special Master following trial

11   regarding the Judgment and ongoing compliance. Mot. at 13–16; Sproul Decl. at 4, 8–27;

12   Declaration of Jason Weiner (Dkt. 269) ("Weiner Decl.") at 9–19. Throughout the litigation,

13   Plaintiffs' counsel attempted to minimize the hours spent on the action by pursuing request for

14   admission responses, creating stipulations to resolve case management matters, and making

15   meaningful efforts toward settlement. Mot. at 16.

16          Moreover, Plaintiffs have provided a reasonable discount of the total hours spent

17   litigating the action. Plaintiffs' counsel spent 7,048.20 hours litigating the action,[26] but have

18   reduced their billable hours to reflect billing judgment, and instead seek to recover for 5,239.73

19   billable hours of work. Sproul Decl. at 4; Sproul Decl. Ex. 1 at 2. In reducing their hours to

20   reflect billing judgment, Plaintiffs' counsel seek a lodestar representing approximately 75% of

21   their stated hours spent on the case. In light of the complexity of the instant case, the success on

22   the merits of the Steelhead claim in line with the goals of the ESA, and Plaintiffs' counsel's

23   reduction in their billing hours, the Court finds the lodestar of 5,239.73 hours with a total fee

24   request of $3,131,597.40 reasonable, subject to discounts as noted below.

---

[26] Plaintiffs' attorney fee calculations include time spent on paralegal tasks. As explained in further detail below, the Court finds the inclusion of reasonable hours spent on paralegal tasks reasonable, as the Supreme Court has held that attorney fee awards may include compensation for work of paralegals at market rates. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989).

**EXHIBIT B**

## 2. Fees Related to Non-Prevailing Claim

United objects to billing entries totaling 33.3 hours, or $20,129.30, arguing these entries relate to the Flycatcher claim on which Plaintiffs did not prevail Opp'n at 3 (citing Declaration of Shawn M. Ogle ("Ogle Decl.") ¶¶ 6, 8, 12, 30, 33; citing Exhs. 1, 3, 12, 13). Plaintiffs' Reply concedes that some but not all of the time entries were related to the Flycatcher claim on which they did not prevail, but maintains that some of the entries were related to the prevailing Steelhead claim. Reply at 14.

The Court concurs with United's objection to such time entries, and accordingly reduces Plaintiffs' attorney fees request by $20,129.30. As highlighted in orange in the exhibits to the Ogle Declaration, the time entry descriptions for the 33.3 hours relate to the Flycatcher claims, on which Plaintiffs concede they do not prevail. *See* Ogle Decl., Exhibits 1–13; *see, e.g.,* Ogle. Decl., Ex. 2 at 116 ("Call and e-mail messages with Dawn Edberg concerning preparation of exhibits for motion in limine to exclude some testimony from United's flycatcher experts").

## 2. Excessive and Duplicative Intra-Office Communication

United next argues that Plaintiffs' counsel did not make a meaningful effort to reduce their time for work performed by several attorneys on tasks, and argues for a reduction for intraoffice correspondence totaling 583, or approximately $310,342.77 based on the rates requested by Plaintiffs. Opp'n at 5. Plaintiffs maintain their hours should not be reduced due to intraoffice correspondence because they exercised billing judgment by cutting or reducing time entries and cutting many hours spent on internal attorney communications. Reply at 5–6.

The Ninth Circuit has noted that "lawyers are not likely to spend unnecessary time on contingency fee cases. . .[t]he payoff is too uncertain, as to both the result and the amount of the fee." *Moreno*, 534 F.3d at 1112. Accordingly, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Id.* at 1112. Additionally, courts have declined to reduce hours "simply because [plaintiffs' attorneys] kept each other informed about the case and double-checked each other's work; indeed, many motions this Court denies would have benefitted from a second read and more strategizing by the attorneys involved." *Charlebois v. Angels Baseball LLP*, 993 F. Supp.

**EXHIBIT B**

2d 1109, 1125 (C.D. Cal. 2012). *See also Doe v. Prudential Insurance Co.*, 258 F. Supp. 3d 1089, 1096 (C.D. Cal. 2017) ("It is not uncommon and indeed is often necessary for several attorneys to review the same Court order, or for several attorneys to edit the same document. This is simply a form of collaboration.").

Here, the Court does not find the hours of Plaintiffs' counsel unreasonably duplicative. Defendant cites multiple intraoffice communications in Plaintiffs' counsels' records. Opp'n at 6–8. Yet in a case stretching for more than two years, and including counsel from multiple nonprofit organizations, it is reasonable that the team of attorneys conferred relatively often so as to ensure proficiency and consistency in all pleadings before the Court. *See* Reply at 7–8. As noted in Plaintiffs' Reply Declarations, multiple attorneys were needed to sort through extensive document productions associated with the case, as well as to prepare strategic factual and legal arguments. *See, e.g.*, Sproul Reply Decl. at 8–10. The Court thus rejects United's argument regarding duplicative hours, and declines to reduce Plaintiffs' counsels' lodestar based on duplication.

### 3. Fees for Paralegal Work and Litigation Support Tasks

United argues that the Court should remove Plaintiffs' hours billed for administrative tasks at attorneys' rates, or, in the alternative, that the Court should compensate such work at a paralegal rate of $200.00 per hour. Opp'n at 9–12. Plaintiffs' counsel argues courts compensate for clinical and paralegal work that directly supports substantive litigation. Reply at 9–11.

The term "reasonable" attorney fee includes compensation of the work of paralegals. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). How paralegal-type work is valued is a more difficult question, but courts "have consistently looked to the marketplace as our guide to what is 'reasonable.') *Missouri*, 491 U.S. at 285. Additionally, "even purely clerical or secretarial work is compensable if it is customary to bill such work separately." *Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006). Still "non-legal work may command a lesser rate." *Missouri*, 491 U.S. at 288 n.10.

**EXHIBIT B**

Case 2:16-cv-03869-DOC-PLA   Document 288   Filed 03/05/19   Page 14 of 17   Page ID #:31207

Here, most of the time entries at issue appear to be for clerical work, including formatting motions, arranging for courtesy copies, and calling the court clerk. *See* Ogle Decl. (relevant time entries highlighted in red); *see, e.g.*, Declaration of Heather Kryczka ("Kryzcka Decl") (Dkt. 271) Ex. 1; Declaration of Molly Coyne ("Coyne Decl.") (Dkt. 266) Ex. 1. While the billing rates should be reduced for these tasks, even "purely clerical or secretarial work is compensable." *Trustees*, 460 F.2d at 1257. The Court accordingly reduces the rates of all attorneys, with the exception of Christopher Sproul, for these tasks to half of the paralegal rate for each attorney, as reasonably suggested by Plaintiffs' counsel. Sproul Reply. Decl. at 11–12. As Plaintiffs' counsel argued during oral argument, the majority of lead counsel's time at issue was spent on substantive, not clerical, tasks. *See* Sproul Reply Decl. Of the $33,919.20 of billable hours of Christopher Sproul that United argues are clerical, the Court finds only $5,071.25 of that time to be clerical. Thus, $28,847.95 should not be deducted from the overall lodestar.

Billing all such entries at a clerical rate, the Court reduces Plaintiffs' total fees lodestar as requested by United with the exception of $28,847.95;[27] accordingly, the Court reduces Plaintiffs' fees by $173,757.23.

### 4. Hours of Jason Weiner

United argues that the reasonable hourly rate for Wishtoyo counsel Jason Weiner is substantially less than $600 per hour. Opp'n at 13–14. United also argues that Plaintiffs should not recover fees for time Weiner spent as a representative of Wishtoyo or as a liaison between Plaintiffs and outside trial counsel, and that Plaintiffs should not recover for time Weiner spent communicating with NMFS. *Id.* at 13. Plaintiffs argue that Weiner has been active litigation counsel and all time billed for by Weiner is recoverable. Reply at 11–14.

The Court finds that Weiner's billed time is recoverable by Plaintiffs' counsel. Courts should not award fees if "in-house counsel are not actively participating (e.g., acting only as liaison)," yet there is a "modern trend toward providing reasonable fees based on the market

---

[27] United requested a reduction of $202,605.18. Opp'n at 9–12.

**29**

-14-

**EXHIBIT B**

Case 2:16-cv-03869-DOC-PLA   Document 298   Filed 04/03/19   Page 30 of 35   Page ID
#:31427
Case 2:16-cv-03869-DOC-PLA   Document 288   Filed 03/05/19   Page 15 of 17   Page ID
#:31208

rate when 'a party is represented by both private counsel and in-house counsel who actively
participate in the preparation of the case.'" *Milgard Tempering, Inc. v. Selas Corp. of America*,
761 F.2d 553, 558 (9th Cir. 1985) (citing *B-E-C-K Constructors v. State Dept. of Hwys.*, 604
P.2d 578, 585 (Alaska 1979)). Weiner served as primary co-counsel throughout the instant
litigation, actively participating in the life of the case, and Plaintiffs may accordingly seek fees
for Weiner's time. Sproul Reply Decl. Ex. 2; Weiner Decl. 9–19. Additionally, Plaintiffs may
lawfully seek fees for Weiner's time communicating with NFMS, as well as assisting with the
preparation of expert reports. *See, e.g., Pierce*, 905 F. Supp. 2d at 1031, 1034–35.

### 5. Hourly Rates of Plaintiffs' Counsel

United next argues that Plaintiffs' fee request should be reduced based on the hourly
rates, arguing that the hourly rate for Weiner is not reasonable, that the hourly rates for first-
year attorneys is excessive, and that Plaintiffs seek rates for years of experience that attorneys
did not have when they billed the time in question. Opp'n at 13–20. Plaintiffs counter that the
claimed hourly rates are reasonable and that they claim appropriate 2018-based rates. Reply at
15–21.

Courts have made upward adjustments for public interest attorneys, acknowledging that
"compensation received several years after the services were rendered. . . is not equivalent to
the same dollar amount received reasonably promptly as the legal services are performed, as
would normally be the case. . . ." *Missouri*, 491 U.S. at 283. Paying counsel at a uniform rate
takes into account inflation, and "applying current rates across the board boasts distinct,
practical advantages." *Miller v. Holzmann*, 575 F. Supp. 2d 2, 19 (D.D.C. 2008), *vacated in
part on other grounds*, 786 F. Supp. 2d 10 (D.D.C. 2011). Here, Plaintiffs' counsel spent more
than two years litigating the case, risking no payment at all in the event that they were
unsuccessful. The 2018-based rates for Plaintiffs' counsel are thus appropriate.

Additionally, the rates billed for Weiner and for junior counsel Thompson, Kryczka, and
Coyne are reasonable. With respect to Weiner, Plaintiffs have demonstrated that courts in the
Central District have awarded attorneys with comparable experience a similar rate to $600 per
hour, and thus finds Weiner's hourly rate compensable. *See* Sproul Reply Decl. at 10–11

**EXHIBIT B**

Case 2:16-cv-03869-DOC-PLA   Document 298   Filed 04/03/19   Page 31 of 35   Page ID
#:31428
Case 2:16-cv-03869-DOC-PLA   Document 288   Filed 03/05/19   Page 16 of 17   Page ID
#:31209

1   (noting fee awards of attorneys with approximately 10 years of experience as similar to $600

2   per hour). The Court also finds that Plaintiffs' junior counsel are entitled to the rates they would

3   receive as third-year lawyers, as of 2018, and thus finds their rates reasonable. *See* Reply at 21.

### 6. Travel Time

5   United argues that Plaintiffs should not receive fees associated with travel time. Opp'n at

6   20. Plaintiffs maintain that time spent traveling for necessary court appearances is

7   compensable. Reply at 14. The Court finds that the fees incurred for travel time should be

8   reduced by half the attorneys' reasonable hourly rates, in keeping with other courts in this

9   Circuit. *See In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291,

10  1298 – 99 (9th Cir. 1994); *S. Yuba River Citizens League & Friends of the River*, 2012 WL

11  1038131, at *5. The Court thus makes a total reduction in Plaintiffs' lodestar of $14,736.62 for

12  travel time.

### 7. Attorneys' Fees Regarding Preparation of this Motion

14  Plaintiffs also seek additional fees for additional hours incurred since the filing of their

15  Motion. Reply at 22. The Court declines to award additional fees spent as a result of the

16  attorneys' fees Motion itself.

### 8. Total Fees

18  The Court REDUCES Plaintiffs' lodestar by $20,129.30 for hours related to a non-

19  prevailing claim, by $173,757.23 for hours performed on clerical work, and $14,736.62 for

20  hours spent on travel time. Subtracting these fees from the total lodestar of $3,131,597.40, the

21  Court AWARDS Plaintiffs' counsel $2,922,974.25 in fees.

### C. Plaintiffs' Costs

23  In the Motion, Plaintiffs' counsel sought $290,616.26 in costs. Mot. at 23. United did not

24  challenge the $290,616.26 requested as costs. Opp'n at 2. Additionally, as documented in

25  Plaintiffs' Reply, Plaintiffs' have incurred an additional $6,712.50 in costs based on the

26  assistance of their expert, Chris Hammersmark, assisting Plaintiffs in evaluating technical

27  materials concerning VFD fish passage alternatives as part of Plaintiff's and United's work

28  attempting to secure an agreement about alternatives. Reply at 21; Sproul Reply Decl. at 3;

**31**                              **EXHIBIT B**

1  Weiner Reply Decl. at 6. The Court finds the request for costs reasonable, and GRANTS

2  Plaintiffs' Motion with respect to $297,328.76 in costs.

3  **D. Dispersal of Attorneys' Fees**

4  In the Motion, Plaintiffs suggest that United be ordered to tender payments in three

5  installments: costs plus one-third of Plaintiffs' fees within 30 days of the date of this Order;

6  another one-third of Plaintiffs' fees by January 31, 2020; and the final one-third of Plaintiffs'

7  fees by January 31, 2021. Mot. at 23. During oral argument, United indicated that it does not

8  oppose this schedule for payment. The Court ADOPTS the above schedule for payment.

9  **V.    DISPOSITION**

10  For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART

11  Plaintiffs' Motion for Attorneys' Fees and Costs.

12  The Court AWARDS Plaintiffs' counsel $2,922,974.25 in fees and $297,328.76 in costs

13  against Defendant United.

14

15  DATED:  March 5, 2019

16  _David O. Carter_
    _____

17  DAVID O. CARTER
    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

**32** -17-

**EXHIBIT B**

1  Christopher A. Sproul (Cal. Bar No. 126398)
   Molly Coyne (Cal. Bar No. 312914)
2  Heather Kryczka (Cal. Bar No. 314401)
   Environmental Advocates
3  5135 Anza Street
   San Francisco, California 94121
4  Telephone: (415) 533-3376
   Facsimile: (415) 358-5695
5  Email: csproul@enviroadvocates.com
   Email: mcoyne@enviroadvocates.com
6  Email: heather@enviroadvocates.com

7  Jason Weiner (Cal. Bar No. 259264)
   Geneva EB Thompson (Cal. Bar No. 315725)
8  Wishtoyo Foundation and its Ventura Coastkeeper Program
   9452 Telephone Road #432
9  Ventura, CA 93004
   Telephone: (805) 823-3301
10 Facsimile: (805) 258-5107
   Email: jweiner.venturacoastkeeper@wishtoyo.org
11 Email: gthompson@wishtoyo.org

12

13 Attorneys for Plaintiffs
   WISHTOYO FOUNDATION and CENTER FOR BIOLOGICAL DIVERSITY
14 *Additional Counsel Listed on Next Page*

15             UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF CALIFORNIA
16

17 WISHTOYO FOUNDATION, CENTER          Case No: 2:16-cv-03869-DOC-PLA
   FOR BIOLOGICAL DIVERSITY, and
18 VENTURA COASTKEEPER, a program       **ORDER FOR EXTENSION OF**
   of WISHTOYO FOUNDATION,              **DEADLINE FOR MOTION FOR**
19                                      **ATTORNEYS FEES AND COSTS**
                 Plaintiffs,            **AND NOTICE OF APPEAL [242]**
20
            v.
21
   UNITED WATER CONSERVATION
22 DISTRICT,

23              Defendant.

24

25

26

27

28

                        **33**                        **EXHIBIT C**

1

*Additional Counsel for Plaintiffs*

John Buse (Cal. Bar No. 163156)
Center for Biological Diversity
1212 Broadway, St. #800
Oakland, CA 94612
Telephone: (415) 844-7100
Facsimile: (415) 844-7150
jbuse@biologicaldiversity.org

Patricia Linn (Cal. Bar No. 253015)
Law Office of Patricia Linn
115 Oakdale Avenue
Mill Valley, CA 94941
Telephone: (415) 388-2303
Email: patricialinn19@gmail.com

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**34**

**EXHIBIT C**

1         Plaintiffs and the Defendant have stipulated to the following: the deadline set by

2   Federal Rule of Civil Procedure 54 and Local Rule 54-10 for any of the parties to move

3   for an award of attorneys fees and costs pursuant to Endangered Species Act section

4   11(g), 16 U.S.C. § 1540(g) is extended to January 9, 2019 and pursuant to Federal Rule

5   of Civil Procedure 58(e), the motion shall have the same effect under Federal Rule of

6   Appellate Procedure 4(a)(4) as a timely motion under Rule 59 such that the time to file an

7   appeal runs for all parties from the entry of the order disposing of the motion for an

8   award of attorneys' fees and costs, or the entry of the order disposing of the last motion

9   identified in Federal Rule of Appellate Procedure 4(a)(4), whichever is later.

10

11

12

13   Pursuant to stipulation, IT IS SO ORDERED.

14   Dated: _____   November 29, 2018

15   *David O. Carter*
      David O. Carter
      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT C**